**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALICIA MARSHALL, DANIEL PRONSKY, PARIS TOWNSEND, NANCILEE HOLLAND, LEONA OWSLEY, KOLAWOLE AHMADOU, KIANA DERVIN, KRISTINA HENDERSON, DUSTIN INNIS, KELLY STALNAKER and JAMIE JONES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>PRESTAMOS CDFI, LLC and CHICANOS POR LA CAUSA, INC.,<br><br>                    Defendants. | Civil Action No. 5:21-cv-04337-JMG<br><br>**[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Alicia Marshall, Daniel Pronsky, Paris Townsend, Nancilee Holland, Leona Owsley, Kolawole Ahmadou, Kiana Dervin, Kristina Henderson, Dustin Innis, Kelly Stalnaker and Jamie Jones (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, file this Second Amended Class Action Complaint and Jury Demand for damages and equitable relief against defendants Prestamos CDFI, LLC ("Prestamos") and Chicanos Por La Causa, Inc. ("CPLC") (collectively, "Defendants") for their respective roles in failing to fund approved Paycheck Protection Program ("PPP" or the "Program") loans. In support, Plaintiffs make the following allegations based upon information and belief except as to the allegations pertaining to the Plaintiffs which are based on personal knowledge. Plaintiffs' information and belief is based, among other things, on the ongoing investigation of their undersigned counsel which included, without limitation, a review of applicable documents, publicly-available information concerning the PPP and PPP loans, and media and other information, including

information available on the Internet. Plaintiffs believe that substantial additional evidentiary support will exist for their allegations after a reasonable opportunity for discovery.

## Summary of the Claims

1.      Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to, among many other things, provide some relief to America's small businesses and sole proprietors through the creation of the PPP.

2.      Administered by the United States Small Business Administration ("SBA"), the PPP was established to provide hundreds of billions of dollars of potentially forgivable loans to small businesses and sole proprietors in a quick and efficient manner.

3.      To ensure that small businesses and sole proprietors received PPP loan proceeds quickly, the applicable provisions of the PPP required lenders to fund PPP loans within ten days of SBA approval.

4.      Lenders that participated in the Program were entitled to fees payable by the SBA for each PPP loan the lenders processed.

5.      Defendant Prestamos was one of the SBA's authorized PPP lenders.

6.      In 2020, Prestamos processed 935 PPP loans totaling less than $27 million gross, thereby reportedly receiving $1.3 million in fees.

7.      Defendant Prestamos is and during all times relevant was wholly owned by defendant CPLC. Defendant CPLC at all times relevant controlled and dominated defendant Prestamos and Prestamos's PPP lending; shared certain of the same senior executives and directors; had a website that referred to and promoted Prestamos; publicly held out the companies as one and the same and repeatedly referred to them as "CPLC Prestamos" in CPLC's

2

Fiscal Year 2019-2020 Annual Report "A Chance to Change the World." *See* CPLC FY19-20,

Annual Report, at 7, available at https://cplc.org/assets/files/publications/CPLC%20FY19-

20%20Annual-Report.pdf (last visited May 1, 2022)) ("During the pandemic, *CPLC Prestamos*

is administering Paycheck Protection (PPP) loans to help small businesses keep their doors

open.") (emphasis added); reported on CPLC's own financial statements that it received

hundreds of millions of dollars in PPP loan processing fees; and is headquartered in a building

that is virtually adjacent to Prestamos's headquarters. *See* https://cplc.org/ (CPLC located in

Phoenix at 1112 E. Buckeye Road); https://www.prestamosloans.org/phoenix/ (Prestamos

located in Phoenix at 1024 E. Buckeye Road). In addition, CPLC is or was represented in

connection with two subpoenas Plaintiffs issued to CPLC by the same law firm that represents

Prestamos in this litigation.[1]

8.      After the SBA substantially increased the fees lenders would receive for PPP

loans made in 2021, CPLC caused Prestamos to exploit that increased fee opportunity by

dramatically ramping up its participation in PPP lending. Defendants were hugely successful in

that respect.

9.      In particular, in 2021 alone, Prestamos exponentially expanded its PPP lending,

reportedly processing 494,415 PPP loans totaling over *$7.6 billion* through May 31, 2021 --

more PPP loans than any other lender in 2021, and more than the total number of PPP loans

made in 2021 by Bank of America, PNC Bank, TD Bank and Wells Fargo *combined*. *See*

---

[1]      Plaintiffs issued two subpoenas to CPLC on or about February 15, 2022, one for
documents and the other for a deposition. CPLC moved to quash Plaintiffs' deposition subpoena,
and Plaintiffs moved to compel CPLC's document production. As of the filing of Plaintiffs'
motion for leave to file this proposed Second Amended Complaint, both motions remain pending
before Judge Diane J. Humetewa in the U.S. District Court for the District of Arizona, where
both CPLC and Prestamos are headquartered. *See Marshall, et al. v. Prestamos CDFI, LLC*, Case
No. 22-mc-00007-DJH (D. Ariz.).

Paycheck Protection Program (PPP) Report: Approvals through 05/31/2021, at 7, available at

Paycheck Protection Program (PPP) Report: Approvals through 05/31/2021 (sba.gov) (last

visited Sept. 21, 2021).

     10.    As a result, Prestamos has reportedly received nearly $1.2 billion in fees in 2021.

*See* Stacy Crowley & Ella Koeze, *How Two Start-Ups Reaped Billions in Fees on Small*

*Business Relief Loans*, N.Y. Times, June 27, 2021, Updated Oct. 11, 2021, available at

https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html (last

visited May 1, 2022).

     11.    Although Prestamos and not CPLC was the SBA-approved PPP lender, CPLC and

its senior personnel controlled and directed Prestamos's PPP lending and was the alter ego of

Prestamos. Thus, Prestamos upstreamed all or the bulk of its PPP lender processing fees directly

to CPLC and CPLC, in turn, booked and disclosed at least some portion of those fees in CPLC's

own financial statements.

     12.    In particular, according to CPLC's own Consolidated Financial Statements and

Supplementary Information for the year ended June 30, 2021 (the "Financial Statements"), "[f]or

each approved PPP loan, the Small Business Administration (SBA) covered a percentage of the

loan principal balance as a loan processing fee to the organization. The fee is amortized through

the term of each PPP loan. As of June 30, 2021, *the Organization* received $314,260,826 from

SBA, $5,086,196 was recognized as loan fee revenue and $309,174,630 was recorded as deferred

revenue." *See* ProPublica, Chicanos Por La Cause Inc., Consolidated Financial Statements, p.20

Year Ended June 30, 2021, available at

https://projects.propublica.org/nonprofits/display_audit/11175820211 (last visited May 2, 2022).

13.     In flagrant disregard of its contractual obligations to the class member borrowers, however, Prestamos failed to actually fund class member borrowers' SBA-approved PPP loans.

14.     Indeed, Plaintiffs and thousands of others each timely applied for PPP loans with Prestamos, had their loans approved by the SBA and assigned PPP loan numbers, and yet never were paid their PPP loan funds by Defendant.

## Parties

15.     Plaintiff Alicia Marshall ("Marshall"), a natural person residing in Sacramento, California, is a sole proprietor of an in-home healthcare business.

16.     Plaintiff Daniel Pronsky ("Pronsky"), a natural person residing in Reading, Pennsylvania, is a sole proprietor of a food catering business.

17.     Plaintiff Paris Townsend ("Townsend"), a natural person residing in San Bernadino, California, is a sole proprietor in the business of making and selling hair care products.

18.     Plaintiff Nancilee Holland ("Holland"), a natural person residing in Greenwich, Connecticut, is a sole proprietor of a real estate agency.

19.     Plaintiff Leona Owsley ("Owsley"), a natural person residing in El Dorado Springs, Missouri, is a sole proprietor of a construction business.

20.     Plaintiff Kolawole Ahmadou ("Ahmadou"), a natural person residing in Evanston, Illinois, is a sole proprietor of an in-home healthcare business.

21.     Plaintiff Kiana Dervin ("Dervin"), a natural person residing in Lynnwood, Washington, is a sole proprietor of a janitorial business.

22.     Plaintiff Kristina Henderson ("Henderson"), a natural person residing in Macomb, Michigan, is a sole proprietor of a clothing business.

23.     Plaintiff Dustin Innis ("Innis"), a natural person residing in Las Vegas, Nevada, is a sole proprietor of a carpet and upholstery cleaning business.

24.     Plaintiff Kelly Stalnaker ("Stalnaker"), a natural person presently residing in Arizona but previously and at all applicable times residing in Ravenna, Ohio, was a sole proprietor of a homemaker/personal care provider business.

25.     Plaintiff Jamie Jones ("Jones"), a natural person residing in Golden Valley, Arizona, is a sole proprietor of a delivery service.

26.     Defendant Prestamos is a limited liability company organized under the laws of the state of Arizona, having its principal place of business at 1024 E. Buckeye Road, Suite 270, Phoenix, Arizona 85034, with additional offices in Tucson, Arizona, Las Vegas and Reno, Nevada, and Santa Fe, New Mexico, according to its website. *See Prestamos Locations, available at* Prestamos Locations (prestamosloans.org) (last visited May 1, 2022).

27.     Defendant CPLC is a corporation also organized under the laws of the state of Arizona, having its principal place of business at 1112 E. Buckeye Road, Phoenix, Arizona 85034. CPLC is registered in Arizona purportedly as a domestic nonprofit corporation. *See* Ariz. Corp. Comm'n, Entity Information, available at https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=00758057 (last visited May 1, 2022).

## Jurisdiction & Venue

28.     This Court has jurisdiction under the Class Action Fairness Act because at least one member of the proposed class is a citizen of a different state than defendants Prestamos and CPLC; there are more than 100 members of the proposed class; and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

29.     This Court also has jurisdiction over defendant Prestamos because Prestamos had

substantial and direct contacts in this District by virtue of its agreement to fund plaintiff

Pronsky's PPP loan; by entering into PPP loan agreements with numerous other PPP borrowers

in this District; by committing to fund the PPP loans under the contractual loan agreements it

entered into with plaintiff Pronsky and numerous other PPP borrowers in this District; by its PPP

loan underwriting and review activities in connection with the PPP loans of borrowers in this

District; by obtaining PPP loan processing fees on PPP loans committed to borrowers in this

District; and by virtue of its communications and activities it undertook in this District and

concerning PPP applicants and borrowers in this District relating to PPP loans, PPP loan

forgiveness, interest on PPP loans and PPP loan processing fees. *See* SBA, Paycheck Protection

Program (PPP) Report, Approvals through 5/31/2021, p. 7, available at

https://www.sba.gov/sites/default/files/2021-06/PPP_Report_Public_210531-508.pdf (last

visited May 1, 2022). Further, this case was filed on October 1, 2021 and, despite lodging

numerous other challenges, defendant Prestamos has not challenged personal jurisdiction and is

estopped from doing so now.

30.     More particularly, and for further detail, defendant Prestamos committed to fund

at least 10,553 separate SBA-approved PPP loans through May 31, 2021 for qualified borrowers

residing in this District alone, for total PPP loan proceeds of at least $166 million according to

the SBA's own publicly available PPP loan data. *See* SBA, PPP FOIA, available at

https://data.sba.gov/dataset/ppp-foia (last visited May 1, 2022).

31.     Assuming that each such loan PPP loan generated loan processing fees of *at least*

$2,500.00 per loan, this means that defendant Prestamos obtained at least $26,382,500.00 in total

PPP loan fees on the backs of resident business owners located in this District (10,533 x $2,500.00).

32.     In connection with each of the numerous PPP loan agreements and millions of dollars in lender processing fees with borrowers in this District, defendant Prestamos purposefully availed itself of substantial and direct business activity in this District sufficient to subject itself to the personal jurisdiction of this Court.

33.     Further, for each such PPP loan, defendant Prestamos's role was not limited to entering into the standard form loan agreement contracts and funding the loans for Plaintiffs and other putative class member borrowers. In addition, Prestamos's role as the SBA-approved lender of PPP loans required it to underwrite and review each PPP loan individually. According to applicable regulations:

> "The lender, however, must do some basic 'underwriting.' Specifically, the PPP Regulations contain a section titled, "What do lenders have to do in terms of loan underwriting?" [86 Fed. Reg.] at 3707–08. The regulations enumerate four 'underwriting' steps:
>
> (1)     confirm receipt of the borrower certifications in the Form 2483 application;
>
> (2)     confirm receipt of documentation showing employment status of the applicant or if a business, documents showing employees as of February 2020;
>
> (3)     confirm the historic payroll (if the applicant had employees) by examining the documentation submitted; and
>
> (4)     comply with the Bank Secrecy Act ("BSA") or similar anti-money laundering procedures, such as a customer identification program ("COP"), designed to make sure the lender confirms the identity of the applicant.

*Id.* In addition to the above steps, the lender was obligated to 'review' each application. *Id.* at 3708 ('Each lender's underwriting obligation under the PPP is limited to the items above and reviewing the 'Paycheck Protection Borrower Application Form.')."

34.     Accordingly, this Court also has personal jurisdiction over defendant Prestamos by virtue of the underwriting and review process that Prestamos necessarily had to do as to each PPP borrower in this District, including but not limited to plaintiff Pronsky and the thousands of additional PPP borrowers in this District.

35.     This Court has jurisdiction over defendant CPLC because CPLC controlled, directed and participated in Prestamos's conduct in PPP lending even though Prestamos was the SBA-approved and qualified PPP lender; CPLC directed Prestamos to, and Prestamos in fact did, "upstream" to CPLC hundreds of millions of dollars in PPP loan processing fees Prestamos obtained from the PPP loans of Plaintiffs, class members and other borrowers as if CPLC and Prestamos were one and the same company; CPLC referred to CPLC and Prestamos as "CPLC Prestamos CDFI" and "CPLC PRESTAMOS LOAN PRODUCTS"; CPLC and Prestamos shared senior executives and directors and overlapping websites that promoted each other; Prestamos was at all times relevant CPLC's wholly-owned and controlled subsidiary and CPLC was Prestamos's alter ego at all times relevant in connection with PPP lending; and defendant Prestamos's contacts in this District in connection with PPP lending and the claims at issue are imputed to its corporate parent CPLC.

36.     Venue is proper in this judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

**Additional Factual Allegations**

**Background Concerning the
COVID-19 Pandemic and the PPP**

37.     On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a "pandemic." Two days later, on March 13, 2020, the United States declared a national emergency due to the COVID-19 pandemic.

38.     In response, on March 27, 2020, the United States Congress passed the largest economic stimulus package in the nation's history -- the CARES Act. The CARES Act amounted to over $2 trillion in aid, equivalent to roughly $6,000 per American, or 45% of all federal government spending for 2019.

39.     The CARES Act was enacted to provide immediate assistance to individuals, families, and businesses affected by the COVID-19 emergency.

40.     One facet of the CARES Act's approach to economic relief was the PPP. Recognizing the huge strain that the COVID-19 pandemic would likely impose on American small businesses, the PPP initially allocated $349 billion for loans to small businesses, sole proprietors, and nonprofit organizations, among others. These loans were intended to pay up to eight weeks of payroll costs (including benefits) and could also be used to pay interest on mortgages, rent, and utilities.

41.     PPP loans are guaranteed by the SBA, and the PPP provides for loan forgiveness if the borrower demonstrates that the funds were used in compliance with PPP regulations.

42.     The PPP has received several legislative renewals, modifications, and extensions. On April 24, 2020, the President signed the Paycheck Protection Program and Health Care Enhancement Act, which provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 was enacted, extending the deferral period for PPP loans, among other provisions. On July 4, 2020, the PPP was further amended to guarantee PPP loans to August 8, 2020. On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Economic Aid Act") was enacted, which further extended the PPP and allowed for the SBA to authorize second-draw PPP loans through March 31, 2021, available to borrowers who already used their previous PPP loan

proceeds for permitted expenditures. On March 11, 2021, the American Rescue Plan Act was signed into law, adding an additional $7.25 billion for PPP loans, bringing total appropriations for the program to $813.7 billion. Finally, on March 30, 2021, the PPP Extension Act was enacted, which extended the PPP application deadline to May 31, 2021, and gave the SBA until June 30, 2021 to process loan applications.

43.     PPP loans are generally available to businesses in operation as of February 15, 2020 that had salaried employees, as well as self-employed individuals. Businesses receiving PPP loans cannot have more than 500 employees and cannot be in bankruptcy. Further, applicants are required to certify that the "current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Currently, at least 60% of the proceeds must be used for payroll costs. The entire amount of any PPP loan is subject to forgiveness so long as the proceeds are used for eligible expenses.

44.     Under the Economic Aid Act, a PPP borrower is entitled to a second draw under narrower conditions than its first draw. For example, a second draw borrower must have 300 or fewer employees, must demonstrate that it sustained a certain percentage reduction in its gross receipts compared to 2019, and must have used its entire first draw proceeds prior to disbursement of its second draw proceeds. Second draw loans -- like first draw loans -- are also subject to forgiveness.

45.     Given the anticipated volume of PPP loan applications, Congress provided for PPP loan processing and funding through private lenders, with the SBA paying these lenders a fee for each processed PPP loan.

46.     For their participation, the PPP originally provided that lenders would receive fees at a rate of five percent for loans $350,000.00 or less, three percent for loans between

$350,000.00 and $2,000,000.00, and one percent for loans over $2,000,000.00. *See* SBA

Procedural Notice, Control No. 5000-20091 (Feb. 8, 2021), available at SBA Procedural Notice:

Second Updated PPP Processing Fee and 1502 Reporting (last accessed Sept. 17, 2021).

47.     To address institutional lenders' neglecting of PPP loan applications from many

small businesses -- especially minority, underserved, veteran, and women-owned businesses -- in

favor of larger PPP loans, the Economic Aid Act added that lenders processing loans of up to

$50,000.00 would receive an increased fee of fifty percent or $2,500.00, whichever is less, per

PPP loan beginning December 27, 2020.

48.     As the vast majority of PPP loans -- even those to the smallest businesses and sole

proprietors -- exceeded $5,000.00, PPP lenders received a flat fee of $2,500.00 for virtually

every PPP loan less than $50,000.00.

49.     On February 8, 2021, the SBA issued a new notice setting forth the procedure for

how lenders would be paid PPP loan fees by the SBA. *Id*. To apply for a PPP loan, a prospective

borrower would have to submit a standardized Borrower Application Form issued by the SBA

(SBA Form 2483 for first time borrowers, and SBA Form 2483-SD for second draw borrowers),

together with relevant payroll documentation, to a lender. Once the lender reviewed and

approved the loan application, the lender would submit the application to the SBA for approval.

50.     Following SBA approval of an application, the SBA would issue a ten-digit loan

identification number (known as a "GP [General Program] number") for the borrower's loan.

51.     Provided that the borrower had executed the loan documents, the lender was

required to disburse the PPP funds within ten days of SBA approval and assignment of the loan

number.

52.     If the PPP borrower did not sign and submit all of the required documents to the lender, then the PPP lender was required to report the loan and corresponding loan number as cancelled no later than twenty days from the SBA approval and assignment of the loan number.

53.     Lenders' compliance with the above PPP funding requirement was of paramount importance to applicants and borrowers for reasons beyond their need to get the PPP loan proceeds in a timely manner.

54.     Once the SBA approved a PPP loan and assigned it a loan number, the applicant could not apply for a PPP loan with any other lender because the applicant could not make all of the required certifications on another PPP loan application. Thus, once approved, the borrower was essentially "stuck" with the lender to whom it applied for the PPP loan, meaning that the borrower had to rely exclusively on the good faith of the lender to actually fund the loan.

55.     For both first draw and second draw PPP loans, a PPP loan applicant had to certify that they had not and would not receive another first draw or second draw loan, respectively.

56.     Since the lender's obligation to fund a PPP loan ran from the date the SBA approved and assigned a loan number, an applicant could not certify to another lender that they would not receive the first loan even if the first lender had failed to timely fund the loan.

57.     Once a PPP loan was funded, the lender had ten days to submit an SBA Form 1502 to report to the SBA that the loan proceeds had been disbursed.

58.     After the lender submitted a Form 1502 reporting the PPP loan proceeds as disbursed, the SBA would initiate payment of the processing fee to the lender.

59.     By submitting a Form 1502, the lender represented to the SBA that the PPP loan had been fully funded. Further, a lender was required to update the SBA with monthly Form 1502 reports detailing each PPP loan's status.

**Background Concerning Defendants**

60.     According to its website, Prestamos purports to be "your partner in economic development, small business growth and quality job creation." *See* Prestamos CDFI, available at https://www.prestamosloans.org/ (last visited May 1, 2022). Also, according to its website, Prestamos provides loan products and consulting services that "are designed for the emerging business owner seeking funding." *Id.*

61.     Prestamos is a Community Development Financial Institution ("CDFI"). CDFIs were established as part of the Riegle Community Development and Regulatory Improvement Act of 1994. *See* What Are CDFIs, available at https://www.cdfifund.gov/sites/cdfi/files/documents/cdfi_infographic_v08a.pdf (last visited May 1, 2022). There are reportedly 1,000 CDFIs operating nationwide. *Id.*

62.     Prestamos is owned by defendant CPLC. Although CPLC purports to be a domestic nonprofit corporation organized under Arizona law, it states on its website that "CPLC owns and manages mission-driven for-profit subsidiaries, whose income helps to fund our nonprofit charitable initiatives." *See* CPLS, Who We Are, available at https://cplc.org/about/about.php (last visited May 1, 2022).

63.     Further, as a nonprofit, CPLC is exempt from income tax provided it complies with applicable provisions of the Internal Revenue Code and regulations of the U.S. Internal Revenue Service (the "IRS"). CPLC also is obligated to file with the IRS each year a Form 990

Return of Organization Exempt From Income Tax, including a Schedule A Public Charity Status and Public Support, among other things.

64.     CPLC's 2019 Form 990 reported total revenues for the tax year beginning July 1, 2019 and ending June 30, 2020 of $87,628,824 compared to total revenue of $72,381,458 the prior year; states that it paid $40,368,642 out in the period July 1, 2019 to June 30, 2020 for salaries, other compensation, and employee benefits compared to $37,822,034 in the prior period; paid $2,146,064 in grants and similar amounts in the period July 1, 2019 to June 30, 2020 compared to $1,307,549 in the prior period; identified its President and CEO, David Adame ("Adame"), as its principal officer; and is signed by its CFO, Alicia Nunez ("Nunez"). *See* ProPublica, Chicanos Por La Causa Inc., Form 990 for period ending June 2020, available at https://projects.propublica.org/nonprofits/display_990/860227210/05_2021_prefixes_84-90%2F860227210_202006_990_2021051818121912 (last visited May 1, 2022).

65.     Adame serves as CPLC's President and CEO; Nunez serves as CPLC's Executive Vice President and CFO; and Max Gonzales ("Gonzales") serves as CPLC's Executive Vice President and Strategy & Relationship Management. *See* CPLC, Leadership, available at https://cplc.org/about/leadership.php (last visited May 1, 2022). In addition, and at all times relevant, Adame, Gonzales and Nunez were the *sole* members of defendant Prestamos's governing Board of Directors. *See* Prestamos CDFI, About Us, available at https://www.prestamosloans.org/about-prestamos/ (last visited May 1, 2022). CPLC's Board Members at large Jose Antonio Habre and Dan Hernandez also served on Prestamos's Community Advisory Board. *Id*.

66.     Further, Defendants shared not just common board of director membership but also senior executives. For example, at all times relevant CPLC's Executive Vice President

Economic Development was Jose Martinez ("Martinez"). *See* CPLC, Leadership, available at https://cplc.org/about/leadership.php (last visited May 1, 2022). *Accord* Jose Martinez, LinkedIn, available at https://www.linkedin.com/ in/jose-martinez-a7173b52/details/experience/ (last visited May 1, 2022). Also at all times relevant, Martinez simultaneously served as President of defendant Prestamos and actually signed in his capacity as President of Prestamos the standard "Notice – No Oral Agreements" form that accompanied the notes Plaintiffs and other SBA-approved borrowers entered into with Prestamos to obtain their PPP loan agreements. *See* Exhibit A attached hereto. In fact, Martinez's email address used in connection with Prestamos's PPP lending was at his address at cplc.org.

67.     Defendants also promoted and referred to each other and held themselves out publicly as being under common control in their websites and other publications. For example, Prestamos's website states that "Prestamos *through its parent corporation*, Chicanos Por La Causa, Inc., has administered a variety of lending programs since 1980." *See* Prestamos CDFI, About Us, available at https://www.prestamosloans.org/about-prestamos/ (last visited May 1, 2022) (emphasis added). Similarly, in CPLC's fiscal year 2019 – 2020 Annual Report, CPLC repeatedly referred to the two Defendants as one, stating as follows:

> *CPLC Prestamos* is filling a critical need to help small businesses keep the lights on during COVID-19. *CPLC Prestamos* was formed to serve small business in low-income communities and Latino and minority-owned businesses. We provide capital to businesses that don't have banking relationships or might not qualify for loans. During the pandemic, *CPLC Prestamos* is administering Paycheck Protection (PPP) loans to help small businesses keep their doors open. We ramped up our operations, serving more than 900 businesses and deploying $26 million in capital to save almost 4,000 jobs.

*See* CPLC FY19-20, Annual Report, at 7, available at

https://cplc.org/assets/files/publications/CPLC%20FY19-20%20Annual-Report.pdf (emphasis

added) (last visited May 1, 2022).

68.    CPLC also reflected its control over Prestamos in CPLC's Consolidated Financial

Statements and Supplementary Information for the fiscal year July 1, 2019 – June 30, 2020 (the

"Financial Statements"). For example, CPLC stated in those Financial Statements as follows:

"Starting in May 2020, *the Organization* began participating in the Paycheck Protection

Program. Loan origination fees associated with PPP loans are deferred and amortized through the

earlier of SBA forgiveness obtained or through the term of the loan." *See* ProPublica, Chicanos

Por La Causa Inc., at 18 available at

https://projects.propublica.org/nonprofits/display_audit/11175820211 (emphasis added) (last

visited May 1, 2022). Similarly, while later also stating in those Financial Statements that

defendant Prestamos "participated in" PPP lending, CPLC also stated in that very same

paragraph regarding PPP loan processing fees that, "[a]s of June 30, 2021, *the Organization*

received $314,260,826 from SBA, $5,086,196 was recognized as loan fee revenue and

$309,174,630 was recorded as deferred revenue." *Id*. at 20 (emphasis added).

69.    Prestamos represents on its website that, as a CDFI, it is "dedicated to helping

economic growth in underserved areas by providing financing solutions to businesses and

economic development projects." *See* Prestamos CDFI, available at

https://www.prestamosloans.org/ (last visited May 1, 2022).

70.    Since many sole proprietors' PPP loans were in amounts less than $10,000.00,

PPP lenders like Prestamos were generating processing fees of only several hundred dollars for

making those loans in 2020.

71.     Pursuant to the new 2021 increased fee schedule, however, lenders like Prestamos could count on collecting a $2,500.00 flat fee for nearly every PPP loan less than $50,000.00.

72.     Taking into consideration the incredible demand for PPP loans less than $50,000.00 by sole proprietors, independent contractors, self-employed individuals and other underserved small businesses together with the more lucrative fee schedule, Prestamos saw an opportunity to obtain enormous amounts of lender fees by booking a high volume of PPP loans under $50,000.00.

73.     CPLC and/or Prestamos reportedly contracted with Blue Acorn PPP, LLC (and/or its affiliate FinCap, Inc. or their affiliates) ("Blueacorn") in 2021 and potentially other third parties to help identify borrowers to whom Prestamos could make PPP loans and assist in the PPP paperwork process.

74.     Blueacorn was created in 2020.

75.     Blueacorn is neither a bank nor a lender and, therefore, cannot actually make PPP loans.

76.     In general, only SBA section 7(a)-approved lenders were approved to make PPP loans, together with any additional lenders determined by the Administrator of the SBA and the Secretary of the U.S. Treasury to also be qualified to make such loans. *See* 86 Fed. Reg. 3692 (Jan. 14, 2021), available at Federal Register :: Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act (last visited May 1, 2022).

77.     Accordingly, Plaintiffs and other similarly situated class member borrowers contracted with Prestamos as the lender obligated to make the PPP loans.

78.     For its role in identifying potential borrowers and helping with the PPP paperwork, Blueacorn reportedly received a part of the lender's fees pursuant to a separate

contractual relationship between the lender and Blueacorn. *See* Stacy Crowley & Ella Koeze,

*How Two Start-Ups Reaped Billions in Fees on Small Business Relief Loans*, N.Y. Times,

June 27, 2021, Updated Oct. 11, 2021, available at

https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html (last

visited May 1, 2022).

**Defendants Exploit PPP Lending**

79.     At all times relevant, CPLC and its senior executives, including Adame, Gonzales

and Nunez who simultaneously were also the sole members of Prestamos's Board of Directors,

as well as Martinez who simultaneously served as CPLC's Executive Vice President and

Prestamos's President and other CPLC executives, controlled Prestamos, including Defendants'

plan for Prestamos to dramatically ramp up its PPP lending activity so that *Defendants* could be

enriched thereby.

80.     Defendants succeeded in that respect. In particular as noted above, Defendants

exploited the increased fees to be paid by the SBA on smaller PPP loans in 2021 by reportedly

having Prestamos agree to fund 494,415 PPP loans totaling over *$7.6 billion* in loan proceeds --

more loans than any other lender, and more loans than Bank of America, PNC Bank, TD Bank

and Wells Fargo *combined*. *See* SBA, Paycheck Protection Program (PPP) Report, Approvals

through 5/31/2021, p. 7, available at https://www.sba.gov/sites/default/files/2021-

06/PPP_Report_Public_210531-508.pdf (last visited May 1, 2022).

81.     As a result, Prestamos reportedly generated nearly $1.2 billion in PPP loan fees in

2021. *See* Stacy Crowley & Ella Koeze, *How Two Start-Ups Reaped Billions in Fees on Small

Business Relief Loans*, N.Y. Times, June 27, 2021, Updated Oct. 11, 2021, available at

https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html (last

visited May 1, 2022) ("Last year, Prestamos made $1.3 million for its lending. This year, it will collect nearly $1.2 billion, according to a New York Times calculation of lenders' fees based on government data.").

82.     Further, according to CPLC's own Financial Statements, defendant Prestamos upstreamed to CPLC some or all of the net PPP loan processing fees Prestamos obtained. *See* ProPublica, Chicanos Por La Cause Inc., Consolidated Financial Statements, p.20 Year Ended June 30, 2021, available at https://projects.propublica.org/nonprofits/display_audit/11175820211 (last visited May 2, 2022) ("As of June 30, 2021, *the Organization* received $314,260,826 from SBA, $5,086,196 was recognized as loan fee revenue and $309,174,630 was recorded as deferred revenue.") (emphasis added).

83.     Even though Prestamos and not CPLC was the SBA-approved PPP lender, CPLC also blurred the distinction between it and Prestamos and referred to and touted the success of Prestamos's PPP lending as its own in CPLC's own website, as follows:

> "In 2021, *CPLC Prestamos CDFI* was named the #1 U.S. Small Business Administration PPP lender by number of loans and the #3 lender by dollar volume with $7.6 billion in approved loans with an average loan amount of $15,526 serving 78% minority owned businesses." (emphasis added);

> "*CPLC Prestamos* is an award-winning Community Development Financial Institution (CDFI) …" (emphasis added); and

> "*CPLC PRESTAMOS* LOAN PRODUCTS" (emphasis added)

*See* Chicanos Por La Causa, Small Business Lending, available at

https://cplc.org/econ/lending.php (last visited May 1, 2022).

84.     In sum, CPLC participated directly in Prestamos's PPP lending even though Prestamos and not CPLC was the SBA-approved lender; controlled and directed Prestamos's PPP lending activities through its common management and control and 100% ownership of

Prestamos; exploited Prestamos's status as the SBA-approved PPP lender; enriched itself by causing Prestamos to upstream to CPLC hundreds of millions of dollars in PPP loan processing fees including on the backs of Plaintiffs and other class members whose SBA-approved PPP loans Prestamos reported as funded to obtain the PPP loan processing fees but were, in fact, not funded; and, in turn, improperly enriched itself and its leadership from a federally-funded program designed to actually help small minority, women and other business putative class member owners whose businesses were struggling amid the COVID-19 pandemic and whose mission Defendants purported to serve.

85.    Adame even touted the success of the two companies' PPP lending publicly in the media, stating as follows: "'What we did together is absolutely incredible,' said David Adame, the chief executive of Chicanos Por La Cause, the parent organization of Prestamos. 'The myth that you can't serve communities of color, or underserved communities, with a technology model, at scale - we've blown that away.'" *See* Stacy Crowley & Ella Koeze, *How Two Start-Ups Reaped Billions in Fees on Small Business Relief Loans*, N.Y. Times, June 27, 2021, Updated Oct. 11, 2021, available at https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html (last visited May 1, 2022)

**Prestamos's Participation in the**
**PPP Liquidity Facility**

86.    To facilitate lending under the SBA's PPP, the Federal Reserve supplied liquidity to Prestamos and other participating financial institutions through term financing to be secured by the PPP loans. *See* Board of Governors of the Federal Reserve System, Paycheck Protection Program Liquidity Facility (PPPLF), available at https://www.federalreserve.gov/monetarypolicy/ppplf.htm (last visited May 1, 2022).

87.     In particular, the Paycheck Protection Program Liquidity Facility ("PPPLF") was authorized under § 13(3) of the Federal Reserve Act "to facilitate lending by eligible borrowers [*i.e.*, PPP lenders] to small businesses under the [PPP]. … Under the Facility, the Federal Reserve Banks ('Reserve Banks') will lend to eligible borrowers [*i.e.*, PPP lenders] on a non-recourse basis, taking PPP Loans as collateral." *See* Paycheck Protection Program Liquidity Facility Term Sheet, available at

https://www.federalreserve.gov/newsevents/pressreleases/files/monetary20210625a1.pdf (last visited May 1, 2022).

88.     Further, "[a]ll lenders that are eligible to originate PPP Loans are eligible to borrow under the Facility." *Id.*

89.     For Prestamos and other qualified CDFI PPP lenders, the lending Federal Reserve Bank was the Federal Reserve Bank of Cleveland. *Id.*

90.     Only SBA-guaranteed PPP loans are eligible to serve as collateral for PPPLF advances, and the principal amount advanced under the PPPLF was to be equal to the principal amount of the PPP loan pledged to secure the extension of credit. *Id.*

91.     Prestamos received billions of dollars of advances through the PPPLF as specified more fully below.

92.     In fact, although the PPP application period ended on May 31, 2021 and the life cycle of a PPP loan application should only take a few business days, Prestamos continued to receive huge advances through the PPPLF between June 30, 2021 and July 30, 2021, after the deadline for processing loan applications.

93.     For example, on June 30, 2021 alone, Prestamos received PPPLF cash advances of approximately $118,743,226.

94.     In particular, according to a report by the Federal Reserve to the U.S. Congress dated September 13, 2021 "PPPLF Transaction-specific Disclosures (XLSX)," Prestamos received the following specific cash advances from the PPPLF:

| Date of Advance | Amount |
|---|---|
| 2020-05-15 | $839,761.76 |
| 2020-05-19 | $6,047,880.04 |
| 2020-05-20 | $862,834.00 |
| 2020-05-22 | $1,156,497.62 |
| 2020-05-27 | $416,800.54 |
| 2020-05-29 | $696,356.87 |
| 2020-06-01 | $492,218.22 |
| 2020-06-03 | $244,555.74 |
| 2020-06-04 | $559,762.54 |
| 2020-06-08 | $11,242.95 |
| 2020-06-08 | $559,314.27 |
| 2020-06-08 | $63,848.04 |
| 2020-06-08 | $614,343.47 |
| 2020-06-26 | $177,591.04 |
| 2020-06-26 | $221,991.60 |
| 2020-06-26 | $198,670.00 |
| 2020-06-26 | $285,888.69 |
| 2020-06-26 | $103,249.00 |
| 2020-06-26 | $348,119.55 |
| 2020-06-30 | $210,223.83 |
| 2020-07-01 | $303,478.31 |
| 2020-07-01 | $486,363.72 |
| 2020-07-01 | $829,175.81 |
| 2020-07-07 | $1,639,353.02 |
| 2020-07-09 | $1,070,316.28 |
| 2020-07-14 | $320,769.72 |

| Date of Advance | Amount |
|---|---|
| 2020-07-14 | $320,335.47 |
| 2020-07-31 | $598,038.85 |
| 2020-07-31 | $1,585,572.39 |
| 2020-07-31 | $333,622.00 |
| 2020-08-11 | $1,027,167.09 |
| 2020-08-11 | $1,819,532.00 |
| 2020-08-11 | $256,166.50 |
| 2020-09-22 | $1,209,795.10 |
| 2020-09-23 | $47,152.00 |
| 2020-09-23 | $322,815.25 |
| 2020-09-23 | $112,162.00 |
| **2020 Total** | **$26,392,965.28** |

| Date of Advance | Amount |
|---|---|
| 2021-01-29 | $186,091.00 |
| 2021-02-04 | $2,706,582.04 |
| 2021-02-08 | $2,633,372.65 |
| 2021-02-09 | $2,974,669.86 |
| 2021-02-18 | $3,270,876.03 |
| 2021-02-18 | $1,405,472.00 |
| 2021-02-23 | $2,955,206.00 |
| 2021-02-26 | $2,975,445.15 |
| 2021-03-10 | $1,137,906.71 |
| 2021-03-10 | $574,411.00 |
| 2021-03-18 | $285,612.00 |
| 2021-03-18 | $1,920,037.00 |
| 2021-03-24 | $1,376,450.00 |
| 2021-03-24 | $1,394,589.00 |
| 2021-04-05 | $2,036,898.00 |
| 2021-04-14 | $1,857,735.83 |
| 2021-04-14 | $1,218,922.00 |

| Date of Advance | Amount |
|:---:|:---:|
| 2021-04-14 | $2,080,722.00 |
| 2021-04-14 | $549,184.00 |
| 2021-04-19 | $2,781,743.00 |
| 2021-04-27 | $2,385,498.00 |
| 2021-05-05 | $542,247,559.00 |
| 2021-05-07 | $977,283,838.00 |
| 2021-05-11 | $219,875,856.00 |
| 2021-05-12 | $11,638,792.00 |
| 2021-05-12 | $15,011,946.00 |
| 2021-05-12 | $22,711,165.00 |
| 2021-05-14 | $261,721,437.00 |
| 2021-05-14 | $71,807,843.00 |
| 2021-05-14 | $9,724,231.00 |
| 2021-05-14 | $5,800,825.00 |
| 2021-05-14 | $1,394,114.00 |
| 2021-05-14 | $3,236,837.00 |
| 2021-05-17 | $2,820,014.00 |
| 2021-05-17 | $2,000,798.00 |
| 2021-05-18 | $3,013,786.00 |
| 2021-05-18 | $3,094,488.00 |
| 2021-05-19 | $752,007,807.00 |
| 2021-05-20 | $24,508,694.00 |
| 2021-05-20 | $129,048,483.00 |
| 2021-05-21 | $383,962,452.00 |
| 2021-05-24 | $553,643,404.00 |
| 2021-05-26 | $287,698,867.00 |
| 2021-05-26 | $78,487,436.00 |
| 2021-05-26 | $21,918,317.00 |
| 2021-05-26 | $6,212,247.00 |
| 2021-05-26 | $8,109,147.00 |

| Date of Advance | Amount |
| --- | --- |
| 2021-05-28 | $8,589,635.00 |
| 2021-05-28 | $11,371,049.00 |
| 2021-05-28 | $184,579,114.00 |
| 2021-06-02 | $25,025,683.00 |
| 2021-06-02 | $363,445,193.00 |
| 2021-06-03 | $487,925,246.00 |
| 2021-06-04 | $55,686,186.00 |
| 2021-06-08 | $278,866,006.00 |
| 2021-06-08 | $52,432,880.00 |
| 2021-06-09 | $674,168,631.00 |
| 2021-06-10 | $235,611,832.00 |
| 2021-06-15 | $24,013,181.00 |
| 2021-06-15 | $8,772,946.00 |
| 2021-06-15 | $10,593,069.00 |
| 2021-06-15 | $13,035,119.00 |
| 2021-06-15 | $8,866,293.00 |
| 2021-06-17 | $13,428,841.00 |
| 2021-06-17 | $5,676,633.00 |
| 2021-06-18 | $6,658,965.00 |
| 2021-06-18 | $2,304,017.00 |
| 2021-06-18 | $2,397,599.00 |
| 2021-06-18 | $6,799,943.00 |
| 2021-06-18 | $4,549,067.00 |
| 2021-06-21 | $11,740,892.00 |
| 2021-06-22 | $5,148,262.00 |
| 2021-06-24 | $2,473,148.00 |
| 2021-06-24 | $2,672,552.00 |
| 2021-06-24 | $12,965,069.00 |
| 2021-06-24 | $41,186,983.00 |
| 2021-06-24 | $16,493,297.00 |

| Date of Advance | Amount |
|:---:|:---:|
| 2021-06-30 | $7,453,648.00 |
| 2021-06-30 | $110,650,628.00 |
| 2021-06-30 | $638,950.00 |
| 2021-07-02 | $41,664.00 |
| 2021-07-02 | $435,987.00 |
| 2021-07-02 | $540,429.00 |
| 2021-07-07 | $329,417.00 |
| 2021-07-07 | $62,496.00 |
| 2021-07-12 | $149,699.00 |
| 2021-07-12 | $176,781.00 |
| 2021-07-14 | $7,871,678.00 |
| 2021-07-29 | $20,832.00 |
| 2021-07-30 | $598,787.00 |
| **2021 Total** | **$7,144,136,133.27** |

*See* Board of Governors of the Federal Reserve System, Paycheck Protection Program Liquidity Facility (PPPLF), available at https://www.federalreserve.gov/monetarypolicy/ppplf.htm (last visited May 1, 2022).

95.     As alleged below, while Prestamos received over $7.1 billion from the PPPLF in 2021 alone, Prestamos unjustifiably failed to disburse PPP loan funds approved by the SBA to Plaintiffs and numerous other SBA-approved borrower members of the proposed class.

96.     Prestamos failed to disburse the proceeds of class member approved loans despite having actually received the unfunded PPP loan proceeds from the PPPLF and other sources.

**Prestamos's Failure to Fund
Plaintiff Marshall's PPP Loan**

97.     When the COVID-19 pandemic began, plaintiff Marshall was, and continues to be, in the business of providing in-home healthcare in the Sacramento, California area.

27

98.     Due to the pandemic, Marshall was not able to provide in-home care with the same frequency and, as a result, lost significant income.

99.     On or about April 21, 2021, Marshall applied for a PPP loan with Prestamos. Marshall submitted all requested documentation and information, including but not limited to the standard form Note and accompanying documents that all class member borrowers similarly submitted to Prestamos.

100.    Plaintiff Marshall and class members formed binding and enforceable agreements with Prestamos when they completed and submitted the Note and other applicable accompanying documents to Prestamos.

101.    In particular, the Note also included an Additional and Correction Documents Agreement (Errors and Omissions Agreement) (the "Additional Agreement") between Prestamos and plaintiff Marshall; a Business Purpose Statement; a Notice - No Oral Agreements bearing the signature of Prestamos's President Jose Martinez ("Martinez") and plaintiff Marshall; a Written Consent of Governing Body form for Marshall to represent that she is authorized to receive the loan and on which Prestamos may rely; an IRS W-9 Request for Taxpayer Identification Number and Certification; and an Information and Bank Account Certification and Authorization form identifying the bank or other account to which Prestamos would send the funds (collectively, the "Loan Documents").

102.    On or about April 22, 2021, the SBA approved Marshall's PPP loan application and assigned it a loan number (SBA Loan Number 8282208801).

103.    Marshall was approved for a PPP loan in the amount of $7,915.00.

104.    The Note identified the SBA loan number and amount, defendant Prestamos as the lender and plaintiff Marshall as the borrower; set forth payment terms, potential events of

default, Prestamos's rights in the event of default, and other terms and conditions; and provided the terms for plaintiff Marshall to repay the loan to Prestamos if it was not forgiven, among other things.

105.    On April 29, 2021, Marshall signed and returned the Loan Documents in order to obtain the $7,915.00 PPP loan.

106.    Despite properly and timely completing, signing and submitting the Loan Documents and multiple additional attempts to obtain the loan proceeds, Marshall never received the proceeds of her SBA-approved PPP loan.

107.    Marshall also took additional steps to obtain her SBA-approved loan. For example, on August 2, 2021, Marshall contacted her local SBA office about Prestamos's failure to fund her PPP loan.

108.    Similarly, on August 3, 2021, Marshall emailed the SBA to again pursue funding of her PPP loan.

109.    On August 3, 2021, the SBA office responded and provided Marshall with the following information about her PPP loan:

> Alicia Marshall West Sacramento CA Amount $7,915 Status Disbursed Current
>
> Loan 82822088-01      App 29343623      Funded 04/22/2021[.]

110.    Marshall also continued her attempts to collect the PPP loan proceeds directly with Prestamos. For example, on September 4, 2021, Marshall emailed Prestamos's President Martinez stating that "I was SBA approved on April 22nd 2021 and I signed a promissory note with you on April 29th 2021"; that "I understand there is a lot of fraud going on but my business is legitimate"; that "I don't understand why my loan was approved money was sent and now its cancelled"; that "I would appreciate if you can explain this to me or look into it and see what

went wrong"; and that "I would hope that you being president of a rapidly growing respected business would not want any of your customers to have a negative experience dealing with your company so I have faith that you will be able to resolve this issue promptly!"

111.    Although the SBA's records reported that plaintiff Marshall's PPP loan had actually been funded, Marshall never received any PPP loan proceeds despite her repeated attempts to actually get funded.

112.    The SBA's record of the alleged disbursement of Marshall's loan proceeds was presumably based on data Prestamos provided to the SBA.

113.    Thus, while Prestamos agreed to extend credit to Marshall by identifying itself as her lender in the Note -- that is, fund her SBA-approved loan -- Prestamos never actually extended credit to Marshall because it failed to fund her PPP loan.

114.    In fact, on September 21, 2021, the SBA sent an email to plaintiff Marshall stating that she is eligible to apply "for PPP Direct Forgiveness because your lender has opted in and you have a PPP loan amount of $150,000 or less."

115.    Despite the SBA's September 21, 2021 email inviting plaintiff Marshall to apply for loan forgiveness and Marshall's repeated attempts to get funding, however, plaintiff Marshall never received any PPP loan proceeds.

116.    Having properly completed and returned all required Loan Documents, plaintiff Marshall and all class members were entitled to timely disbursement of their PPP loan funds.

117.    Having not timely disbursed plaintiff Marshall's and other class members' PPP loan funds, Prestamos was obligated to timely and properly cancel their PPP loan requests.

118.    Prestamos has neither disbursed PPP loan funds to plaintiff Marshall and the members of the class nor canceled their loan requests.

119.    Prestamos's failure to fund the loan requests of plaintiff Marshall and the class or timely cancel them after failing to properly fund the loans also prevented plaintiff Marshall and the members of the class from pursuing their loan requests with another PPP lender.

120.    Prestamos's failure to fund Marshall's SBA-approved PPP loan deprived Marshall of funds that would have directly assisted in the operation of her in-home healthcare business and resulted in lost opportunities and other consequential damages.

121.    Prestamos's failure to disburse PPP loan funds to plaintiff Marshall and the members of the class after agreeing to do so, has left plaintiff Marshall and the class members potentially obligated by way of the parties' contractual agreements set forth in the Loan Documents to repay funds they never received.

122.    Plaintiff Marshall and other members of the class have also been injured in that the loan forgiveness requires affirming, under threat of criminal penalty, that PPP loan funds were used in a particular manner and plaintiff Marshall and other members of the class cannot affirm the nature of the use of funds they never received.

**Prestamos's Failure to Fund**
**Plaintiff Pronsky's PPP Loan**

123.    When the COVID-19 pandemic began, plaintiff Pronsky was, and continues to be, in the barbeque catering business in the Reading, Pennsylvania area.

124.    Plaintiff Pronsky was, and is, in the business of operating a barbeque catering business in and around Reading, Pennsylvania.

125.    Due to the pandemic, Pronsky's catering business lost significant income.

126.    Accordingly, in or about May 2021, Pronsky also applied for a PPP loan.

127.    On May 27, 2021, the SBA approved Pronsky's PPP loan application and assigned it a loan number (SBA Loan Number 4628549010).

128.     Pronsky was approved for a PPP loan in the amount of $8,332.00.

129.     Also on May 27, 2021, Pronsky received the same form PPP loan promissory Note and accompanying additional Loan Documents that plaintiff Marshall had also received.

130.     Additionally, on May 27, 2021, Pronsky signed and returned the Loan Documents in order to obtain the $8,332.00 PPP loan.

131.     Despite properly and timely completing, signing and submitting the Loan Documents, Pronsky never received the proceeds of his SBA-approved PPP loan.

132.     Prestamos's failure to fund Pronsky's SBA-approved PPP loan deprived Pronsky of funds that would have assisted in the operation of his catering business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Townsend's PPP Loan**

133.     When the COVID-19 pandemic began, plaintiff Townsend was, and continues to be, in the business of making and selling hair care products in the San Bernadino, California area.

134.     Due to the pandemic, Townsend's hair care business lost significant income.

135.     Accordingly, on or about May 6, 2021, Townsend applied for a PPP loan.

136.     Also in May 2021, the SBA approved Townsend's PPP loan application and assigned it a loan number (SBA Loan Number 4476579008).

137.     Townsend was approved for a PPP loan in the amount of $20,012.00.

138.     On or about May 27, 2021, Townsend received the same form PPP loan promissory Note and accompanying additional Loan Documents that plaintiff Marshall had also received.

32

139.    Additionally, on May 27, 2021, Townsend signed and returned the Loan Documents in order to obtain the $20,012.00 PPP loan.

140.    Despite properly and timely completing, signing and submitting the Loan Documents, Townsend never received the proceeds of her SBA-approved PPP loan.

141.    Prestamos's failure to fund Townsend's SBA-approved PPP loan deprived Townsend of funds that would have directly assisted in the operation of her hair care products business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Holland's PPP Loan**

142.    When the COVID-19 pandemic began, plaintiff Holland was, and continues to be, in the real estate business in the Greenwich, Connecticut area.

143.    Due to the pandemic, Holland's real estate business lost significant income.

144.    In or about May 2021, Holland applied for a PPP loan with Prestamos. Holland submitted all requested documentation and information.

145.    Also in May 2021, the SBA approved Holland's PPP loan application and assigned it a loan number (SBA Loan Number 1427199001).

146.    Holland was approved for a PPP loan in the amount of $20,832.00.

147.    On May 19, 2021, Holland received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

148.    Also on May 19, 2021, Holland signed and returned the Loan Documents in order to obtain the $20,832.00 PPP loan.

149.    Despite properly and timely completing, signing and submitting the Loan Documents, Holland never received the proceeds of her SBA-approved PPP loan.

150.     Prestamos failed to fund the loan despite additional steps by Holland to obtain the PPP loan proceeds. For example, Holland wrote an email to Prestamos's President Martinez on August 13, 2021 stating that "I applied in May, was approved and signed the promissory note 19 May"; that "[t]he SBA website shows my funds disbursed as of May"; and that "I am writing to you to request your assistance in this matter." Neither Prestamos nor Martinez responded to Holland's August 13 email.

151.     Holland also sought the assistance of the SBA to obtain funding, and the SBA, in turn, similarly requested the assistance of Prestamos and its President Martinez. Specifically, according to a September 20, 2021 email from SBA employee John Xu to Martinez:

> "**Subject: Nancilee Realty Greenwich CT**
>
> Hi Jose,
>
> Ms. Holland contacted SBA regarding her PPP. She stated that the application was approved but she did not receive the funds.
>
> I found your name under her loan application, and the funds were disbursed currently in our system as follows.
>
> Can you or your staff look into the case and get it back to her?
>
> **Nancilee Realty**
> **Greenwich CT**
> Amount **$20,832**
> Status **Disbursed Client**
> Loan **14271990-01**
> App **30585546**
> Funded **05/13/2021**."

152.     Holland still did not receive any response from Prestamos or Martinez in response to her inquiries.

153.     On October 1, 2021 -- the very day this lawsuit was filed -- Holland faxed a letter to Martinez stating as follows:

"1 October, 2021

VIA FACSIMILE TO 602-[ Fax no. omitted]

JOSE MARTINEZ
PRESTAMOS CDFI LLC
1024 E. Buckeye Rd #270
Phoenix, AZ 85034

RE: SBA Loan No. 1427199001

Mr. Martinez:

As evidenced by the attached documents, I was approved by the SBA for a
PPP loan in May, 2020. Due to the issues outlined in the email send [sic]
to you in August, I have still not received my funds. The SBA records
show this payment was disbursed in May.

I have not received a response from you to my email of August 13th. Nor
have you responded to the emails from Mr. Xu of the SBA. Kindly
provide the courtesy of a response. I can be reached at [tel. no. omitted].

Nancilee Holland"

154.     Despite Holland's multiple additional attempts to obtain the loan proceeds,

Prestamos failed to fund Holland's SBA-approved PPP loan.

155.     Prestamos's failure to fund Holland's SBA-approved PPP loan deprived Holland

of funds that would have assisted in the operation of her real estate brokerage business and

resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund
Plaintiff Owsley's PPP Loan**

156.     When the COVID-19 pandemic began, plaintiff Owsley was, and continues to be,

in the construction business in the El Dorado Springs, Missouri area.

157.     Due to the pandemic, Owsley's construction business lost significant income.

158.     In or about May 2021, Owsley applied for a PPP loan with Prestamos. Owsley submitted all requested documentation and information.

159.     Also in May 2021, the SBA approved Owsley's PPP loan application and assigned it a loan number (SBA Loan Number 4680379004).

160.     Owsley was approved for a PPP loan in the amount of $6,250.00.

161.     On or about May 27, 2021, Owsley received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

162.     On May 27, 2021, Owsley signed and returned the Loan Documents in order to obtain the $6,250.00 PPP loan.

163.     Despite properly and timely completing, signing and submitting the Loan Documents, Owsley never received the proceeds of her SBA-approved PPP loan.

164.     Prestamos's failure to fund Owsley's SBA-approved PPP loan deprived Owsley of funds that would have assisted in the operation of her construction business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Ahmadou's PPP Loan**

165.     When the COVID-19 pandemic began, plaintiff Ahmadou was, and continues to be, in the home healthcare business in the Evanston, Illinois area.

166.     Due to the pandemic, Ahmadou's construction business lost significant income.

167.     In or about May 2021, Ahmadou applied for a PPP loan with Prestamos. Ahmadou submitted all requested documentation and information.

168.     Also in May 2021, the SBA approved Ahmadou's PPP loan application and assigned it a loan number (SBA Loan Number 8166799007).

169.     Ahmadou was approved for a PPP loan in the amount of $20,832.00.

170.    In May 2021, Ahmadou received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

171.    Also in May 2021, Ahmadou signed and returned the Loan Documents in order to obtain the $20,832.00 PPP loan.

172.    Despite properly and timely completing, signing and submitting the Loan Documents, Ahmadou never received the proceeds of his SBA-approved PPP loan.

173.    Prestamos's failure to fund Ahmadou's SBA-approved PPP loan deprived Ahmadou of funds that would have directly assisted in the operation of his home healthcare business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund
Plaintiff Dervin's PPP Loan**

174.    When the COVID-19 pandemic began, plaintiff Dervin was, and continues to be, in the janitorial business in the Lynwood, Washington area.

175.    Due to the pandemic, Dervin's janitorial business lost significant income.

176.    In or about May 2021, Dervin applied for a PPP loan with Prestamos. Dervin submitted all requested documentation and information.

177.    On or about May 14, 2021, the SBA approved Dervin's PPP loan application and assigned it a loan number (SBA Loan Number 1895529005).

178.    Dervin was approved for a PPP loan in the amount of $8,385.00.

179.    On May 19, 2021, Dervin received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

180.    Also on May 19 2021, Dervin signed and returned the Loan Documents in order to obtain the $8,385.00 PPP loan.

181.     Despite properly and timely completing, signing and submitting the Loan Documents, Dervin never received the proceeds of her SBA-approved PPP loan.

182.     Prestamos's failure to fund Dervin's SBA-approved PPP loan deprived Dervin of funds that would have directly assisted in the operation of her janitorial business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Henderson's PPP Loan**

183.     When the COVID-19 pandemic began, plaintiff Henderson was, and continues to be, in the women's clothing business in the Macomb, Michigan area.

184.     Due to the pandemic, Henderson's women's clothing business lost significant income.

185.     In or about April 2021, Henderson applied for a PPP loan with Prestamos. Henderson submitted all requested documentation and information.

186.     On or about April 22, 2021, the SBA approved Henderson's PPP loan application and assigned it a loan number (SBA Loan Number 8614908807).

187.     Henderson was approved for a PPP loan in the amount of $1,875.00.

188.     On April 29, 2021, Henderson received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

189.     Also on April 29, 2021, Henderson signed and returned the Loan Documents in order to obtain the $1,875.00 PPP loan.

190.     Despite properly and timely completing, signing and submitting the Loan Documents, Henderson never received the proceeds of her SBA-approved PPP loan.

191.    Prestamos's failure to fund Henderson's SBA-approved PPP loan deprived Henderson of funds that would have directly assisted in the operation of her clothing business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Innis's PPP Loan**

192.    When the COVID-19 pandemic began, plaintiff Innis was, and continues to be, in the carpet and upholstery cleaning business in the Las Vegas, Nevada area.

193.    Due to the pandemic, Innis's carpet and upholstery cleaning business lost significant income.

194.    In May 2021, Innis applied for a PPP loan with Prestamos. Innis submitted all requested documentation and information.

195.    Also in May 2021, the SBA approved Innis's PPP loan application and assigned it a loan number (SBA Loan Number 8207338903).

196.    Innis was approved for a PPP loan in the amount of $10,625.00.

197.    On May 26, 2021, Innis received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

198.    Also on May 26, 2021, Innis signed and returned the Loan Documents in order to obtain the $10,625.00 PPP loan.

199.    Despite properly and timely completing, signing and submitting the Loan Documents, Innis never received the proceeds of his SBA-approved PPP loan.

200.    Prestamos failed to fund Innis's PPP loan despite Innis's repeated additional attempts to try to get his SBA-approved PPP loan actually funded. For example, in an October 1, 2021 email to Litza Menendez ("Menendez"), Loan Servicing Specialist for Prestamos and its parent CPLC, Innis stated as follows:

> "hi so what's the word!? I'm getting emails from the SBA now about applying for loan forgiveness. I remember you telling me you will probably have to send me a prepaid card."

201.   Further, in another email to Menendez on October 12, 2021, Innis stated as follows (emphasis in original):

> "Hello Litza, I'm writing you to give you one more chance to disperse my money before I file a lawsuit against you. The SBA website is CURRENT!!! I just got off the phone with them and was told IT IS CURRENT and that my funds are in someone's BANK ACCOUNT THAT ISN'T MINE …… IF YOU THINK IM GOING TO JUST LIE DOWN AND LET THIS HAPPEN LIKE EVERYONE ELSE U ARE HIGHLY MISTAKEN……. I knew I wasn't stupid and did my research before even contacting you and that your statements were FALSE….. once again the SBA website IS CURRENT AND SHOWS ME STILL FUNDED AND THAT MONEY IS IN SOMEONES BANK ACCOUNT NOT AFFILIATED WITH ME OR BLUE ACORN OR PRESTAMOS….. DO THE RIGHT THING[.]"

202.   Despite even these additional attempts, Prestamos has failed to fund Innis's loan.

203.   Prestamos's failure to fund Innis's SBA-approved PPP loan deprived Innis of funds that would have directly assisted in the operation of his carpet and upholstery cleaning business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Stalnaker's PPP Loan**

204.   When the COVID-19 pandemic began, plaintiff Stalnaker was in the homemaker/personal care provider business in the Ravenna, Ohio area, where she continued to reside at all applicable times.

205.   Due to the pandemic, Stalnaker's homemaker/personal care provider business lost significant income.

206.   In or about April 2021, Stalnaker applied for a PPP loan with Prestamos. Stalnaker submitted all requested documentation and information.

40

207.    Also in April 2021, the SBA approved Stalnaker's PPP loan application and assigned it a loan number (SBA Loan Number 1641908909).

208.    Stalnaker was approved for a PPP loan in the amount of $9,052.00.

209.    On April 29, 2021, Stalnaker received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

210.    Also on April 29, 2021, Stalnaker signed and returned the Loan Documents in order to obtain the $9,052.00 PPP loan.

211.    Despite properly and timely completing, signing and submitting the Loan Documents, Stalnaker never received the proceeds of her SBA-approved PPP loan.

212.    Prestamos's failure to fund Stalnaker's SBA-approved PPP loan deprived Stalnaker of funds that would have directly assisted in the operation of her homemaker/personal care provider business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund**
**Plaintiff Jones's PPP Loan**

213.    When the COVID-19 pandemic began, plaintiff Jones was, and continues to be, in the delivery service business in the Golden Valley, Arizona area.

214.    Due to the pandemic, Jones's delivery service lost significant income.

215.    In or about May 2021, Jones applied for a PPP loan with Prestamos. Jones submitted all requested documentation and information.

216.    Also in May 2021, the SBA approved Jones's PPP loan application and assigned it a loan number (SBA Loan Number 8899718910).

217.    Jones was approved for a PPP loan in the amount of $4,130.00.

218.    On or about May 30, 2021, Jones received the same form PPP loan promissory Note and accompanying Loan Documents that plaintiff Marshall had received.

219.    Also on May 30, 2021, Jones signed and returned the Loan Documents in order to obtain the $4,130.00 PPP loan.

220.    Despite properly and timely completing, signing and submitting the Loan Documents, Jones never received the proceeds of her SBA-approved PPP loan.

221.    In fact, on October 14, 2021 and again on November 2, 2021, the SBA sent emails to plaintiff Jones stating that she is "eligible for PPP Direct Forgiveness because your lender has opted in any you have a PPP loan amount of $150,000 OR LESS."

222.    Despite the SBA's October 14, 2021 and November 2, 2021 emails inviting plaintiff Jones to apply for loan forgiveness, plaintiff Jones never received any PPP loan proceeds.

223.    As Jones summarized in a complaint she filed with the BBB on November 4, 2021:

> "I filed and was approved for a PPP loan on April 25th 2021for the amount of $4130 waited a month started sending emails with no responses besides the automated ticket creation and a few emails stating that the support email was no longer active then received loan documents on May 26, 2021 it has been non-stop back and forth with no actual responses or funding received and now I'm receiving emails from the SBA to file for forgiveness on a loan I never received"

224.    Prestamos's failure to fund Jones's SBA-approved PPP loan deprived Jones of funds that would have directly assisted in the operation of her delivery service business and resulted in lost opportunities and other consequential damages.

**Prestamos's Failure to Fund Other
SBA-Approved Class Member
Borrower PPP Loans**

225.    Numerous other similarly situated borrowers have been damaged by Prestamos's

failure to fund their SBA-approved PPP loans and have complained about their experiences to

the BBB and via social media sites.

226.    For example, the BBB's website identifies a number of complaints against

Prestamos:[2]

    a.    "I was notified on June 2, 2021 that my loan would be funded by
Prestamos CDFI, LLC within 3-6 business days. … I have never been
funded." (August 2, 2021 post);

    b.    "I was approved a PPP loan in May and SBA has [it] that the loan was
disbursed … in May and I haven't received a dime, cannot reach anyone
via phone and all emails take me around in circles." (July 12, 2021 post);

    c.    "I was later texted approval for funding on 6/3/2021. Since then I have not
received the funds. When I check online support it says DENIED. I am
frustrated as to what is going on? I reached out to support online email and
text but no change in status. When I checked public records online it says
my name address and funding amount as if I have been funded already.
Please help!" (July 12, 2021) (emphasis in original);

    d.    "Its been over 25+ business days since date of signing loan docs. … On
the sba ppp website (capital access financial system) [it says] that my
funds HAVE been dispersed [sic] by Prestamos CDFI, LLC which isn't
true because I definitely don't have the funds. Since Prestamos CDFI,
LLC is my lender I hold them responsible." (July 9, 2021) (emphasis in
original);

    e.    Prestamos "works with Blueacorn and actually is the lender who signed
off on the loan that was meant for me for PPP. … They keep saying
Blueacorn is the company that has your money despite my having entered
into a contract with Prestamos. They are continuing to accrue interest for
over a month now that I owe on money I never received." (July 7, 2021);

---

[2]  Emphasis is in the original in this Complaint unless otherwise noted or the context  otherwise
requires.

f.  Prestamos "is extremely I mean extremely hard to get in contact with. … I've called EVERY number on their site and have gotten in contact with no one." (July 6, 2021) (emphasis in original); and

g.  "I applied for the *** PPP Loan online with BlueAcorn (lender servicing provider) in May 2021. *** approved by PPP Loan on May 26, 2021 and Prestamos CDFI, LLC is the lender and my loan should have been disbursed within 10 days of my *** approval date or 20 days the latest. It has been more than 1 month and I have not received my funds. I sent multiple emails to Prestamos and also left voicemail messages within the past 2 weeks, but Prestamos has not responded at all. My loan status is active but not fully disbursed according to the ProPublicas online information which claimed to come from ***. I will not be responsible to pay back a loan I never received. I have not canceled my loan either and need it desperately for my business and to support my 2 sons." (July 2, 2021).

*See* BBB, Prestamos CDFI LLC, available at [Prestamos CDFI LLC | Complaints | Better](#)

[Business Bureau® Profile (bbb.org)](#) (last visited May 1, 2022).

227.  Similarly, according to complaints posted publicly on the Internet:

a.  "WHERE IS OUR MONEY!??????? ALL THE OBSTACLES & HOOPS SOMEONE NEEDS TO BE ACCOUNTABLE SINCE APRIL WAITING ON WHAT NOW!!!?BLUEACORN & PRESTAMOS HAVE BROKEN THEIR PROMISES!!!! WE NEED A RESPONSE NOW." (August 8, 2021) Available at [https://www.reddit.com/r/BlueAcornPrestamos/comments/p1eyr2/where_i s_our_money_all_the_obstacles_hoops/](https://www.reddit.com/r/BlueAcornPrestamos/comments/p1eyr2/where_is_our_money_all_the_obstacles_hoops/);

b.  "I'm pissed I signed 5/27 and still nothing no emails no nothing I call prestamos they say call blue acorn I call them they say the same shit somebody help me before I lose my entire business please!" (July 2, 2021) Available at [https://www.reddit.com/r/BlueAcornPrestamos/comments/occrqy/im_piss ed_i_signed_527_and_still_nothing_no/](https://www.reddit.com/r/BlueAcornPrestamos/comments/occrqy/im_pissed_i_signed_527_and_still_nothing_no/);

c.  "I GOT EVERYTHING, SIGNED AND WAS WAITING FOR MY DISBURSEMENT. LAST NIGHT I RECEIVED AN EMAIL & TEXT SAYING THAT MY ID WAS BLURRY AND MY IDENTITY NEEDED TO BE VERIFIED. I DID ALL THAT (AFTER OVER A HOUR OF CRASHING) JUST TO HAVE MY BA STATUS START BACK AT STAGE 1 AND NOW I AM NOT IN FUNDING STATUS ANYMORE. I AM BEYOND PISSED. I HAVE BEEN WAITING OVER A MONTH." (DATE) Available at

https://www.reddit.com/r/Blueacorn/comments/n5dk8y/prestamos_signers_427430/;

d.   "I was approved 5/26, signed documents 6/2 my lender is Prestamos as well. Haven't heard anything from them & I opted in for the dash card as well. Called them to see if my card was shipped I sat on hold for 2 hours & they disconnected my call smh." (June 28, 2021) Available at https://www.reddit.com/r/EIDLPPP/comments/o19x77/has_anyone_who_signed_on_62_been_funded_through/;

e.   "Has anyone who signed on 6/2 been funded through blue acorn? My lender is Prestamos and I opted in for the dash card (which I still haven't received). I was approved 5/29 and signed 6/2. I'm getting a bit discouraged, but trying to keep the faith. Time are HARD." (June 16, 2021) Available at https://www.reddit.com/r/EIDLPPP/comments/o19x77/has_anyone_who_signed_on_62_been_funded_through/;

f.   "BLUEACORN/ JUNE SIGNERS/PRESTAMOS / REJECTED FUNDS/ UBI/ OPT FOR DASHCARD Can someone share how long was their experience when funds were rejected by your bank. Dave's banking rejected/returned my funds on 06/14 how long before I'll receive an email to opt for dash card. I have chatted, message them on Twitter and put in multiple tickets with support still no luck no email just automated responses from support and live chat representative just tell me to contact support which is a dead end. Will I still get funded or will this process be a long experience? Seems like it's already been a long time I'm just over it at this point! Somebody please help." (July 12, 2021) Available at https://www.reddit.com/r/EIDLPPP/comments/oitaff/blueacornjune_signersprestamosrejected/;

g.   "They keep telling us that our funds are guaranteed, to "REST ASSURED, YOU WILL BE FUNDED." But, Federal Law states that lenders have 10 calendar days to fund the loan after the PLP or SBA LOAN NUMBER is granted, and AFTER 20 DAYS, THE LOAN WILL BE CANCELED IF ALL NECESSARY PAPERWORK IS NOT TURNED IN. Blue Acorn and Prestamos have made it impossible to get in touch with them ON PURPOSE, bc they do not plan on doing anymore work to fund anyone, and they WILL NOT BE REACHING OUT to anyone who is lacking any paperwork - paperwork THEY NEVER ASKED FOR IN THE FIRST PLACE!! At this point, I think it would be wise to send in everything you have (to the SBA? to prestamosinfo@cplc?) that proves you have a business that was in operation before 2020, ie. bank statements, w-2s, everything. Still, they will avoid funding your loan like the plague. They will find some reason for your loan to be denied, even after you have an SBA loan #, due to the 20 day cancelation clause in the Interim Rules. WE ARE NOT GOING TO BE FUNDED FOLKS, ITS OVER. SERIOUSLY,

45

LAWYER UP, BECAUSE THIS IS A VIOLATION OF THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, which pays 3X damages (triple damages). These companies are betting on us not being legitimate business owners, and not being able to prove that we are, and moreover, scared to get the authorities involved." (June 15, 2021) Available at https://www.reddit.com/r/PPPLoans/comments/o0qcxv/blue_acorn_prestamos_waiting_until_20_days_passed/;

h.   "So she created a ticket and said she couldnt tell me what the error was until they reached out to me. Not sure if I need to verify questions like everyone has been talking about and I got lucky to ask them now or else I would never come across it because they wont tell you or email you about it. Or there really is an error which I guess I will find out till they tell me." (May 5, 2021) Available at https://www.reddit.com/r/PPPLoans/comments/n3x0zj/blueacorn_if_you_got_your_loan_from_prestamos/; and

i.   "Had the same error issue had to resend my ID as well as answer verification questions, originally signed on the evening of the 28th, my issue is the never reached out me about it I had to reach out and ask them, hopefully that all I need to do◆◆◆" (May 5, 2021). Available at https://www.reddit.com/r/PPPLoans/comments/n3x0zj/blueacorn_if_you_got_your_loan_from_prestamos/.

j.   Cody Brooks                                        November 6, 2021
"Approved, funds disbursed, prestamos and blueacorn said they weren't able to approve me, federalpaygo site shows this ppp loans been disbursed to me but haven't received anything and the only thing that was on my mind was how shi**y it'd be to not only never receive the funds but to have to pay it back as well along with interest so I did how I felt best after Prestamos underwriter said I have a an email confirming I don't have responsibility for the funds and went ahead and applied for the forgiveness … prestamos accepted it and sent it off to the sba which was fully remitted by the sba. Can't apply for forgiveness unless u were approved and funds were disbursed.. I've tried speaking with blueacorn and Prestamos several times stating I have all the documentation needed for this from the beginning to the promissory note to "disbursement and forgiveness" they haven't replied back anything but forward what I've sent them back to me. Literally took out a loan from some close friends and family in the amount of the ppp loan to cover payroll and expenses and still haven't received anything yet when I was suppose to have it in May 2021."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

k.  Kirt McReynolds                    November 2, 2021
    "Funds sent back to prestamos and haven't recieved a dime since..
    approved in May"

    https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-
    exploited-by-community-development-lender-prestamos-lining-pockets-
    with-1-2b/ (visited Dec. 14, 2021).

l.  Judy Padilla                       October 31, 2021
    "I was funded and my bank returned it it's been funded since June 14 but I
    still don't have it"

    https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-
    exploited-by-community-development-lender-prestamos-lining-pockets-
    with-1-2b/ (visited Dec. 14, 2021).

m.  Nikki Dailey                       October 30, 2021
    "I was also approved by Prestamos CDFI, then denied and never received
    funds and SBA is requesting that I apply for forgiveness. They
    continuously made up fictitious information regarding the inability to fund
    my loan need to join this class action law suit"

    https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-
    exploited-by-community-development-lender-prestamos-lining-pockets-
    with-1-2b/ (visited Dec. 14, 2021).

n.  Anthonia Johnson                   October 27, 2021

    "Was approved by prestmos than denied never funded now being asked to
    apply for loan forgiveness on a loan I never got"

    https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-
    exploited-by-community-development-lender-prestamos-lining-pockets-
    with-1-2b/ (visited Dec. 14, 2021).

o.  Susan Hart                         October 28, 2021
    "Please include me , was approved and never funded and have even be
    approved for forgiveness."

    https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-
    exploited-by-community-development-lender-prestamos-lining-pockets-
    with-1-2b/ (visited Dec. 14, 2021).

p.  Kristin Dailey                     October 27, 2021
    "Stole my loan my business is about to bankrupt as well how do I add
    myself to the class action law suit prestamos cdfi had me sign for loan but
    didn't give it to me"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

q.      Danny Shields                                October 21, 2021
"I am actually about to be interviewed next week for a follow up piece to BlueAcorn/Prestamos PPP loan article that I read that infuriated me so much I reached out to the reporter and she is doing a follow up article based on the massive number of us who were swindled by these organizations. I too had my signed and approved loan w/ Prestamos and had my money returned after I was approved and that was keystone issue that probably links each and everyone of us, the money got returned. Than instead of standing by Blueacorns whole oh if you are SBA approved, your funds are earmarked and set aside for you, that was not the case. I had an assistant of my states SBA representative call me one afternoon and in a profanity laced provision of facts, advised me of the whole situation and how they simply moved beyond those unfortunate enough to have funds returned and continued funding as many as they could. Hopefully that is the case and they didnt just simply steal the money. But either way, I am owed money and I have been waiting and aching for this process of a class action to start, ever since I was blatantly professing to Blueacorn and Prestamos that it was coming and when I was trying to spread awareness on Reddit to those naive enough to think this wasnt the case. Now I see they recently just had mass denials for all those who continued to submit tickets wondering where their approved loan was in this shady process. It's disgusting. I need what I am owed and much more for the mental anguish and the fact that this was a company federally backed and advocated who not only didnt do what they claimed but did it to a certain segment of the populace that at the time were specifically being targeted to receive this assistant and everyone else was cut off since their was such a dire need for it amongst the lower classes. All these other fraudsters and unscrupulous individuals were having a free for all in being allowed to abuse this program, and when I legitimately provided all approved and required documentation, I get the third degree and am denied after having been approved by Blueacorn, a company that perpetrated fraud outright initially, and now say they are denying me after doing a secondary review, a review that was done by the SBA and approved and not within their purview to even attempt. Hopefully this lawsuit goes after Blueacorn just as much as Prestamos, because you couldnt even reach Prestamos. Only lender I've ever heard of that defers to the middleman for all servicing, questions or funding after they signed a contract between myself them and the SBA. Ridiculous. So glad this is coming to the light because their are hundreds of questions that I demand be answered!"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

r.    Shannon Black                                    October 19, 2021

"Please include me as well. I too was approved a loan from Prestomos and still haven't received payment. SBA sent me an email informing me that I can now apply for forgiveness on the loan I never received. According to their records loan was dispersed 6/2/21. I am deviated to learn that the lender has done this to hundreds of thousands of struggling Americans and their families fraudulently using this crisis to steal from the ones who need it the most and the U.S. Government whom intended funds to quickly reach businesses in greatest need."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

s.    Candace Cook                                     October 18, 2021

"I had prestamos as a lender too and they never funded my ppp loan although I was approved"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

t.    Angela Joya                                      October 16, 2021

"Yes please add me"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

u.    Dustin Estep                                     November 22, 2021

"This is the same exact thing that Happened to me. It was May when approved and disbursed. As of today im still showing on the sba website as fully dusbursed and current"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

v.      Kimberly                                  November 13, 2021

"I filed a complaint back in April when I signed paper work for funding they sent to my account but then withdrew it some how saying payment ledger and I was told they would send me a prepaid card and it never came and when I tried to speak to some one they wanted my tax return again and then told me I wasn't approved but it says I received it and I looked at my paper work and it has another receiptiant named Jose [M]artinez and I have absolutely no idea who that is I tried to get help from the SBA they told me that I had to get ahold of the lender and that is impossible"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

w.      Jacqueline Smith                          November 12, 2021

"I was approved and given an SBA number on May 20th 2021. My bank rejected my funds on June 3rd 2021. On August 30th I opted for the dash prepaid card and I'm still waiting. I have filed several tickets with blue acorn I have contacted the SBA twice and they have noted and it escalated my account. And here it is now November 12th and I am still waiting I just keep getting told to be patient."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

x.      Jessica Moore                             November 11, 2021

"I was approved and received a SBA loan number may 31st 2021 but never recieved a dime. After months of trying to get my money they randomly sent me an ensul stating I was now denied and stated nothing else, even though I was already approved and funds had already been sent but supposedly my bank sent them back and all I needed to do was update new banking info but this took them 2 months but instead of resending to my new bank info they said I was denied but to this day I still have an SBA approved loan number and SBA still shows my loan was disbursed to me yet I havent seen a dime. Nobody will get back to me from either blue acorn, Prestamos or SBA yet I get continuous emails about being approved for loan forgiveness on a loan I never got. This is ridiculous. Someone help!"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

y.  Jessica Moore                                    December 1, 2021

"Oh and up to date now. Prestamos approved my loan forgiveness and SBA processed it and paid them for a loan I NEVER RECEIVED! I contacted them and told them if I was denied after being given an SBA loan number and money being sent to me then returned to lender then why did the lender approve my forgiveness for a loan they never paid me and then the SBA approved it and sent the lender the money for my loan that I NEVER RECIEVED?!?! This is absolutely insane! Idk what to do now. I've been approved and forgiven for a loan i haven't seen a dime of ??!?"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

z.  Jacqueline Schementi                             November 10, 2021

"Yes. Same scenario here, but with different lender. Called SBA who said I was fine and should have gotten the disbursement. Even set up in SBA system"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

aa.  Asia Adoibrahim                                 November 8, 2021

"Yes I'll was approve thru blue acorns was suppose[d] to be funded by prestamos they told me to reverify I did. Then they just put me on hold could reach any one. Just email …told me. Their working hard to. Get me my funds and that the loan were sent back ! my bank has no log of that actually happening. Then they. Basically blocked me from the site all SBA sites and. Or .gov sites say funded. I applied for forgiveness I was approved. How is that possible That means the funds were supplied and I never got anything. And I emails saying all of this. And me looking for the location of the loan. Which in long. Drawn out. Ordeal they then stated that they. We're now denying such loan. For technical reasons or something yet u approved forgiveness I want answers"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

bb.    Melissa Estores                                November 9, 2021

"My experience was almost identical to yours. The livelihood of my business was balancing in the hands of BlueAcorn and Prestamos. Between BlueAcorn and the automated responses to the "tickets" made and Prestamos and their phone tag, I wasted valuable time. Time that I cannot reverse. Time that I should have been able to seek financial help elsewhere. Shame on you Prestamos for victimizing the community that you claim to support. Your business has probably been the downfall of countless other small businesses that fell victim to your service. I hope you can sleep at night knowing the damage you caused us all. Worst yet, you were a trusted finance company that didn't come with a fraud warning label!!"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

cc.    Jamie Dean Jones                               November 4, 2021

"I never received my funds either and I am now getting emails about forgiveness on a loan I never received and I'm in Arizona what do I do?"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

dd.    Christine Allen                                November 4, 2021

"i was approved also for PPP and Prestomos says they issued my check recieved 6/1/2021 and i still havent gotten the money.Please add me to list"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

ee.    David Raymond Butts                            November 4, 2021

"I was also short changed out of my loan which was approved by the SBA. Signed on May 27th and still no funds"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

ff.     Teresa Fernandez                  December 12, 2021

"I never got my loan and it was approved and dispersed 6 months ago I lost everything even hope I would ever see this money lets see what happens"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

gg.     Terry                                December 10, 2021

"I recieved my funds from my ppp loan then Prestamos removed it via ach from my account. And when I called them they claim no record of removing it. My bank gave me the ach tracking number showing it returned and the sba sent me a letter saying my forgiveness was approved and I never applied for forgiveness"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

hh.     Dawn Fullerton                   December 7, 2021

"They never sent my money but it was approved and also was forgiven by SBA so they pocketed the whole 20K"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

ii.     Robert Ventullo                  December 6, 2021

"I just realized thought I need help and if anyone handles this please contact me"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

jj.     Curtis Samuel                     December 6, 2021

"I need answer to why I can't get my money blue acorn can not be trusted"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

kk.   Cory Patterson                                    December 6, 2021

"They need to come off with my funds I was approved and the sba funded but iced seen nothing"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

ll.   Frankie Johnson                                   December 5, 2021

"Applied for and was approved granted an SBA loan number but never received anything."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

mm.   Erica Page                                        December 6, 2021

"Approved for the ppp on the loan list but never received"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

nn.   Shelby Edwards                                    December 2, 2021

"Applied for, was approved, but never received funds. Sba states funds were disbursed. Received prepaid card with NO FUNDS TODAY AFTER NEARLY 8 months."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

oo.   Eshontel Davis                                    December 4, 2021

"Me also is sickening and people should be held accountable. They just keep saying wait its ridiculous. I've even begged to just cancel the loan. I've asked for the legal department everything and I get nothing but rest assure."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

pp.     Amy Channel                                      November 29, 2021

"My name is Amy channell I own a caregiving business, and I filled out an application for the ppp loan through blue acorn in April and was approved they sent my money to my bank my bank denied it and sent them the money back they kept telling me they were going to send my money to the right account and to be patient they said it would take 3 to 6 days. Then on August 11th I got this email 'We are writing to let you know that we have determined that based upon information you provided, your application does not meet the requirements for the Paycheck Protection Program.

Unfortunately, we will not be able to fund your PPP loan.' I have been waiting since April for these funds because they told me I was approved and kept telling me to be patient my funds are set aside and will be funded into my account no matter what but they have alot of applications there taking care of so to bare with them. I would really like help with what to do this has set me back alot now."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

qq.     Tyree Kelly                                      November 29, 2021

"I got approved for my PPP load with Blue Acorn in March. Did all the paperwork and waited, but emailed them about once a week. After finding out they ran out of money, I emailed them again to be told I need to Is verify my identity, mind you this is months after me filing. Did they and they ended up saying they can't fund me but had me on the hook the whole time."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

rr.     Thomas Carrick                                   November 28, 2021

"I was approved through Blue Accorn on 5-20-2021, SBA approved me I should say almost 2 weeks went by and did not receive my funds, after looking over my paperwork that I had signed, meaning the loan papers and promisary note, I noticed that one number in the routing number was wrong, it was a nightmare after that, then I got a message from them saying that they can not find my loan because I'm not approved, what!? LoL, I was already approved and waiting on funding, Prestamos is the bank funding the loan, there's some serious crooked crap going on with all this shit!"

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

ss.     Tiffany Abbe                                      November 24, 2021

"Blue Acorn- they approved loan I never received funds, SBA website shows I was funded and received the money . After 6 months of not getting any help or received my loan I turned them into the BBB and they wouldn't reply to them or me and then all of a sudden my loan was denied but SBA says I have to pay that money back I can't even apply for the forgiveness part because blue Acorn can't find me in the system anymore. But I have to pay back the amount or I could face jail time ! Is what I was told."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

tt.     Cody Brooks                                       November 23, 2021

"On several sites it shows my company has received a loan through prestamos cdfi but I have never actually received and funds. I have several documents from start to current."

https://topclassactions.com/lawsuit-settlements/money/fees/ppp-loans-exploited-by-community-development-lender-prestamos-lining-pockets-with-1-2b/ (visited Dec. 14, 2021).

uu.     "I got approve for my PPP loan in the amount $16,250 By The ** Prestamos CDFI is trying to steal my money. Prestamos CDFI, said my funds will be sent back to ***, but the *** said no funds are return to them at all. I need my funds for my business." (Oct. 12, 2021 post)

Prestamos CDFI LLC | Complaints | Better Business Bureau® Profile (bbb.org)

vv.     "My small business was approved by the sba in may in their records my loan status is disbursed yet I havent received a dime and the lender prestamos refuses to address the issue only referring me back to blueacorn whos lying telling me that after review I wasnt approved by the sba so I just want the money that i have been approved for." (Sept. 23, 2021 post)

Prestamos CDFI LLC | Complaints | Better Business Bureau® Profile (bbb.org)

ww.    "Ive previously been approved for a ppp loan with Prestamos CDFI LLC as my lender. This loan appears online on several sites as being disbursed

from Prestamos CDFI LLC to myself ********************* back in May 2021 but the issue is that Ive never received these funds. When reaching out to Prestamos CDFI LLC showing several documents and screenshots as my valid proof the only response I received was the loan through their technology partners organization Blueacorn I stated that nothing on my loan documentation shows anything about a Blueacorn but does show that Prestamos CDFI LLC is my lender. Ive recently taken out a separate business loan in the amount of what my ppp loan was to cover business things so I went ahead and applied for the Forgiveness and Prestamos accepted it and sent it to the sba. Only way to apply for forgiveness is by being approved and funds disbursed. I still havent received any of those funds from Prestamos CDFI LLC and theyre lacking important communication." (Sept. 22, 2021 post)

Prestamos CDFI LLC | Complaints | Better Business Bureau® Profile (bbb.org)

xx.    "I applied for my second PPP loan with XXXX. XXXX farmed this loan request along with about XXXX other loans to Prestamos XXXX, XXXX. After hurdles, jumping through hoops, I received SBA approval and was provided loan documents that were signed and supposedly legally binding. Those documents were provided by XXXX on XX/XX/XXXX by way of Prestamos to sign. I was advised on XX/XX/XXXX by my bank XXXX, that the funds in the amount of {$3200.00} were being returned to Prestamos XXXX. I knew this was going to happen and attempted to update my bank information prior to the money being returned but was denied. Ultimately the money was returned. I immediately attempted to reach out to both the lender and the third party XXXX. Prestamos completely wiped their hands of the matter. Despite having contractually entered into a loan with myself, and then, LYING TO THE GOVERNMENT in having public record reflect the above, that I had the loan funded and the funds were dispersed to me. The funds that were supposed to be designated for me and reissued, as any lender would clearly do, are MIA. I have documentation on top of documentation of this whole ordeal to demonstrate that despite currently being legally bound to a loan that has been accruing interest since XX/XX/XXXX, the lender has not once reached out to myself or the SBA to correct the information." (July 30, 2021 consumer complaint excerpt).

Search the Consumer Complaint Database | Consumer Financial Protection Bureau (consumerfinance.gov)

228.    Further, although Prestamos states on its website that it maintains an office in

Santa Fe, New Mexico (*see Prestamos CDFI, Prestamos Locations, available at*

https://www.prestamosloans.org/locations/ (last visited May 1, 2022), Plaintiffs were advised

that office may not even exist.

229.    Plaintiffs are unaware whether Prestamos has retained or has spent or disbursed

any such funds for any other purpose. Plaintiffs have requested and anticipate obtaining further

information regarding the status of the SBA-approved but unfunded PPP loan proceeds in

discovery. Further and in any event, Plaintiffs are aware that Prestamos has belatedly sought to

fund certain class member borrowers following the filing of plaintiffs' original complaint on

October 1, 2021, and these borrowers have still incurred lost opportunity and other damages to

their businesses due to Prestamos's failure to timely fund their loans.

## Class Action Allegations

230.    Plaintiffs bring this action individually and on behalf of the following National

Class and Subclasses (collectively, the "Classes"):

     a.    **National Class:** All persons and entities in the United States who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided an SBA loan number, who executed their Loan Documents but did not receive the PPP loan proceeds;

     b.    **California Subclass:** All persons and entities in California who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided an SBA loan number, who executed their Loan Documents but did not receive the PPP loan proceeds;

     c.    **Illinois Subclass:** All persons and entities in Illinois who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided an SBA loan number, who executed their Loan Documents but did not receive the PPP loan proceeds; and

     d.    **Ohio Subclass:** All persons and entities in Ohio who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided an SBA loan number, who executed their Loan Documents but did not receive the PPP loan proceeds.

231.    Excluded from the Classes are Prestamos, CPLC, any entities in which Prestamos or CPLC has a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

232.    There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will benefit the parties and the Court.

233.    The proposed Classes meet each applicable requirement of FED. R. CIV. P. 23.

234.    *Numerosity*: While the exact number of members of the Classes is unknown at this time and can be determined by appropriate discovery, the Classes include hundreds or thousands of members such that joinder of all members is impracticable.

235.    *Ascertainability*: Names and addresses of members of the Classes are available from defendant Prestamos's records and potentially other sources including publicly available databases. Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in class action litigation.

236.    *Typicality*: Plaintiffs' claims are based on the same facts and legal theories as those of the other members of the Classes which Plaintiffs respectively seek to represent. Plaintiffs and the members of the Classes all similarly applied for PPP loans, had their loans approved by the SBA, but did not receive their PPP loan proceeds from Prestamos.

237.    *Adequacy*: Plaintiffs will fairly and adequately represent the interests of the members of the Classes. Plaintiffs are adequate representatives of the Classes as their interests align with the interests of the members of the Classes, and Plaintiffs are represented by counsel skilled and experienced in class actions, including financial consumer and other class action litigation.

238.     *Superiority*: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through a class action; if separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits could lead to differing and inconsistent adjudications; and, absent a class action, Prestamos is unlikely to be held accountable for its failure to actually fund all applicable SBA-approved PPP loans.

239.     *Predominance and Commonality*: Common questions of law and fact exist and predominate over any questions which affect individual members of the Classes. Common questions of fact and law include, but are not limited to:

a.     whether defendant Prestamos failed to fund SBA-approved PPP loans to Plaintiffs and other members of the Classes in breach of its obligations to actually fund such loans;

b.     whether Prestamos obtained fees for PPP loans that it did not make;

c.     whether Prestamos upstreamed to CPLC PPP loan processing fees on the PPP loans of Plaintiffs and other similarly situated unfunded putative members of the proposed class;

d.     whether Prestamos's failure to fund SBA-approved PPP loans violated the Loan Documents it entered into with Plaintiffs and other members of the Classes;

e.     whether Prestamos's failure to fund PPP loans constituted unlawful, deceptive and/or unfair acts or practices as to the members of the California, Illinois and Ohio Subclasses;

f.     whether defendant Prestamos's failure to fund SBA-approved PPP loans damaged members of the Classes; and

g.     whether defendant CPLC was unjustly enriched thereby.

240.     Plaintiffs reserve the right to amend the definition of the Classes if discovery or further investigation reveals that the definition of the Classes should be amended.

## COUNT ONE

### Breach of Contract
### (On Behalf of All Plaintiffs and the National Class)

241.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

242.    This Count is brought against both Defendants.

243.    The standard form promissory Note and accompanying Loan Documents that defendant Prestamos and the members of the Classes entered into are binding, enforceable agreements.

244.     Among other provisions, the Note identifies the specific PPP loan, SBA loan number and amount of the loan; specifies that the parties to the Note are, respectively, the Class member borrower and the "Lender" Prestamos; provides that, "[i]n return for the Loan, Borrower promises to pay to the order of the Lender" the principal amount of the PPP loan plus "interest on the unpaid principle balance, and all other amounts required by this Note" if not forgiven; contains other PPP loan repayment terms and events of default and the lender's rights in the event of the borrower's default; contains other provisions, including that "[a]ll individuals and entities signing this Note are jointly and severally liable"; and, as to each Plaintiff and member of the Classes, states that, "[b]y signing below, each individual or entity becomes obligated under this Note as Borrower."

245.    In addition, the Additional Agreement that accompanies the promissory Note between the Plaintiff Class member borrowers and defendant Prestamos provides additional terms and states, at the outset, explicitly as follows:

> "In consideration of Prestamos CDFI, LLC, located at 1024 E. Buckeye RD, Suite 270, Phoenix, AZ 85034, (hereinafter called 'Lender') making

61

the above loan, each of the undersigned, jointly and severally, do hereby
agree as follows …."

246.    The Loan Document contracts entered into by Prestamos and the members of the

Plaintiff borrower Classes also include a "Notice - No Oral Agreements" document. That

document governs the "Loan by Lender, Prestamos CDFI, LLC to Borrower"; identifies each

Class member borrower and the SBA-approved amount of the loan; states that "**THE**

**WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT**

**BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF**

**PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE**

**PARTIES**"; states that the "'Loan Agreement' means one or more promises, promissory notes,

agreements, undertakings, security agreements, deeds of trust or other documents or

commitments, or any combination of those actions or documents, pursuant to which a financial

institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or

another thing of value or to otherwise extend credit or make a financial accommodation"; and is

executed by both Prestamos via its President Martinez, and each Class member borrower.

247.    A complete copy of one such Loan Document is attached to this Amended

Complaint as Exhibit A (with only Plaintiff's Social Security and bank account number

redacted).

248.    Through its agreement to make PPP loans via the Loan Documents, its acceptance

and approval of Plaintiffs' PPP loan applications, and as the counterparty to the Loan

Documents, defendant Prestamos entered into a binding agreement with each of the Plaintiffs

and the members of the proposed National Class to fund their respective PPP loans.

249.    Plaintiffs and the members of the National Class gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their Loan Documents with defendant Prestamos.

250.    Plaintiffs and the members of the National Class kept their end of the bargain by providing all documents and information requested by defendant Prestamos. Defendant Prestamos failed to complete its end of the bargain by failing to make the PPP loans to Plaintiffs and the members of the National Class.

251.    Further, defendant Prestamos had an implied duty to act in good faith and in accordance with fair dealing to take all steps necessary to fund the Plaintiffs' and the other National Class members' PPP loans pursuant to the Loan Documents.

252.    Defendant Prestamos breached its obligations to fund Plaintiffs' and other National Class members' PPP loans under the Loan Documents by failing to fund the loans within 10 days of the SBA's approval of the loans and assignment of loan numbers, or at any time thereafter.

253.    Defendant Prestamos's failure to properly fund the loans of Plaintiffs and the other members of the National Class also breached its obligations under the Additional Agreement that, "[i]n consideration of Prestamos … making the above loan, each of the undersigned, jointly and severally, do hereby agree as follows: …"; the term in the Notice - No Oral Agreements that the "Loan by Lender, Prestamos CDFI, LLC to Borrower … in the amount of $ … **REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**"; and the term in the Notice - No Oral Agreements that the "'Loan Agreement' means one or more promises, promissory

notes, agreements, undertakings, security agreements, deeds of trust or other documents or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation."

254.    By failing to fund the SBA-approved loans of Plaintiffs and the members of the National Class, defendant Prestamos not only breached the terms of the Loan Documents as alleged, but also failed to perform the central purpose of the parties' agreement which was to timely and properly fund these SBA-approved loans.

255.    Moreover, all PPP loan applications require applicants to certify that they have not, and will not, receive other PPP loans as alleged more fully above.

256.    As a result, once Plaintiffs and the other members of the National Class applied for PPP loans and their loan applications were approved by the SBA and assigned PPP loan numbers pursuant to the Loan Documents, Plaintiffs and the National Class members were no longer able to apply for PPP loans with other PPP lenders as they would not be able to certify that they would not receive another PPP loan, also as alleged more fully above.

257.    Plaintiffs and the National Class members were therefore effectively "stuck" with, and had to rely exclusively on, defendant Prestamos to actually provide them with the PPP loan funds that they needed and that the SBA had already approved.

258.    For its part, defendant CPLC controlled and directed Prestamos's PPP lending activities and failure to fund the SBA-approved loans of Plaintiffs and the other members of the National Class; controlled and dominated defendant Prestamos's Board of Directors and senior leadership; referred to the companies in their PPP lending activities as one and the same; caused Prestamos to upstream to CPLC PPP loan processing fees including on PPP loans Prestamos was

obligated to fund but failed to fund; and served as Prestamos's alter ego in failing to fund the SBA-approved loans of Plaintiffs and the putative members of the National Class all as alleged more fully above, and is therefore also liable for breach of contract.

259.    As a result, Defendants harmed Plaintiffs and the members of the National Class in an amount to be determined at trial, but not less than the amount of the wrongfully withheld PPP loan proceeds plus all other applicable damages to the full extent permissible by law.

## COUNT TWO

### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of Plaintiffs Marshall and Townsend and the California Subclass)

260.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

261.    This Count is brought against both Defendants.

262.    The California Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. CAL. BUS. & PROF. CODE § 17200.

263.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

264.    Plaintiffs Marshall and Townsend have standing to bring this claim because these Plaintiffs are residents of California and are subject to the protection of the UCL.

265.    Prestamos's failure to fund SBA-approved PPP loans breached the Loan Documents and accompanying legal duties it owed plaintiffs Marshall and Townsend and the other members of the California Subclass.

266.     As a result of its failure to fund the SBA-approved PPP loans, Prestamos obtained

fees and other compensation to which it was not entitled, including fees on loans it never funded

and loan proceeds rightfully belonging to plaintiffs Marshall and Townsend and the California

Subclass, and wrongfully deprived plaintiffs Marshall and Townsend and the members of the

California Subclass of PPP loan proceeds.

267.     For its part, defendant CPLC controlled and directed Prestamos's PPP lending

activities and failure to fund the SBA-approved loans of plaintiffs Marshall and Townsend and

the other members of the California subclass and caused Prestamos to upstream to CPLC PPP

loan processing fees including on PPP loans Prestamos was obligated to fund but failed to fund,

all as alleged more fully above.

268.     When the PPP loans of plaintiffs Marshall and Townsend and the California

Subclass were approved by the SBA, these SBA-approved borrowers had a vested interest in the

PPP loan proceeds which Prestamos wrongfully withheld.

269.     Prestamos's failures to fund these PPP loans thereby constitute a violation under

the "unlawful" prong of the UCL.

270.     Similarly, Prestamos's failure to fund SBA-approved loans also constitutes

"unfair" acts and practices under the UCL because Prestamos's acts and practices as alleged

offend public policy and are immoral, unethical, oppressive, unscrupulous and substantially

injurious to plaintiffs Marshall and Townsend and the members of the California Subclass.

271.     Defendant CPLC's role in directing Prestamos's PPP lending also constitutes

"unfair" acts and practices under the UCL because CPLC controlled and directed Prestamos's

acts and practices as alleged which also offends public policy and is and was immoral, unethical,

66

oppressive, unscrupulous and substantially injurious to plaintiffs Marshall and Townsend and the members of the California Subclass.

272.     Prestamos's breaches of contract -- including not disbursing SBA-approved loan funds and "locking" these borrowers into Prestamos -- constitute an unfair practice because those breaches are immoral, unethical, oppressive, unscrupulous, or substantially injurious.

273.     Once the loan applications of plaintiffs Marshall and Townsend and other similarly situated members of the California Subclass were approved by the SBA, these Subclass member borrowers had to rely exclusively on Prestamos to actually fund their PPP loans and were thereby precluded from seeking PPP loans from other lenders, also as alleged above.

274.     Prestamos's failure to fund PPP loans of plaintiffs Marshall and Townsend and the other members of the California Subclass constitute unlawful and unfair business acts or practices within the meaning of CAL. BUS. & PROF. CODE § 17200.

275.     CPLC's control and direction of Prestamos in failing PPP loans of plaintiffs Marshall and Townsend and the other members of the California Subclass also constitutes unlawful and unfair business acts or practices within the meaning of CAL. BUS. & PROF. CODE § 17200.

276.     As a result of Defendants' violations of the UCL, plaintiffs Marshall and Townsend and the members of the California Subclass are, in the alternative and to the extent that their breach of contract claim against defendant Prestamos fails to adequately award their damages, entitled to equitable relief, including specifically injunctive relief directing Prestamos to fund their SBA-approved loans in full with applicable interest from the date the loans should have been funded, or restitution for the amount of the wrongfully withheld PPP loan proceeds plus interest.

## COUNT THREE

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1, *et seq.*
### (On behalf of Plaintiff Ahmadou and the Illinois Subclass)

277.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

278.    This Count is brought against defendant Prestamos.

279.    The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. § 505/2.

280.    In the course of its business, Prestamos concealed and suppressed material facts concerning funding the SBA-approved PPP loans of plaintiff Ahmadou and the members of the Illinois Subclass. Among other things, Prestamos falsely communicated its promises to: (1) act as a "Lender"; (2) hold Plaintiff and the Illinois Subclass members to obligations "[i]n consideration of Prestamos … making the … loan[s]" to which these SBA-approved borrowers were entitled; (3) otherwise fulfill the terms of its written agreements with plaintiff Ahmadou and the members of the Illinois Subclass.

281.    The ICFA also provides: "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILL. COMP. STAT. § 505/2.

282.    Prestamos is a "person" as that term is defined for the purposes of 815 ILL. COMP. STAT. § 505/1(c).

283.    Plaintiff Ahmadou has standing to bring this claim because he is a resident of Illinois and subject to the protections of the ICFA.

284.    Plaintiff Ahmadou and members of the Illinois Subclass are "consumers" as that term is defined for the purposes 815 ILL. COMP. STAT. § 505/1(e).

285.    Prestamos's conduct, as described in this amended complaint, constitutes "deceptive acts" in violation of the ICFA.

286.    Prestamos's conduct, as described in this amended complaint, also constitutes "unfair" acts in violation of the ICFA.

287.    Prestamos's unfair or deceptive acts or practices were likely to and did in fact deceive plaintiff Ahmadou and members of the Illinois Subclass with respect to its intention to fund their SBA-approved loans.

288.    The ICFA allows "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person [to] bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper .…" 815 ILL. COMP. STAT. § 505/10a.

289.    Plaintiff and the members of the Illinois Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Prestamos's concealment of and failure to disclose material information about the funding of their PPP loans. Plaintiff and Illinois Subclass members contracted with and thereby agreed to allow Prestamos to process and fund their SBA loans and would not have done so if the true nature of those services had been disclosed.

290.     Plaintiff Ahmadou and the Illinois Subclass seek monetary relief against Prestamos in the amount of actual damages, as well as punitive damages to the extent Prestamos acted with malice and/or was grossly negligent to the maximum extent permissible by law under the ICFA.

291.     Prestamos's unlawful acts and practices complained of herein affect the public interest.

292.     Plaintiff Ahmadou and the Illinois Subclass also seek an order enjoining each Prestamos's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILL. COMP. STAT. § 505/1, *et seq.*

## COUNT FOUR

### Violation of the Ohio Consumer Sales Practices Act
### Ohio Rev. Code §1345.01, *et seq.*
### (On behalf of Plaintiff Stalnaker and the Ohio Subclass)

293.     Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

294.     This Count is brought against defendant Prestamos.

295.     At all relevant times, plaintiff Stalnaker and the members of the Ohio Subclass were "persons" within the meaning of Ohio Rev. Code Ann. § 4165.01(D).

296.     Plaintiff Stalnaker has standing to bring this claim because she is a resident of Ohio and subject to the protections of the Ohio Deceptive Trade Practices Act (the "ODTPA").

297.     At all relevant and material times as described herein, Prestamos was engaged in "the course of [its] business" within the meaning of OHIO REV. CODE ANN. § 4165.02(A) with respect to the acts alleged herein.

298.     OHIO REV. CODE ANN. § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the

person does any of the following: ... (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have … (13) Advertises goods or services with intent not to supply reasonably expectable public demand."

299.    Plaintiff Stalnaker and the members of the Ohio Subclass have suffered losses because of Prestamos's employment of unfair or deceptive acts or practices in the course of its business to the detriment of plaintiff Stalnaker and the members of the Ohio Subclass and their respective businesses. Prestamos promised to, among other things: (1) act as a "Lender"; (2) perform its obligations to plaintiff Stalnaker and Ohio Subclass members including but not limited to "[i]n consideration of Prestamos … making the … loan[s]" to which plaintiff Stalnaker and the members of the Ohio Subclass were entitled; and (3) otherwise fulfill the terms of its written agreements with plaintiff Stalnaker and the members of the Ohio Subclass.

300.    Prestamos knew or should have known that those practices were deceptive in violation of ODTPA, OHIO REV. CODE ANN. § 4165.02(A).

301.    The facts that Prestamos concealed were material to the decisions of plaintiff Stalnaker and the members of the Ohio Subclass as to whether to select Prestamos to fund their SBA-approved loans, in that they would not have proceeded with Prestamos but for Prestamos's misconduct.

302.    As a direct and proximate result of Prestamos's misconduct alleged herein, plaintiff Stalnaker and the members of the Ohio Subclass were deceived into contracting with Prestamos to process their SBA-approved loans and have been damaged thereby.

303.     Prestamos is therefore liable to plaintiff Stalnaker and the members of the Ohio Subclass for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the maximum extent provided by the ODTPA.

## COUNT FIVE

### Unjust Enrichment
### (Against Defendant CPLC)

304.     Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

305.     This Count is brought against defendant CPLC. Plaintiffs allege this Count only in the alternative, to the extent Plaintiffs' breach of contract and California state law claims fail to adequately compensate Plaintiffs and the members of the National Class and California Subclass for the violations as alleged herein.

306.     Plaintiffs and Class members conferred a monetary benefit on defendant CPLC. Specifically, they chose CPLC's wholly-owned and controlled subsidiary, defendant Prestamos, to process and fund their PPP loans. In exchange, Plaintiffs and Class members should have received the funds to which they were entitled.

307.     Defendant Prestamos received PPPLF advances and PPP loan processing fees based, at least in part, on the unfunded loans of the Plaintiffs and Class members, all of which was controlled and directed by CPLC as alleged more fully above.

308.     Defendant CPLC appreciated or had knowledge of the benefits it received as a result of the Plaintiffs' and Class members' approved loans and it accepted and retained those benefits, including without limitation hundreds of millions of dollars in PPP loan processing fees CPLC caused Prestamos to upstream to CPLC from the SBA-approved PPP loans of Plaintiffs and other similarly situated class members. Defendant CPLC profited from Plaintiffs' and Class

members' PPP loan transactions and used the funds resulting therefrom for business purposes and for the personal gain of CPLC and CPLC's insiders and potentially others, as alleged more fully above.

309.    CPLC controlled and directed the activities of Prestamos for purposes of the PPP also as alleged more fully above, and CPLC should have caused Prestamos to timely and properly fund Plaintiffs' and Class members' PPP loans.

310.    Under the principles of equity and good conscience, defendant CPLC should not be permitted to retain the funds it obtained and received as a result of Plaintiffs' and Class members' unfunded loans, without Prestamos having disbursed those or other funds to fund the PPP loans to which Plaintiffs and Class members were entitled.

311.    CPLC did not require Prestamos to fund those loans and Prestamos did not, in fact, fund those loans, and therefore did not provide full compensation for the benefit Plaintiffs and Class members provided.

312.    As a direct and proximate result of CPLC's conduct as alleged, Plaintiffs and Class members have suffered and will suffer injury.

313.    Defendant CPLC should not be permitted to unjustly enrich itself at the expense of Plaintiffs and Class members, but in equity and good conscience should be required to make restitution for all funds acquired as a result of its unlawful conduct. Defendant CPLC should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that it unjustly received as a result of Plaintiffs' and Class members' unfunded PPP loans.

## **Prayer for Relief**

Plaintiffs, individually and on behalf of the proposed Classes, respectfully request the following relief:

73

A.      an order certifying the Classes under Rule 23 of the Federal Rules of Civil

Procedure; naming plaintiffs as representatives of the proposed National Class; naming plaintiffs

Marshall and Townsend as representatives of the proposed California Subclass; naming plaintiff

Ahmadou as representative of the proposed Illinois Subclass; naming plaintiff Stalnaker as

representative of the proposed Ohio Subclass; and naming Plaintiffs' attorneys as counsel for the

Classes and the Subclasses;

B.      judgment in favor of Plaintiffs and the Classes on all applicable counts asserted

herein;

C.      an award of compensatory, consequential and other damages to Plaintiffs and

members of the Classes in amounts to be determined at trial to the maximum extent permissible

by law, plus prejudgment interest;

D.      an order awarding all other forms of monetary relief to the maximum extent

permissible by law, including payment to the Classes of all PPP loan proceeds owed and due to

Plaintiffs and the members of the Classes with interest, as well as disgorgement of all fees

Prestamos obtained in connection therewith to the maximum extent permissible by law;

E.      an order of equitable relief, in the alternative and to the extent that the breach of

contract claim of plaintiffs Marshall and Townsend and the members of the California Subclass

fails to adequately award their damages for Defendants' violations, including injunctive relief

directing Defendants to fund their SBA-approved loans in full with interest, or restitution in the

amount of the wrongfully withheld PPP loan proceeds plus interest under CAL. BUS. & PROF.

CODE § 17200;

74

F.      an award of punitive damages based on Prestamos' intentional, wanton and malicious conduct, or its reckless disregard of Plaintiffs' and the National Class members' rights, in amounts to be determined at trial to the maximum extent permissible by law;

G.      an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of this lawsuit, including but not limited to expert fees and costs, to the maximum extent permissible by law;

H.      an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of this lawsuit in connection with any applicable PPP loans Prestamos funded after the October 1, 2021 date that this litigation was filed that are fairly and reasonably attributable to Plaintiffs filing and maintaining this litigation to the maximum extent permissible by law; and

I.      such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: May 2, 2022

Respectfully submitted,

**BAILEY & GLASSER LLP**

By: /s/ *Lawrence J. Lederer*
    Lawrence J. Lederer (Pa. ID 50445)
    Michael L. Murphy (admitted *pro hac vice*)
    Patricia M. Kipnis (Pa. ID 91470)
    Bart D. Cohen (Pa. ID 57606)
    1055 Thomas Jefferson Street NW, Suite 540
    Washington, DC 20007
    T.: 202.463-2101
    F.: 202.463-2103
    llederer@baileyglasser.com
    mmurphy@baileyglasser.com
    pkipnis@baileyglasser.com
    bcohen@baileyglasser.com

- and -

**NOLAN HELLER KAUFFMAN LLP**
Justin A. Heller (admitted *pro hac vice*)
Matthew M. Zapala (admitted *pro hac vice*)
80 State Street, 11th Floor
Albany, NY 12207
T.: 518.449.3300
F.: 518.432.3123
jheller@nhkllp.com
mzapala@nhkllp.com

# EXHIBIT A:
# PLAINTIFF MARSHALL'S
# LOAN DOCUMENT CONTRACT

DocuSign Envelope ID: 0ED26135-2E47-4CA0-B22A-5370D53D4C7A



## U.S. Small Business Administration

# NOTE

| SBA Loan # | 8282208801 |
|---|---|
| SBA Loan Name | Paycheck Protection Program |
| Date | 4/29/2021 |
| Loan Amount | $ 7915 |
| Interest Rate | Fixed at 1% |
| Borrower | Alicia Marshall |
| Operating Company | Alicia Marshall |
| Lender | Prestamos CDFI, LLC |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of
    $ 7915 _____ Dollars,
    interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

Initial Deferment Period: No payments are due on this loan beginning on the date of first disbursement of this loan until the loan forgiveness payment is remitted to the Lender by the SBA. Interest will continue to accrue during the deferment period.

Loan Forgiveness:
First Draw PPP Loans made to eligible borrowers qualify for full loan forgiveness if during the 8- to 24-week covered period following loan disbursement:
oEmployee and compensation levels are maintained
oThe loan proceeds are spent on payroll costs and other eligible expenses; and
oAt least 60 percent of the proceeds are spent on payroll costs
Second Draw PPP Loans made to eligible borrowers qualify for full loan forgiveness if during the 8 to 24 week covered period following loan disbursement:
oEmployee and compensation levels are maintained in the same manner as required for the First Draw PPP loan
oThe loan proceeds are spent on payroll costs and other eligible expenses; and
oAt least 60 percent of the proceeds are spent on payroll costs
The amount of loan forgiveness shall be calculated (and may be reduced) in accordance with the requirements of the Paycheck Protection Program, including the provisions of Section 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Not more than 40% of the amount forgiven can be attributable to non-payroll costs.

Maturity: This Note will mature five years from date of first disbursement of this loan.

Repayment Terms: The interest rate on this Note is one percent per year. The interest rate is fixed and will not be changed during the life of the loan.

For any amounts that remain owing on this Note after the SBA remits the forgiveness payment, Borrower must pay principal and interest payments, in such amount as is required to fully amortize the unpaid balance of this Note over the remaining term, beginning one (1) month following the SBA's forgiveness payment. If a forgiveness application is not made within ten (10) months of the last day of the covered period, Borrower must pay principal and interest payments in such amount as is required to fully amortize the unpaid balance of this Note over the remaining term. Payments must be made on the 1st calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender received the payment, then to bring principal current, and will apply any remaining balance to reduce principal.

Loan Prepayment: Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note at any time without penalty. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must: a. Give Lender written notice; b. Pay all accrued interest; and c. If the prepayment is received less than 21 days from the date Lender received the notice, pay an amount equal to 21 days interest from the date lender received the notice, less any interest accrued during the 21 days and paid under b. of this paragraph. If Borrower does not prepay within 30 days from the date Lender received the notice, Borrower must give Lender a new notice.

Non-Recourse: Lender and SBA shall have no recourse against any individual shareholder, member or partner of Borrower for non-payment of the loan, except to the extent that such shareholder, member or partner uses the loan proceeds for an unauthorized purpose.

4.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.   Fails to do anything required by this Note and other Loan Documents;

B.   Defaults on any other loan with Lender;

C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.   Fails to pay any taxes when due;

H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.   Has a receiver or liquidator appointed for any part of their business or property;

J.   Makes an assignment for the benefit of creditors;

K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.


5.   LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.   Require immediate payment of all amounts owing under this Note;

B.   Collect all amounts owing from any Borrower or Guarantor;

C.   File suit and obtain judgment;

D.   Take possession of any Collateral; or

E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.   Release anyone obligated to pay this Note;

D.   Compromise, release, renew, extend or substitute any of the Collateral; and

E.   Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

None

Unless otherwise prohibited by law, the following additional provisions will apply:

Release of Lender. In consideration of the agreement of the Lender to provide this Note, and other good and valuable consideration, which consideration is agreed by Borrower to be good and sufficient, Borrower RELEASES, ACQUITS AND FOREVER DISCHARGES the Lender, its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns from any and all claims, demands, liens, damages, actions or suits, of whatsoever nature or character, whether statutory (including without limitation usury and deceptive trade practices claims), in contract or in tort, known or unknown, which have accrued or may accrue to Borrower or any creditor or affiliate of Borrower on account of any injuries, damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Lender, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors or assignors on or prior to the date hereof.

Notwithstanding anything else contained herein, this Note is not secured and there are no guarantors.

11.  BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:  Alicia Marshall

By _____  Date  _____

Date  4/29/2021

DocuSign Envelope ID: 0EP26135-2E47-4CA0-B22A-5370D53D4C7A

**ADDITIONAL AND CORRECTION DOCUMENTS AGREEMENT**
**(ERRORS AND OMISSIONS AGREEMENT)**

RE:     **Loan by Lender, Prestamos CDFI, LLC to** Alicia Marshall_____, a(n)

Sole Proprietorship (Unregistered)_____, **in the amount of $** 7915_____.

In consideration of Prestamos CDFI, LLC, located at 1024 E Buckeye RD, Suite 270, Phoenix AZ 85034, (hereinafter called "Lender") making the above loan, each of the undersigned, jointly and severally, do hereby agree as follows:

1.      In the event the promissory note or any other document or other writing evidencing, securing or pertaining to the above loan is misplaced or lost or incorrectly reflects the true and correct terms, conditions or provisions of the loan in the opinion of Lender, each of the undersigned shall execute, acknowledge, initial and deliver to Lender all documents and other writings that Lender requests which Lender deems necessary to replace or correct any misplaced, lost or incorrect document or other writing; and

2.      In the event Lender deems it necessary that any additional documents or other writings be executed by any of the undersigned in connection with or pertaining to the above loan which have not been requested to be executed by the undersigned on or before the date hereof (or which were requested but not executed for any reason whatsoever), each of the undersigned shall execute, acknowledge, initial and deliver to Lender all such additional documents or other writings that Lender may reasonably request in connection with such loan; and

3.      Each of the undersigned further agrees to execute, acknowledge, initial and deliver to Lender all such documents and writings and pay such additional sums requested by Lender within ten (10) days after Lender requests same. Any request by Lender shall be deemed given and received on the earlier of (i) the date such request is actually received by one of the undersigned or (ii) three (3) days after such request is mailed, postage prepaid and addressed to any of the undersigned at the last known address of the undersigned in accordance with the records of Lender, whichever date occurs first; and

4.      If any of the undersigned refuses or fails within such ten (10) day period to (i) execute, acknowledge, initial and deliver any such document or other writing requested by Lender, or (ii) pay any such fees, expenses, costs or interest, each of the undersigned, jointly and severally, agree to pay to Lender all losses, damages and expenses paid or incurred by Lender in any manner emanating therefrom or connected therewith, including (but not limited to) reasonable attorney's fees, and each of the undersigned further agree that any such failure or refusal shall constitute a default and an Event of Default under the note and all other writings evidencing, securing or pertaining to said loan; and

5.      Each of the undersigned hereby acknowledges that Lender is relying upon this agreement in making the above loan and that Lender would not make such loan unless each of the undersigned execute and deliver this agreement; and each of the undersigned further agree that this agreement (i) shall inure to the benefit of Lender and each subsequent holder of the note evidencing such loan, and (ii) shall be binding upon each of the undersigned and upon each of the heirs, personal representatives, successors and assigns of each of the undersigned.

EXECUTED  4/29/2021

**BORROWER:**

Alicia Marshall_____,

A(n)                    Sole Proprietorship (Unregistered)

By: _Alicia Marshall_____
   A205AC88927243D...
Name: Alicia Marshall_____

Title: Owner_____

**BUSINESS PURPOSE STATEMENT**
**(SBA Paycheck Protection Program)**

I, Alicia Marshall                    , Owner        of    Alicia Marshall                        ,

a(n)                    Sole Proprietorship (Unregistered), state as follows:

     1.    To induce Prestamos CDFI, LLC, 1024 E Buckeye Rd, Suite 270, Phoenix, AZ 85034, to

extend credit to Alicia Marshall                    , a(n)                Sole Proprietorship (Unregistered)

I represent that the proceeds of the loan in the amount of $ 7915                        will   be   used

only for the following purpose(s):

       Business related purposes as authorized by the U.S. Small Business Administration Paycheck
       Protection Program and as specified in the loan application.

     2.    I understand that the above-stated purpose is for business or commercial purposes only

and that you are relying upon these representations in not making Truth-in-Lending disclosures pursuant

to 15 U.S.C. Section 1601, in connection with this loan.

     **EXECUTED** 4/29/2021

DocuSigned by:

*Alicia Marshall*

(A   A205AC88927243D...

## NOTICE - NO ORAL AGREEMENTS

RE:     **Loan by Lender, Prestamos CDFI, LLC  to Borrower,** <u>Alicia Marshall</u>,

     **a(n)** <u>Sole Proprietorship (Unregistered)</u> **in the amount of $** <u>7915</u>.

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

    "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

    **EXECUTED** 4/29/2021

**LENDER:**

PRESTAMOS CDFI, LLC

By: _____

Name: <u>Jose Martinez</u>

Title: <u>President</u>

**BORROWER:**

Alicia Marshall

A(n)            Sole Proprietorship (Unregistered)

By: <u>Alicia Marshall</u>
A205AC88927243D...

Name: <u>Alicia Marshall</u>

Title: <u>Owner</u>

**WRITTEN CONSENT OF GOVERNING BODY**
**(SBA PPP loan)**

Pursuant to applicable law, the undersigned, being the appropriate governing body pursuant to the governing documents for the borrowing entity designated on the signature page hereof ("Company"), hereby consent to the adoption of and do hereby adopt the following resolutions and acknowledge that Prestamos CDFI, LLC ("Lender") is relying on the effectiveness hereof in making a loan to Company under the Paycheck Protection Program Second Draw Loans of the Small Business Administration ("SBA") as authorized under Section 311 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act"):

**RESOLVED,** that the undersigned hereby authorizes the Authorized Person named below as the appropriate person pursuant to the governing documents of the Company ("Authorized Person"), for and on behalf and in the name of the Company, to take such action necessary for the Company to borrow money and to obtain credit from the Lender, with its principal office located in Phoenix, Arizona, in the amount stated in the promissory note executed by Company and payable to Lender (the "Loan") and dated on or about the date hereof, hereinafter called the "Loan", including any renewals, extensions, consolidations or rearrangements of such indebtedness, upon such terms and at such rates as he or she deems reasonable;

**BE IT FURTHER RESOLVED,** that the undersigned hereby authorizes the Authorized Person, for and on behalf and in the name of the Company to prepare, execute and deliver any and all applications, certifications, promissory notes, loan agreements and any and all other documents and to perform any and all acts which may be necessary or proper to effect the borrowing and to execute and deliver any and all instruments and perform any and all acts required by the Lender and/or the SBA in connection with any matters herein contained, including any renewals, extensions, consolidations or rearrangements of such indebtedness, upon such terms and at such rates as the Authorized Person, in his or her sole discretion, deems reasonable;

**BE IT FURTHER RESOLVED,** that all the acts and deeds done or to be done by the Authorized Person, in connection with the execution and delivery of any promissory notes, loan agreements, and any and all other documents, and any and all acts which may be necessary or proper to effect the borrowing, are hereby authorized, adopted, ratified, confirmed and approved as the acts and deeds of Company;

**BE IT FURTHER RESOLVED,** that the Authorized Person be and is hereby authorized and directed to take such other action and deliver such additional instruments in the name of and on behalf of Company, or otherwise to do all such further acts and things that the Authorized Person shall deem necessary or proper in order to effectively perform all of the obligations and agreements expressed to be kept and performed by Company, pursuant to the provisions of any promissory notes, loan agreements and any and all other documents and to perform any and all acts which may be necessary or proper to effect the borrowing described above;

**BE IT FURTHER RESOLVED,** that any government agency, including but not limited to, the SBA, may also rely on this Written Consent when identifying any Authorized Person for purposes of any loan guaranty, loan forgiveness, or other government program related to the Loan; and

**BE IT FURTHER RESOLVED,** that any and all acts authorized pursuant to this Written Consent and performed prior to the execution of this Written Consent are hereby ratified and approved. This Written Consent shall be continuing and shall remain in full force and effect until written notice of its revocation shall have been delivered to the Lender and receipt acknowledged by the Lender in writing.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - SIGNATURES ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF,** the undersigned have executed this consent effective as of  4/29/2021

**<u>AUTHORIZED PERSON</u>:**

Alicia Marshall

A(n)                                          Sole Proprietorship (Unregistered)

By:     _Alicia Marshall_____

Name:   _Alicia Marshall_____

Title:   _Owner_____

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

► Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Alicia Marshall

**2** Business name/disregarded entity name, if different from above

Alicia Marshall

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

[X] Individual/sole proprietor or single-member LLC    [ ] C Corporation    [ ] S Corporation    [ ] Partnership    [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ►

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

[ ] Other (see instructions) ►

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

500 6th St Apt 7

**6** City, state, and ZIP code

West Sacramento          CA          95605

Requester's name and address (optional)

**7** List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

or

Employer identification number

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**    Signature of U.S. person ►    *Alicia Marshall*    DocuSigned by:    A205AC88927243D...    Date ►    4/29/2021

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

   Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X          Form **W-9** (Rev. 10-2018)

**Information and Bank Account Certification and Authorization:**

I acknowledge that the lender has to its best ability confirmed the ownership and active status of the depository account at the Financial Institution listed as required in the documents submitted to the SBA for PPP loan approval. I understand, acknowledge, and agree that the Lender or its' partners can share any financial information that I have provided with along with the SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, or any of its affiliates or partners for the purpose of compliance, accuracy, and verification of good standing to comply with all SBA Loan Program Requirements and or any and all SBA reviews.

I, Alicia Marshall_____ certify in good faith to the below information to be the rightful and correct owner of the account and am responsible for the accuracy and information provided below and authorize the lender and or its affiliates or partners to deposit the loan proceeds on the company's behalf. I further certify that the account information provided below is true and accurate in all material respects.

BANK NAME:   Evolve Bank & Trust

ACCOUNT NAME:   Alicia Marshall

ACCOUNT NUMBER:   ████████

ROUTING NUMBER:   084106768