**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

ALICIA MARSHALL, *et al.*,                    :
                        Plaintiffs,           :
                                              :
              v.                              :        Civil No. 5:21-cv-04337-JMG
                                              :
PRESTAMOS CDFI, LLC,                          :
                        Defendant.            :
_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                          **March 30, 2023**

## I.  <u>OVERVIEW</u>

Plaintiffs, sole proprietors, allege Defendant Prestamos, a private lender authorized to disburse Paycheck Protection Program ("PPP") loans under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), accepted and agreed to fund their SBA-approved applications for PPP loans, yet failed to ever to disburse the loans to Plaintiffs. Defendants seek dismissal on numerous grounds pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

For the reasons explained herein, the Court holds Plaintiffs have standing to raise their breach of contract claim, for which they successfully state a claim, except to the extent Named Plaintiffs purport to bring state law claims under the laws of states in which they do not reside in or in which they were never injured. Plaintiffs' claims for relief in the alternative under California's Unfair Competition Law ("UCL"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Ohio Deceptive Trade Practices Act ("ODTPA"), are dismissed for failure to state a claim.

Defendants' motion to dismiss Chicanos Por La Causa, Inc. ("CPLC") for failure to allege an alter ego relationship with Prestamos that could subject to CPLC to personal jurisdiction or liability is denied without prejudice, pending jurisdictional discovery and a determination as to whether the Court has personal jurisdiction over CPLC.

## II.   BACKGROUND

### a.   Relevant Procedural History

Plaintiffs filed their initial class action complaint on October 1, 2021 ("Complaint") against Defendant Prestamos CDFI, LLC ("Prestamos"). *See* ECF No. 1. Prestamos filed a Motion to Dismiss the Complaint on December 10, 2021. *See* ECF No. 15. In response, Plaintiffs elected to file an amended class action complaint against Prestamos on January 14, 2022 ("First Amended Complaint"). *See* ECF No. 18.  Prestamos filed a Motion to Dismiss the First Amended Complaint on February 14, 2022. *See* ECF No. 24. Plaintiffs filed a Response in Opposition on March 10, 2022. *See* ECF No. 29. Prestamos filed a Reply in Support of its Motion to Dismiss on March 17, 2022. *See* ECF No. 32.

On May 2, 2022, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, adding Chicanos Por La Causa, Inc. ("CPLC") as an additional defendant. *See* ECF No. 37. Prestamos filed a Response in Opposition on May 16, 2022. *See* ECF No. 39. The Court granted Plaintiffs' Motion for Leave to File a Second Amended Complaint and docketed the Second Amended Complaint ("SAC") on May 20, 2022. *See* ECF Nos. 40, 42.

Prestamos and CPLC (collectively, "Defendants") filed the instant Motion to Dismiss Plaintiffs' SAC on June 3, 2022 ("MTD"). *See* ECF No. 46. Plaintiffs filed their Response in Opposition on June 17, 2022. *See* ECF No. 49. Defendants filed a Reply in Support of Defendants'

MTD on June 25, 2022. *See* ECF No. 51. On December 14, 2022, Plaintiffs filed a Motion for Leave to File Supplemental Authority. *See* ECF No. 53. Defendants filed a Response in Opposition on December 23, 2022. *See* ECF No. 54.

### b. Plaintiff's Second Amended Complaint

Plaintiffs Alicia Marshall, Daniel Pronsky, Paris Townsend, Nancilee Holland, Leona Owsley, Kolawole Ahmadou, Kiana Dervin, Kristina Henderson, Dustin Innis, Kelly Stalnaker and Jamie Jones  (collectively, "Plaintiffs" or "Named Plaintiffs") are sole proprietors at all times relevant residing in California, Pennsylvania, Connecticut, Missouri, Illinois, Washington, Michigan, Nevada, Ohio, and Arizona who allege they applied to receive Paycheck Protection Program ("PPP") loans under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") through Defendant Prestamos CDFI, LLC ("Prestamos"). *See generally id.* Plaintiffs allege their loans were approved by Prestamos and the U.S. Small Business Administration ("SBA"), and that each Plaintiff and Prestamos executed binding Loan Documents through which Prestamos agreed to make the PPP loans. *Id.* at ¶ 248. Plaintiffs allege Prestamos, "[i]n flagrant disregard of its contractual obligations…failed to actually fund" Plaintiffs' and class members' "SBA-approved PPP loans." *Id.* at ¶ 13.

The CARES Act authorized the SBA to guarantee forgivable PPP loans issued by private lenders to small businesses.[1] Defendant Prestamos is among the private PPP lenders authorized by the SBA.  *See* SAC at ¶ 5 [ECF No. 42]. "To facilitate lending under the SBA's PPP, the Federal

---

[1] Paycheck Protection Program (PPP) Information Sheet: Borrowers, United States Treasury,https://home.treasury.gov/system/files/136/PPP%20Borrower%20Information%20Fact%20Sheet.pdf (accessed 3/20/2023).

Reserve supplied liquidity to Prestamos and other participating financial institutions through term financing to be secured by the PPP loans." *Id.* at ¶ 86.

Each Named Plaintiff alleges they were sole proprietors who sustained significant income loss due to the pandemic. *Id.* at ¶¶ 15-25, 98, 125, 134, 143, 157, 166, 175, 184, 193, 205, 214 [ECF No. 42]. Each Named Plaintiff alleges they applied for a PPP loan with Prestamos, and that their application was approved by the SBA. *Id.* at ¶¶ 99-102, 126-127, 135-136, 144-146, 158-159, 167-168, 177-178, 185-186, 194-195, 206-208, 215-216. Each Named Plaintiff alleges that, "[t]hrough its agreement to make PPP loans via the Loan Documents, its acceptance and approval of Plaintiffs' PPP loan applications, and as the counterparty to the Loan Documents[2], defendant Prestamos entered into a binding agreement with each of the Plaintiffs and the members of the proposed National Class to fund their respective PPP loans." *Id.* at ¶ 248. However, "[d]espite properly and timely completing, signing and submitting the Loan Documents," Named Plaintiffs allege they never received the proceeds of their SBA-approved PPP loans from Prestamos. *Id.* at ¶¶ 106, 131, 140, 149, 163, 172, 181, 190, 199, 211, 220.

Named Plaintiffs bring this action individually and on behalf of a National Class, California Subclass, Illinois Subclass, and Ohio Subclass, of persons and entities who applied for PPP loans

---

[2] *See* SAC at ¶ 101 (defining "Loan Documents" as consisting of promissory note, "Additional and Correction Documents Agreement (Errors and Omissions Agreement) (the "Additional Agreement") between Prestamos and plaintiff []; a Business Purpose Statement; a Notice – No Oral Agreements bearing the signature of Prestamos's President Jose Martinez ("Martinez")…; a Written Consent of Governing Body form for [Plaintiffs] to represent that [they are] authorized to receive the loan and on which Prestamos may rely; an IRS W-9 Request for Taxpayer Identification Number and Certification; and an Information and Bank Account Certification and Authorization form identifying the bank or other account to which Prestamos would send the funds.").

with Defendant Prestamos in 2021 "for whom the SBA provided an SBA loan number, who executed their Loan Documents, but did not receive the PPP loan proceeds." *Id.* at ¶ 230.

In addition to Prestamos, Plaintiffs also bring claims against Defendant CPLC. Plaintiffs allege CPLC is liable as the owner and alter ego of Prestamos. *Id.* at ¶¶ 11, 258. The SAC alleges:

> Defendant Prestamos is and during all times relevant was wholly owned by defendant CPLC. Defendant CPLC at all times relevant controlled and dominated defendant Prestamos and Prestamos's PPP lending; shared certain of the same senior executives and directors; had a website that referred to and promoted Prestamos; publicly held out the companies as one and the same and repeatedly referred to them as 'CPLC Prestamos' in CPLC's Fiscal Year 2019-2020 Annual Report…reported on CPLC's own financial statements that it received hundreds of millions of dollars in PPP loan processing fees; and is headquartered in a building that is virtually adjacent to Prestamos's headquarters.

*Id.* at ¶ 7. Plaintiffs allege this Court has jurisdiction over CPLC because "Prestamos was at all times relevant CPLC's wholly-owned and controlled subsidiary and CPLC was Prestamos's alter ego at all times relevant in connection with PPP lending; and defendant Prestamos's contacts in this District in connection with PPP lending and the claims at issue are imputed to its corporate parent CPLC." *Id.* at ¶ 35.

Plaintiffs' SAC brings five counts. Counts One and Two are brought against both Defendants, Counts Three and Four are brought against Prestamos only, and Count Five is brought against CPLC only.

Count One, for breach of contract, is brought against both Defendants and alleges "Defendant Prestamos breached its obligations to fund Plaintiffs' and other National Class members' PPP loans under the Loan Documents by failing to fund the loans within 10 days of the SBA's approval of the loans and assignment of loan numbers, or at any time thereafter." *Id.* at ¶ 252. Plaintiffs' SAC alleges "the applicable provisions of the PPP required lenders to fund PPP

loans within ten days of SBA approval." *Id.* at ¶ 3. The SAC further alleges that "[b]y failing to fund the SBA-approved loans of Plaintiffs and the members of the National Class, defendant Prestamos not only breached the terms of the Loan Documents as alleged, but also failed to perform the central purpose of the parties' agreement which was to timely and properly fund these SBA-approved loans." *Id.* at ¶ 254. Plaintiffs allege that, as a result of Prestamos' failure to fund their SBA-approved loans, Plaintiffs and class members "were no longer able to apply for PPP loans with other PPP lenders as they would not be able to certify that they would not receive another PPP loan." *Id.* at ¶ 256.

Count Two of Plaintiffs' SAC brings claims against both Defendants on behalf of Plaintiffs Marshall, Townsend, and the California Subclass for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code. § 17200, *et seq*. Plaintiffs bring Count Two "in the alternative and to the extent that their breach of contract claims against defendant Prestamos fails to adequately award their damages." *See* SAC at ¶ 277. Plaintiffs Marshall and Townsend allege Defendant Prestamos' failure to fund Plaintiffs' loans constitutes unlawful and unfair business acts or practices as prohibited by the UCL. *Id.* at ¶ 276.

Count Three of Plaintiffs' SAC is brought against Prestamos only, and brings claims on behalf of Plaintiff Ahmadou and the Illinois Subclass for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*. Plaintiff Ahmadou alleges Defendant Prestamos violated the ICFA by concealing and failing "to disclose material information about the funding of their PPP loans" and "falsely communicat[ing] its promises to: (1) act as a 'Lender'; (2) hold Plaintiff and the Illinois Subclass members to obligations 'in consideration of Prestamos…making the…loans' to which these SBA-approved borrowers were entitled; [and] (3) otherwise fulfill the terms of its written agreements with plaintiff Ahmadou and

6

the members of the Illinois Subclass." *See* SAC at ¶¶ 280, 289. This conduct, the SAC alleges, constitutes "deceptive" and "unfair" acts in violation of the ICFA. *Id.* at ¶¶ 285-86.

Count Four of Plaintiffs' SAC is brought against Prestamos only, and brings claims on behalf of Plaintiff Stalnaker and the Ohio Subclass for violation of Ohio law, namely the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code § 4165, *et seq*. The SAC alleges Prestamos violated the ODTPA because its conduct in promising to make loans to Plaintiffs and class members and then failing to do so in violation of the written agreements between Prestamos and Plaintiffs amounts to "deceptive trade practice" under the ODTPA. *See* SAC at ¶¶ 298-99.

Count Five of Plaintiffs' SAC brings an unjust enrichment claim against Defendant CPLC only. Count Five is alleged "only in the alternative, to the extent Plaintiffs' breach of contract and California state law claims fail to adequately compensate Plaintiffs and the members of the National Class and California Subclass for the violations as alleged herein." *Id.* at ¶ 305.

### c. Defendants' Motion to Dismiss

Defendants filed a Motion to Dismiss Plaintiffs' SAC on June 3, 2022 ("MTD"). *See* ECF No. 46. Defendants seek dismissal on numerous grounds: that Plaintiffs lack standing to bring their claims, Plaintiffs' claims are barred by the CARES Act, the SAC fails to state a claim for breach of contract, all Plaintiffs' claims are barred by the terms of the Promissory Notes signed by Plaintiffs, the SAC fails to state a claim for violation of the California Unfair Competition Law ("UCL"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Ohio Deceptive Trade Practices Act ("ODTPA"), and the SAC fails to state a claim for unjust enrichment. Defendants also move for dismissal of all claims against Defendant CPLC, arguing the SAC fails to allege an alter ego relationship that could subject CPLC to personal jurisdiction or liability. *See generally id.*

### III.   LEGAL STANDARD

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

In deciding a Rule 12(b)(1) motion, "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing…is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Id.* (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2017)). "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "A facial attack…is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." *Id.* A factual attack may not occur until "the answer has been served," because "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted." *Mortensen v. First Fed. Sav & Loan Ass'n.*, 549 F.2d 884, 892 n.17 (3d Cir. 1977)).

Here, Defendants argue "[t]he allegations [in the SAC] do not make out an injury in fact," bringing a "facial challenge" to Plaintiffs' SAC, "which contests the sufficiency of the pleadings." *See* Defendants' Motion to Dismiss ("MTD") at pg. 14 [ECF No. 46-1]; then *In re Schering-Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d

Cir. 2000)). *See also Aichele*, 757 F.3d at 358 ("The Commonwealth filed the attack before it filed an answer to the Complaint or otherwise presented competing facts. Its motion was therefore, by definition, a facial attack.")

"In reviewing a facial challenge under Rule 12(b)(1), a court applies the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Suhon v. McGuffey Sch. Dist.*, No. 17-1690, 2018 U.S. Dist. LEXIS 153935 at *2 (W.D. Pa. Sept. 7, 2018). "Specifically, the well-pleaded facts are accepted as true, but legal conclusions may be disregarded." *Id.* (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)).

Where a defendant brings a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Turner v. Prince George's Cty. Pub. Sch.*, 694 Fed. Appx. 64, 66 (3d Cir. 2017) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, the exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Id.* at 229.

IV.   **ANALYSIS**

    a.   **Named Plaintiffs Have Standing; But Only as to Claims Under the Laws of the States in Which They Reside or Were Injured**

On a motion to dismiss for lack of standing, the plaintiff "bears the burden of establishing the elements of standing." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996). In analyzing the issue of standing, courts "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor" of the plaintiff. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). To establish standing, (1) Plaintiffs must plead they suffered an "injury-in-fact," meaning "an invasion of a legally protected interest" that is both  (a) "concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of, meaning the injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

As to the first (1) element of standing, Plaintiffs plead they suffered an injury-in-fact. Plaintiffs allege they applied and were ***approved for*** a PPP loan by both Defendant Prestamos and the SBA. SAC at ¶¶ 102, 248. Plaintiffs allege Prestamos agreed to fund their loans, and that Prestamos was indeed contractually bound to fund those loans "via the Loan Documents, its acceptance and approval of Plaintiffs' PPP loan applications, and as the counterparty to the Loan Documents." *Id.* at ¶¶ 121, 248.  Next, Plaintiffs' SAC alleges "Prestamos failed to complete its end of the bargain by failing to make the PPP loans to Plaintiffs and the members of the National Class." *Id.* at ¶ 250. This failure, Plaintiffs' SAC alleges, breached Prestamos's obligations "under

the Loan Documents" and their "implied duty to act in good faith and in accordance with fair dealing." *Id.* at ¶¶ 254, then 251. In addition to breaching the Loan Documents and implied duty of good faith and fair dealing, Plaintiffs' SAC alleges Prestamos failed "to fund the loans within 10 days of the SBA's approval of the loans and assignment of loan numbers, or at any time thereafter." *Id.* at ¶ 252. Plaintiffs do not allege this requirement to fund the loans within 10 days of the SBA's approval originates from the terms of the Loan Documents, but rather from "the applicable provisions of the PPP." *Id.* at ¶ 3. Because of Prestamos' conduct, Plaintiffs allege they were unable to apply for a PPP loan with another lender, because "their loan applications were approved by the SBA and assigned PPP loan numbers pursuant to the Loan Documents." *Id.* at ¶ 256. Among the damages sought by Plaintiffs is monetary relief in the form of "payment…of all PPP loan proceeds owed and due to Plaintiffs and members of the Classes with interest." *Id.* at ¶ D (Prayer for Relief). Each named Plaintiff identifies the SBA Loan Number and amount of the loan Prestamos was allegedly obligated to disburse. *See generally id.*

Based on the foregoing allegations, the Court finds Plaintiffs adequately plead the "injury-in-fact" standing requirement. *See Cottrell v. Alcon Labs.*, 874 F.3d 154, 621 (3d Cir. 2017) ("The injury-in-fact requirement is very generous to claimants, demanding only that the claimant allege some specific, identifiable trifle of injury.") (internal quotations omitted); *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.").

Defendants contend Plaintiffs' "allegations do not make out an injury in fact because, as other courts have recognized, an applicant for a PPP loan is not necessarily entitled to receive it."

11

MTD at pg. 14 [ECF No. 46-1]. Defendants support this argument by citing to case law holding that ***merely applying*** for a PPP loan does not confer a legally protected financial interest in loan proceeds. *See* MTD at pgs. 13-14 [ECF No. 46-1]; *Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Tr. Co.*, No. 20-cv-636, 2021 U.S. Dist. LEXIS 186525 at *10 (M.D.N.C. Sept. 29, 2021) ("Here, Pinehurst has not alleged that it was entitled to a PPP loan from First-Citizens. Rather, Pinehurst was a loan applicant whose application could have been approved or denied for a verity of reasons at First-Citizens' discretion."); *Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, No. 20-cv-4149, 2021 U.S. Dist. LEXIS 227046 at *10 (C.D. Cal. Nov. 24, 2021) ("Plaintiff, of course, was not guaranteed to have her loan application approved."); *see also* Reply in Support of Defendants' MTD at pg. 3 [ECF No. 51]; *Ironworks Dev. LLC v. Truist Bank*, 574 F. Supp. 3d 376,  378 (W.D. Va. 2021) (alleging lender tortiously processed and ultimately ***denied*** plaintiff's PPP loan application). Here, Plaintiffs do not allege merely that they applied for PPP loans, but rather that they were ***approved*** for PPP loans that Prestamos ***agreed*** to fund, and because they were approved, they were precluded from applying for other PPP loans.

Plaintiffs' SAC also alleges (2) a causal connection between the injury and the conduct complained of. Plaintiffs clearly allege Prestamos's failure to fund their loans is the cause of the injury. That the SAC includes one online comment from a non-party suggesting their nondescript "funds" were rejected by "Dave's banking" does not persuade this Court to ignore the SAC's repeated allegations concerning Prestamos's alleged conduct as it concerns Plaintiffs themselves.

Plaintiffs' SAC also satisfies the third (3) element of standing, redressability, as Plaintiffs' requested remedies, including payment of the PPP loan proceeds to which they allege they are entitled, "will remedy the alleged injury in fact." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167, 181 (2000)). Accordingly, the Court declines to dismiss Plaintiffs' SAC for lack of standing.

Defendants also contend Plaintiffs' breach of contract and unjust enrichment claims should be dismissed for lack of standing to the extent they are brought on behalf of a nationwide class consisting of class members and claims under the laws of states in which Plaintiffs do not reside or were never injured. *See* MTD at pgs. 16-17 [ECF No. 46-1]; Reply in Support of MTD at pgs. 2-3 [ECF No. 51].

The Court agrees. It is well-established that "[a] named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009). "For example, a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state." *Id.* The requirement that Named Plaintiffs have standing "is no different in the class action context." *Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014).

Here, Named Plaintiffs are sole proprietors who, at all times relevant, reside or resided in California, Pennsylvania, Connecticut, Missouri, Illinois, Washington, Michigan, Nevada, Ohio, and Arizona. *See* SAC at ¶¶ 15-25. Yet, Plaintiffs purport to bring this action on behalf of a "National Class." *Id.* at ¶ 230. Named Plaintiffs do not have standing to bring their claims under the laws of states in which they do not reside in or were never injured. *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466 at *35 (D. N.J. Oct. 2, 2013) ("named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.").

Moreover, like other courts in this district, this Court is persuaded by the "practical case-management concerns" that favor ruling on this issue prior to class certification:

> The alternative proposed by the plaintiffs would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid. The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road.

*Lauren*, 269 F.R.D. at 391 (quoting *In re Wellbutrin*, 260 F.R.D. at 152). Accordingly, the Court, although finding Named Plaintiffs have standing, dismisses Plaintiffs' claims to the extent they arise in states where no Named Plaintiff resides/resided or was injured.

### b.  Plaintiffs' State Law Claims are not Precluded by the CARES Act

Defendants contend Plaintiffs' claims should be dismissed because, since there is no private right of action under the CARES Act, Plaintiffs may not "attempt[] to enforce the CARES Act through state-law causes of action." *See* MTD at pg. 17 [ECF No. 46-1]. However, Defendants' rely on case law inapplicable to the facts alleged here.

Defendants' reliance on *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742 (D. Md. 2020) is misplaced. In *Profiles*, the plaintiffs brought a claim for violation of the CARES Act, contending a PPP lender's "unlawful gating requirements interfere with and prevent Plaintiffs from exercising their statutory right to apply for PPP loans under Section 1102 of the CARES Act." *Id.* at 747. The plaintiffs claimed the lender's "eligibility requirements" were "inconsistent with the plain language of § 1102(a)(2)" of the CARES Act. *Id.* The court held that "[e]ven assuming [] the CARES Act grants PPP loan applications with some statutory right to apply through a particular lender of choice…nothing in its text evidences Congress's intent to enable PPP loan applicants to

bring civil suits against PPP lenders, ***to enforce that right***." *Id.* at 751-52 (emphasis added). Thus, *Profiles* addressed whether a plaintiff may bring a claim for violation of the CARES Act itself, to assert a statutory right to apply for a PPP loan through a particular lender of choice. This is wholly inapposite from the allegations in Plaintiffs' SAC here – which brings state law claims arising out of the parties' alleged loan agreements – not statutory claims for CARES Act violations of an applicant's right to apply for a PPP loan through a particular lender.

Also misplaced is Defendants' reliance on the Supreme Court's ruling in *Astra USA, Inc. v. Santa Clara Cty. Cal.*, 563 U.S. 110 (2011). In *Astra USA*, the plaintiff, a health-care facilities operator, sought to enforce a Pharmaceutical Pricing Agreement ("PPA") between defendants, drug manufacturers, and the Department of Health and Human Services ("HHS"), to which the plaintiff was not a party. *Id.* at 116. The PPA's are "uniform agreements" reciting the drug manufacturers' obligations under Section 340B of the Public Health Services Act, 42 U.S.C. § 256b. *Id.* at 113. There is no private right of action under Section 340B. *Id.* at 117. The PPA incorporates federal law requirements that a drug manufacturer may not overcharge qualified health-care facility operators, such as the plaintiff. *Id.* at 113. The plaintiff brought claims against the defendants, alleging they violated the terms of the PPA by overcharging the plaintiff. *Id.* Even though the plaintiff was not a party to the PPA, it argued the agreements were nevertheless "enforceable by covered entities such as the plaintiff in their capacity as ***third-party beneficiaries***." *Id.* at 117 (emphasis added).

The Supreme Court dismissed the plaintiff's claim, holding "[a] ***third-party*** suit to enforce an HHS-drug manufacturer agreement…is in essence a suit to enforce the statute itself." *Id.* at 118 (emphasis added). Indeed, as the Supreme Court noted, "[a] nonparty becomes legally entitled to a benefit promised in the contract…only if the contracting parties so intend." *Id.* at 117. "The

distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity." *Id.* at 118 (quoting 9 J. Murray, Corbin on Contracts § 45.6, p. 92 (rev. ed. 2007)).

Here, ***Plaintiffs do not bring a third-party suit*** – they are parties to the contract they allege was breached. *See* SAC at ¶ 243. Accordingly, the Supreme Court's holding in *Astra USA* is inapplicable to the facts alleged here. This application of *Astra USA* to contracts involving PPP loans under the CARES Act is consistent with that proscribed by the court in *Johnson v. JPMorgan Chase Bank*, another case cited by Defendants. 488 F. Supp. 3d 144, 158 n. 19 (S.D.N.Y. 2020) (dismissing PPP accountants' attempt to enforce contracts between either lenders and the SBA or lenders and borrowers as third-party beneficiaries because "the breach of contract claims would be foreclosed by controlling precedent that forbids ***third-party*** suits to enforce agreements that merely incorporate obligations under a statute that does not itself permit the third-party to enforce it.") (citing *Astra USA*, 563 U.S. at 118) (emphasis added).

Accordingly, Defendants have not demonstrated that Plaintiffs' state law claims are precluded by the CARES Act. To the extent Plaintiffs' state law claims allegedly incorporate Prestamos's CARES Act obligations, dismissal at this stage is nevertheless improper, as the Third Circuit has noted, "the absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." MTD at pg. 19 [ECF No. 46-1] (emphasis in original); then *Bukowski v. Wells Fargo Bank, N.A.*, 757 Fed. Appx. 124, 128-29 (3d Cir. 2018) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012)).

Indeed, at least one other court has recognized that the CARES Act's lack of a private right of action does not preclude a borrower from seeking redress under state law for a PPP lender's alleged breach of contract. *See US Cargo Direct, Inc. v. PNC Bank, N.A.*, No. 22 C 3925, 2023 U.S. Dist. LEXIS 11408 at *9-10 (N.D. Ill. Jan. 24, 2023) ("US Cargo can seek redress under state law for PNC's alleged breach of the contract for US Cargo's PPP loan and alleged misrepresentations about the program's terms, even if the CARES Act provides no private cause of action against a PPP lender."). Accordingly, this Court does not find Plaintiffs' state law claims are precluded by the CARES Act.

### c. Because Jurisdictional Discovery is Warranted to Determine Whether this Court has Personal Jurisdiction Over Defendant CPLC; Defendants' Motion to Dismiss all Claims Against CPLC is Denied Without Prejudice

Defendants seek dismissal of all claims against Defendant CPLC on the grounds that Plaintiffs fail to allege an alter ego relationship that could subject CPLC to personal jurisdiction or liability. Plaintiffs bring Count One, for Breach of Contract, Count Two, for violation of the California UCL, and Count Five, for Unjust Enrichment, against CPLC. Because this Court finds that jurisdictional discovery is warranted to determine whether CPLC is subject to this Court's personal jurisdiction, and since Plaintiffs' theories of both personal jurisdiction and liability rest on the alter ego test, Defendants' Motion to Dismiss the SAC's claims against CPLC will be denied without prejudice pending the conclusion of jurisdictional discovery and a determination as to whether this Court has personal jurisdiction over CPLC.

In evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the Court takes the allegations of the complaint as true." *Metro Container Grp. v. AC&T Co.*, No. 18-3623, 2021 U.S. Dist. LEXIS 234447 at *65 (E.D. Pa. Dec. 6, 2021). "However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent

evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Id.* A plaintiff must establish a defendant's contacts with the forum state "with reasonable particularity." *Id.* District courts "should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d. Cir. 2009); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, [] courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (quoting *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Furthermore, "jurisdictional discovery is particularly appropriate where the defendant is a corporation." *Metcalfe*, 566 F.3d at 336.

Plaintiffs allege this Court has personal jurisdiction over CPLC because this Court has personal jurisdiction over Prestamos, and CPLC "controlled, directed and participated in Prestamos's conduct in PPP lending" and "CPLC was Prestamos's alter ego" as "CPLC and Prestamos shared senior executives and directors and overlapping websites that promoted each other; Prestamos was at all times relevant CPLC's wholly-owned and controlled subsidiary" and "CPLC referred to CPLC and Prestamos as 'CPLC Prestamos CDFI' and "CPLC PRESTAMOS LOAN PRODUCTS.'" SAC at ¶ 35. Specifically, Plaintiffs allege CPLC "repeatedly referred" to Defendants as "CPLC Prestamos" in "CPLC's Fiscal year 2019-2020 Annual Report," and "reported on CPLC's own financial statements that it received hundreds of millions of dollars in PPP loan processing fees; and is headquartered in a building that is virtually adjacent to Prestamos's headquarters." *Id.* at ¶ 7.

Because the Court finds that Plaintiffs' claims against CPLC are "not frivolous," and recognizes Plaintiffs' "are faced with the difficult task of trying to establish personal jurisdiction

over a corporation," the Court will allow Plaintiffs to conduct jurisdictional discovery before conclusively deciding whether exercising personal jurisdiction over CPLC is permissible. *Metcalfe*, 566 F.3d at 337. *See also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (finding "alter ego theory" of personal jurisdiction is "support[ed]in our case law" and that plaintiffs raising theory "are entitled to limited jurisdictional discovery").

Moreover, because jurisdictional discovery is warranted before the Court rules on whether it has personal jurisdiction over CPLC, and in consideration that both Plaintiffs' theories of personal jurisdiction and liability are premised on the theory that CPLC at all times relevant acted as the alter ego of Prestamos, the Court denies both Defendants' motion to dismiss CPLC as a defendant for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and to dismiss the SAC's claims premised on alter-ego liability against CPLC pursuant to Federal Rule of Civil Procedure 12(b)(6) ***without prejudice***, pending jurisdictional discovery.

### d. <u>COUNT ONE</u>: Plaintiffs State a Claim for Breach of Contract Against Defendant Prestamos

#### i. Absent Further Discovery, It is Not Clear the Language of Section 10 of the Note Releases/Bars Plaintiffs' Claims

Defendants seek dismissal of Plaintiffs' breach of contract claim on the grounds that numbered section/provision ten (10) of the parties' Promissory Note "contains an unambiguous and broad release of claims against Prestamos." MTD at pg. 33 [ECF No. 46-1]. The relevant provision states:

> Release of Lender. In consideration of the agreement of the Lender to provide this Note, and other good and valuable consideration, which consideration is agreed by Borrower to be good and sufficient, Borrower RELEASES, ACQUITS AND FOREVER DISCHARGES the Lender, its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns from any and all claims, demands, liens, damages, actions or suits, of whatsoever nature or

character, whether statutory (including without limitation usury and deceptive trade practices claims), in contract or in tort, known or unknown, which have accrued or may accrue to Borrower or any creditor or affiliate of Borrower on account of any injuries, damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Lender, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors or assigns on or prior to the date hereof.

*See* SAC at Ex. A. Defendants allege this language bars Plaintiffs' action because it releases Prestamos "from all existing and future claims, which 'have accrued or *may accrue*,' 'arising out of or *in any way connected to*' Prestamos's extension of credit to Plaintiffs or any of its conduct." Reply in Support of MTD at pg. 7 [ECF No. 51] (emphasis in original).

It is "well settled that the effect of a release is to be determined by the ordinary meaning of its language…which means that, assuming the language is clear and unambiguous, the court looks no further than the language in interpreting the release." *G.R. Sponaugle & Sons, Inc. v. Hunt Constr. Group, Inc.*, 366 F. Supp. 2d 236, 242 (M.D. Pa. 2004) (internal quotations and citations omitted). "Consistent with this approach, a party cannot evade the clear language of a release by contending that the party did not subjectively intend to release the claim at issue." *Id.* at 242-43.

Here, the release states the borrower releases Prestamos "from any and all claims…arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower **on or prior to the date hereof**, or (ii) any matter or thing done, omitted or suffered to be done by the Lender…**on or prior to the date hereof**." *See* SAC at Ex. A (emphasis added). Defendants contend that "[b]ecause Plaintiffs' claims clearly arise out of the extension of credit Prestamos allegedly agreed to when Plaintiffs executed their Notes, the release applies." Reply in Support of Defendants' MTD at pg. 8 [ECF No. 51]. Plaintiffs, on the other hand, suggest that because the

contemplated actual funding of Plaintiffs' loans was to occur *after* the Notes were executed, the release does not apply. *See* Plaintiffs' Opposition to MTD at pg. 15 [ECF No. 49].

The term "extension of credit" is undefined in the Note, and neither party attempts to define the term in their respective briefing. The Court finds the language in the release as applied to the alleged claims is ambiguous, because it is unclear whether, among other things, the release provision contemplating claims "arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower" refers to an agreement to fund a loan, or the actual transfer/disbursement of funds or funding of the loan itself. *See* SAC at Ex. A; *see also MacKay v. Donovan*, No. 10-218, 2011 U.S. Dist. LEXIS 71228 at *10 (E.D. Pa. July 1, 2011) ("[t]he terms of a contract are ambiguous if the terms are 'reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense.'") (quoting *Black v. Jamison*, 913 A.2d 313, 318 (Pa. Commw. Ct. 2006)).

Because additional evidence regarding the meaning of undefined terms and/or additional context is necessary to resolve the meaning of the ambiguous language, the Court declines to grant dismissal pursuant to the text of the release, or to determine whether the release applies or does not apply to bar Plaintiffs' claims. Such a determination is better suited for a later stage of litigation. *See Clark Capital Mgmt. Group, Inc. v. Navigator Money Mgmt., Inc.*, No. 2:11-cv-3415, 2012 U.S. Dist. LEXIS 194410 at *7 (E.D. Pa. Feb. 7, 2012) ("the Court finds the phrasing of the release ambiguous as to whether it constitutes a release concerning acts occurring after the date that the release was executed…[c]onsequently, the evidence that the Court requires in order to construe the meaning of the release is not before the Court and further cannot be decided in the context of a motion dismiss. As a result, additional evidence on the meaning of the release at a later date is necessary to determine whether or not the release bars the instant suit.").

### ii. Plaintiffs State a Claim for Breach of Contract Against Defendant Prestamos

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a breach; and (3) resultant damages." *Atl. Holdings, Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 530 (E.D. Pa. 2017). Here, because the SAC alleges Prestamos entered into a binding agreement to fund Plaintiffs' loans, and that Prestamos's failure to fund those loans caused the wrongful withholding of Plaintiffs' loan proceeds, among other damages, the Court finds that Plaintiffs state a claim for breach of contract. *See US Cargo Direct,* 2023 U.S. Dist. LEXIS 11408 at *9-10 ("US Cargo can seek redress under state law for PNC's alleged breach of the contract for US Cargo's PPP loan and alleged misrepresentations about the program's terms, even if the CARES Act provides no private cause of action against a PPP lender.").

Defendants challenge the merits of Plaintiffs' allegation that Prestamos promised to fund their loans via its acceptance and approval of Plaintiffs' loan applications and assent to the Loan Documents. *See* Reply in Support of Defendants' MTD at pgs. 6-7 [ECF No. 51]. In support, Defendants cite one federal court case and three Florida state court cases – none of which address a lender's breach of contract claim at the motion to dismiss stage.

Defendants' rely principally upon *Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.*, 265 F. Supp. 2d 366 (S.D.N.Y. 2003). This ruling is inapposite. In *GMAC*, the court was tasked with determining, at the summary judgment stage, whether the evidence in the record indicated the lender "had approved" and agreed to fund the plaintiff's loan. *Id.* at 374. Among the court's reasons for granting summary judgment in favor of the lender were findings that the relevant documents exchanged "left out several material terms, yet to be

negotiated, including various conditions related to the surety bond, the default interest rate, and the terms of the default." *Id.* at 379.

Here, Defendants move to dismiss, not for summary judgment. Moreover, Plaintiffs attach loan documents detailing material terms, such as the terms of default and acknowledging the borrower's waiver of suretyship defenses. *See* SAC at Ex. A. The court in *GMAC* also granted summary judgment based on a "clear waiver of contractual liability" in the parties' term sheet stating the document "did not impose any obligation on GMAC to issue a commitment or to make the Loan." *Id.* at 378. For the reasons discussed *supra*, the Court does not find at this stage that a clear waiver of liability precludes Plaintiffs' breach of contract claim.

Defendants also cite to *In re Vickers*, 275 B.R. 401, 405-06 (Bankr. M.D. Fla. 2001). In *Vickers*, after reviewing "the summary judgment record," the court held there was "no document or writing signed by" the lender "obligating it to loan the money to the" borrowers. *Id.* at 406. The court also noted that only the borrowers signed the "Closing Statement/Agreement document." *Id.* The Court further declined to examine "all the documents and circumstances" surrounding the loan document based on Florida's Banking Statute of Frauds. *Id.*

Once again, here Defendants move to dismiss, not for summary judgment. Moreover, unlike the borrowers in *In re Vickers*, Plaintiffs' SAC does identify a document, attached under Exhibit A to the SAC and signed by the lender, that Plaintiffs allege obligates the lender to disburse specified PPP loans to Plaintiffs. *See* SAC at ¶ 246 ("The Loan Document contracts entered into by Prestamos and the members of the Plaintiff borrower Classes also include a 'Notice – No Oral Agreements' document…[t]hat…governs the "Loan by Lender, Prestamos CDFI, LLC to Borrower"…states that the "'Loan Agreement' means ***one or more promises, promissory notes,***

***agreements, undertakings, security agreements, deeds of trust or other documents or
commitments, or any combination of those actions or documents,*** pursuant to which a financial
institution loans or delays repayment of ***or agrees to loan or delay repayment of money, goods,
or another thing of value or to otherwise extend credit or make a financial accommodation***';
and is executed by both Prestamos via its President Martinez, and each Class member borrower.")
(emphasis added). Moreover, although relevant to the court's decision in *In re Vickers*, Florida's
Banking Statute of Frauds is inapplicable here to Defendants' Motion to Dismiss.

      Defendants also cite to *Jericho v. All-Weather Opportunity Fund, LP v. Pier Seventeen
Marina & Yacht Club, LLC*, 207 So. 3d 938 (Fla. Dist. Ct. App. 2016). In *Jericho*, the Florida
Fourth District Court of Appeal reversed the trial court's final judgment rendered in favor of the
plaintiffs, borrowers, following a six-day bench trial. *Id*. at 940.  In *Jericho*, the plaintiffs alleged
defendants, lenders, failed to fund a $36 million construction loan pursuant to the parties' Loan
Agreement. *Id*. at 939. On appeal, the court held that while the lenders ***did*** agree to fund the loan,
the agreement to do so was made under the parties' "Second Commitment Letter," but not the
"Loan Agreement" – which was the document the plaintiffs sued upon. *Id*. at 942. The Court held
the "Loan Agreement" did not contain an express promise by the lenders to fund the loan, but
rather because the "Loan Agreement" stated it was "in consideration of" the loan, the Loan
Agreement was contingent upon the loan being paid, and therefore "did not become a valid contract
until [the lenders] paid the $36 million loan as consideration." *Id*. at 941.

      Here, Plaintiffs broadly sue Defendants for breach of contract pursuant to Prestamos's
alleged obligations under not just one document, but the entire "Loan Documents" collectively,
Prestamos's alleged "implied duty to act in good faith and in accordance with fair dealing," "its
acceptance and approval of Plaintiffs' PPP loan applications," and "as the counterparty to the Loan

Documents." SAC at ¶¶ 248, 251-52. Accordingly, *Jericho* is both procedurally and factually inapposite to the issues raised by the instant Motion.

Lastly, Defendants' reliance on *Krebs* is even less applicable to the instant action. In *Krebs*, the Court dismissed a plaintiff-borrower's breach of contract and promissory estoppel claims against Plymouth Five Cent Savings ("Plymouth") for failure to fund an agreed-upon construction end loan. *Krebs v. FDIC*, 851 F. Supp. 430, 433 (M.D. Fla. 1994). The plaintiff alleged that Plymouth agreed to and did fund a $3.5 million construction loan for plaintiff to build a commercial condominium project. *Id.* at 433. However, the plaintiff also alleged Plymouth agreed to fund "end loans" at the project, which Plymouth ultimately did not fund. *Id.* Plaintiff provided evidence of the parties' agreement as to the $3.5 million construction loan – including among other documents, a loan agreement, a promissory note in the amount of $3.5 million, and a security agreement securing the promissory note. *Id.* Yet, after reviewing the record on summary judgment, the court noted the plaintiff was "unable to point to any specific documentation, or written agreement or promise by" the defendant lender "that demonstrates a c*ommitment* to fund the end loans." *Id.* (emphasis in original). "The executed loan documents" the court held, "do not indicate that [defendant] *promised* to make any end loans." *Id.* (emphasis in original).

After the Commissioner of Banks of Massachusetts took possession of Plymouth, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver of Plymouth, and substituted as the party defendant. *Id.* at 432.  The FDIC moved for summary judgment pursuant to "the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e)," which "bars a private party's recovery [against the FDIC] on an unwritten agreement even if the private party relied on the bank's misrepresentations, and is completely innocent of any bad faith, recklessness or negligence." *Id.* at 434. Under this doctrine, for the FDIC to be liable for an obligation, Plymouth's

"obligation…must appear in the bank's records such that the FDIC is on notice of the particular obligation." *Id.* at 435. The court held that while the signed construction loan agreement evidenced Plymouth's commitment to fund the $3.5 million construction loan, "the purported obligation to fund some non-specific number of end loans…does not appear in the bank's records." *Id.* Accordingly, the court held that under the application of the *D'Oench, Duhme* doctrine, the FDIC was not liable for the alleged failure to fund the end loans, and the FDIC was granted summary judgment on the plaintiff's breach of contract and promissory estoppel claims. *Id.* at 436.

Unlike *Krebs*, the Loan Documents at issue are not devoid of references to Prestamos' alleged intention and/or promise to the fund the loans. Moreover, the *D'Oench, Duhme* doctrine is inapplicable to the instant action.

Defendants' reliance on inapposite rulings decided in later stages of litigation demonstrates, if anything, that dismissal of Plaintiffs' breach of contract claims at the motion to dismiss stage is premature. Plaintiffs have averred enough factual matter to state a breach of contract claim against Prestamos. *See Saltzman v. TD Bank, N.A.*, No. 10-3265, 2011 U.S. Dist. LEXIS 33438 at *24 (E.D. Pa. Mar. 28, 2011) (denying motion to dismiss borrowers' breach of contract claim against lender [b]ecause the amended complaint contains enough factual matter which, taken as true, raises a reasonable expectation that discovery could reveal sufficient evidence to show a breach of contract."); *Dana Transp., Inc. v. Ableco Fin., LLC*, No. 04-2781, 2005 U.S. Dist. LEXIS 18086 at *8-9 (D. N.J. Aug. 17, 2005) (denying lender's motion to dismiss borrower's breach of contract claim against lender after allegedly refused to fund previously agreed upon loan); *AM Logistics, Inc.v. Sorbee Int'l, LLC*, No. 13-2876, 2014 U.S. Dist. LEXIS 2925 at *16-17 (E.D. Pa. Jan. 9, 2014) ("Any additional details surrounding the agreement, the terms, and the

parties' intentions are appropriate for discovery. If after discovery Plaintiff is unable to establish a viable breach of contract claim, Defendant may seek summary judgment.").

Lastly, and as stated *supra*, pursuant to the Court's dismissal of Defendants' Motion to Dismiss the SAC against CPLC without prejudice pending jurisdictional discovery, Defendants' Motion to Dismiss Count One as to CPLC is denied without prejudice.

> **e.   COUNT TWO: The SAC Fails to State a Claim for Violation of the California UCL Against Prestamos, Therefore Count Two is Dismissed as to Both Defendants**

Named Plaintiffs Marshall and Townsend bring claims for violation of the California UCL, Cal. Bus. & Prof. Code § 17200, et seq. on behalf of themselves and the California Subclass. SAC at ¶¶ 260-276. A defendant violates the UCL by committing an act or practice that is "(1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 937, 952 (S.D. Cal. 2016). Plaintiffs Marshall and Townsend allege "***in the alternative and to the extent that their breach of contract claim against defendant Prestamos fails to adequately award their damages***," they are "**entitled to equitable relief**," under the UCL, "including specifically injunctive relief directing Prestamos to fund their SBA-approved loans in full with applicable interest from the date the loans should have been funded, or restitution for the amount of the wrongfully withheld PPP loan proceeds plus interest." SAC at ¶ 276 (emphasis added).

Defendants, relying on the Ninth Circuit's holding in *Sonner*, argue Plaintiffs' claim should be dismissed because it seeks equitable remedies under the UCL, and under *Sonner* "[t]he plaintiff must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 91 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs, Defendants contend, fail to state that a legal remedy is inadequate, as they assert their UCL claim for equitable relief "in the alternative and to the extent that their breach of contract claim fails to adequately award their damages." MTD at pg. 38 [ECF No. 46-1].

This Court agrees. Plaintiffs contend *Sonner* is inapplicable at the pleading stage. *See* Response in Opposition to MTD at pgs. 17-18 [ECF No. 49]. However, as Defendants' Reply notes, "*Sonner* itself was a 12(b)(6) case." Reply in Support of MTD at pg. 8 [ECF No. 51].

Moreover, the few courts in this circuit to address post-*Sonner* UCL claims on a motion to dismiss have followed and applied *Sonner*. *See In re Subaru Battery Drain Prods. Liab. Litig.*, No. 1:20-cv-03095, 2021 U.S. Dist. LEXIS 62373 at *82-83 (D. N.J. Mar. 31, 2021) (rejecting argument that *Sonner* is applicable only "in the late stages of litigation" and applying *Sonner* in evaluating motion to dismiss, but denying dismissal of UCL claims after finding "Plaintiffs have adequately alleged that legal remedies are inadequate.").

In *Hickman*, the court addressed precisely the issue here: whether, in lieu of alleging other legal remedies are inadequate, a plaintiff may seek equitable relief under the UCL in the alternative to other legal remedies. *Hickman v. Subaru of Am., Inc.*, No. 1:21-cv-02100, 2022 U.S. Dist. LEXIS 190746 at *29 (D. N.J. Oct. 19, 2022). While, as the court noted, such alternative pleading is generally permissible under Fed. R. Civ. P. 8(d), "here the general rule is trumped in the narrow context of a California UCL claim in light of the Ninth Circuit's decision in *Sonner* which explicitly held that for a UCL claim to go forward a plaintiff must explicitly plead the lack of an adequate remedy at law." *Id.* at *29 n.13 (citing *Sonner*, 971 F.3d at 844).

While a Ninth Circuit decision is not binding on district courts in this circuit, this Court agrees with the *Hickman* court that "a Ninth Circuit decision interpreting a statute of a state within

its jurisdiction is highly persuasive authority." *Id.* Therefore, in accordance with the rulings in *Sonner* and *Hickman*, the Court will dismiss Plaintiffs' UCL claim against Prestamos. Moreover, because Plaintiffs' UCL claim against CPLC is predicated on the conduct of Prestamos, the Court dismisses Plaintiffs' UCL claim against CPLC as well.

### f.  <u>COUNT THREE:</u> The SAC Fails to State a Claim for Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act Against Prestamos

Named Plaintiff Ahmadou brings a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1, *et seq.* on behalf of himself and the Illinois Subclass. SAC at ¶¶ 277-92. The ICFA "provides a remedy for unfair methods of competition and unfair or deceptive acts or practices in specified commercial transactions." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (internal quotations omitted). Claims for violation of the ICFA "are subject to the same heightened pleading standards as other fraud claims." *Id.*

The Seventh Circuit has made clear the ICFA "is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'" *Id.* (quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000)). Indeed, "[w]hen allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* A "deceptive act or practice" under the ICFA "involves more than the mere fact that a defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract." *Id.* (quoting *Avery v. State Farm Mut. Auto Ins. Co.*, 26 Ill. 2d 100, 169 (Ill. 2005)) (internal quotations omitted).

The SAC alleges Prestamos violated the ICFA by "falsely communicat[ing] its promises to" make loans to the borrowers and "otherwise fulfill the terms of its written agreements with plaintiff Ahmadou and the members of the Illinois Subclass." *Id.* at ¶ 280. The SAC further alleges "Plaintiff and the members of the Illinois Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Prestamos's concealment of and failure to disclose material information about the funding of their PPP loans. Ahmadou and Illinois Subclass members contracted with and thereby agreed to allow Prestamos to process and fund their SBA loans and would not have done so if the true nature of those services had been disclosed." *Id.* at ¶ 289. The SAC alleges this conduct constitutes both "unfair" and "deceptive" acts in violation of the ICFA. *Id.* at ¶¶ 285-86.

Because Plaintiff Ahmadou's ICFA claims "rest on the same factual foundation" as Plaintiffs' breach of contract claims, "no distinct deceptive acts are alleged," and therefore the SAC fails to state a claim under the ICFA. *Greenberger*, 631 F.3d at 399. Plaintiffs' Response argues that ¶ 280 of the SAC "alleges that Prestamos induced [Plaintiff Ahmadou] to enter into the Loan Agreement, absent any intention of fulfilling the overriding purpose of it, by accepting plaintiff's application and the SBA's approval and thereby locking plaintiff into relying exclusively on Prestamos for his loan." Plaintiffs' Response in Opposition to MTD at pg. 18 [ECF No. 49]. Plaintiffs cite to *Bakopoulos* and *Powell* to support their contention that "these allegations are sufficient." *Id.* at pgs. 18-19.

However, even if this Court were able to permit Plaintiff Ahmadou to essentially amend the SAC via Plaintiffs' Response in Opposition [ECF No. 49], which the Court cannot do[3], the SAC, and Plaintiffs' Response for that matter, still fail to allege Prestamos made ***knowing*** misrepresentations to induce Plaintiff Ahmadou and the Illinois Subclass to enter into a contract. *See Bakopoulos v. Mars Petcare US, Inc.*, No. 20-cv-6841, 2021 U.S. Dist. LEXIS 129177 at *14 (N.D. Ill. July 12, 2021) ("When defendants ***knowingly*** make misrepresentations, especially misrepresentations that induce consumers to enter a contract, some courts hold that such conduct can support a claim under the Consumer Fraud Act.") (citing *Greenberger*, 631 F.3d at 400) (emphasis added). In *Bakopoulos*, the Court held the plaintiffs stated a claim for violation of the ICFA by alleging the defendant "falsely labeled its dog foods as being free from chicken, soy, or wheat, ***all the while knowing*** that those representations would likely mislead customers." *Bakopoulos*, 2021 U.S. Dist. LEXIS 129177 at *14 (emphasis added). In *Bakopoulos*, the court held that, according to the complaint, the defendant's "knowing misrepresentations were a deceptive practice, purposely aimed at perpetuating fraud, not merely a failure to perform in a contract." *Id.* Here, the SAC makes no substantive factual averments that Prestamos did anything beyond fail to perform in a contract, let alone make "knowing misrepresentations…purposely aimed at perpetuating fraud." *Id.*

*Powell* is similarly inapposite. There, relying on courts in this district's previous findings "that advertisements and representations made by a car manufacturers' sales and marketing departments can suffice to plead a fraudulent representation,"  the *Powell* court held plaintiffs' allegations that a defendant car manufacturer misrepresented its warranty by claiming it "would

---

[3] *Abrahams v. Deutsche Bank Nat'l Trust*, No. 16-cv-62146, 2017 U.S. Dist. LEXIS 6908 at *9 (S.D. Fla. Jan. 13, 2017) ("the Court cannot consider information provided by Plaintiffs in Response to the Motion to Dismiss but not contained in the Complaint.")

cover all defects occurring within the mileage limitations despite the fact that they knew it intended to deny coverage for anything that it deemed a 'design defect,' without actually ever defining that term" sufficiently pled fraudulent misrepresentation. *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 888 (D. N.J. 2020). Here, the SAC consists of no such particularity, but rather recasts Plaintiffs' claims that Prestamos "falsely communicated its promise" to "act as a 'Lender'" and "fulfill the terms of its written agreement with plaintiff Ahmadou and the members of Illinois Subclass" as an ICFA claim. SAC at ¶ 280.

Because Plaintiff Ahmadou claims that the same alleged conduct of Prestamos also constitutes "unfair" acts in violation of the ICFA, the Court dismisses Plaintiffs' ICFA claim in its entirety. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that Camasta's allegations are entirely grounded in fraud under the ICFA."). In any event, even if considered independent from Plaintiff's "deceptive acts" claim, Plaintiff Ahmadou's unfairness allegations are insufficiently plead. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 421 (Ill. 2002) ("Plaintiffs' bare assertion of unfairness without describing in what manner the lack of disclosures either violate public policy or are oppressive is insufficient to state a cause of action" under the ICFA).

g.  **COUNT FOUR: The SAC Fails to State a Claim for Violation of the Ohio Deceptive Trade Practices Act Against Prestamos**

Named Plaintiff Stalnaker brings a claim for violation of Ohio Deceptive Trade Practices Act ("ODTPA") on behalf of herself and the Ohio Subclass.[4] SAC at ¶¶ 293-303. Under the

---

[4] Although the caption to Count Four of the SAC is titled "Violation of the Ohio Consumer Sales Practices Act," ¶¶ 293-303 of the SAC, and Plaintiffs' briefing make clear that the Count is brought pursuant to the ODTPA. *See* SAC at ¶ 303 (alleging Prestamos is "liable to plaintiff

ODTPA, a "person" may "seek injunctive relief or actual damages if the person is damaged or injured by a 'person who commits a deceptive trade practice.'" *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 698 (S.D. Ohio 2012) (quoting Ohio Revised Code § 4165.03(A)). The elements of an ODTPA claim include: "(1) a false statement or statement that is misleading, (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience, (3) the deception is material in that it is likely to influence a purchasing decision, and (4) the plaintiff has been or is likely to be injured as a result." *Torrance v. Rom*, 157 N.E.3d 172, 188 (Oh. Ct. App. 2020).

Courts interpret the ODTPA "very similar[ly] to the federal Lanham Act." *Defrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 U.S. Dist. LEXIS 198893 at *45 (D. N.J. Oct. 26, 2020) (citing *Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. Appx. 493, 497 (6th Cir. 2013)).

Defendants contend Plaintiff Stalnaker's claim is barred under the ODTPA because "[t]his class action is a consumer suit according to Plaintiffs' amended complaint." *See* MTD at pg. 43 [ECF No. 46-1]. Only "legal or commercial entities," not "ordinary consumers," have standing to sue under the ODTPA. *Defrank*, 2020 U.S. Dist. LEXIS 198893 at *45. However, an individual may bring a claim under the ODTPA provided they do so in their "capacity as a participant in commercial activity." *Gascho*, 863 F. Supp. 2d at 698. As under the Lanham Act, to state a claim under the ODTPA, a plaintiff must (1) "allege an injury to a commercial interest in reputation or sales"; and (2) the harm alleged must have "a sufficiently close connection to the conduct the statute prohibits." *Die-Mension Corp. v. Dun & Bradstreet Credibility Corp.*, No. C14-855, 2015

---

Stalnaker and the members of the Ohio Subclass for the damages they sustained…to the maximum extent provided by the ODTPA."); *see also* Plaintiffs' Opposition to MTD at pgs. 19-20 [ECF No. 49] (analyzing allegations made in Count Four pursuant to the ODTPA).

U.S. Dist. LEXIS 121065 at *7-8 (W.D. Wash. Sept. 9, 2015) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389-90 (2014)).[5]

Although, as Defendants note, Count Three of the SAC avers the legal conclusion that "Plaintiff Ahmadou and members of the Illinois subclass are 'consumers' as that term is defined" under the ICFA, the Court declines to rely on this averred legal conclusion under the ICFA in analyzing whether, according to the factual averments of the SAC, Plaintiff Stalnaker and the Ohio subclass are "ordinary consumers" under the ODTPA. *See* SAC at ¶ 284; *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) ("At the motion to dismiss stage, we accept as true all factual assertions, but we disregard…legal conclusions, and conclusory statements.").

Focusing on the factual averments of the SAC, Plaintiff Stalnaker avers she is "a natural person" who "at all applicable times…was a sole proprietor of a homemaker/personal care provider business" who applied for, and contracted with Prestamos to receive, a PPP loan after her "homemaker/personal care provider business lost significant income" due to the COVID-19 pandemic. SAC at ¶¶ 24, 205-12. Plaintiff Stalnaker alleges Prestamos's conduct in failing to fund her PPP loan caused "suffered losses" but does not plead those losses were in the form of "an injury to a commercial interest in reputation or sales" or otherwise plead a "sufficiently close connection" between her losses and "the conduct the statute prohibits." *Die-Mension Corp.*, 2015 U.S. Dist. LEXIS 121065 at *7-8. Accordingly, Plaintiff Stalnaker fails to state a claim under the ODTPA and Count Four will be dismissed.

---

[5] The court in *Die-Mension Corp.* held, and this Court agrees, that "[g]iven the similarities between the federal and state statutes, the Court is persuaded that the Ohio Supreme Court would adopt the two-part standard articulated in *Lexmark* in deciding who may pursue a claim under the ODTPA." *Die-Mension Corp.*, 2015 U.S. Dist. LEXIS 121065 at *10.

Moreover, for the reasons articulated *supra* in the prior subsection of this Opinion, Plaintiff Stalnaker also fails to allege any independently tortious conduct, but rather recasts Plaintiffs' breach of contract claims and ODTPA claims. *See JP Morgan Chase Bank, N.A. v. Safeco Ins. Co. of Am.*, No. 02-16014, 2012 U.S. Dist. LEXIS 74570 at *14-15 (N.D. Ohio May 30, 2012) (holding plaintiff's ODTPA claims were insufficient because "each of the alleged false statements…was contained in the provisions of the contract documents" and plaintiff failed to "identify a single misrepresentation outside these documents.").

Moreover, contrary to Plaintiffs' assertions in their Response, ¶ 299 of the SAC does not allege Prestamos "induced and bound [Plaintiff Stalnaker] and other Ohio borrowers to enter into the Loan Documents ***without intending to perform***." Response in Opposition to MTD at pg. 20 [ECF No. 49] (emphasis added). Rather, the SAC avers that Prestamos caused losses because of its "unfair or deceptive acts or practices" in promising to "act as a 'Lender', "perform its obligations" under the Loan Documents, and "otherwise fulfill the terms of its ***written agreements*** with plaintiff Stalnaker and the members of the Ohio Subclass." SAC at ¶ 299 (emphasis added).

### h.  <u>COUNT FIVE:</u> Unjust Enrichment Against CPLC

As stated *supra*, pursuant to the Court's dismissal of Defendants' Motion to Dismiss the SAC against CPLC without prejudice pending jurisdictional discovery, Defendants' Motion to Dismiss Count Five as to CPLC is denied without prejudice.

## V.  <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. This Court finds Named Plaintiffs have standing, except to the extent Named Plaintiffs purport to bring state law claims under the laws of states in which they do not reside in

or in which they were never injured. Defendants' Motion to Dismiss Count One of the SAC for Breach of Contract as to Defendant Prestamos is **DENIED**. Defendants' Motion to Dismiss Counts Two, Three, and Four of the SAC for violations of the California UCL, ICFA, and ODTPA, respectively, is **GRANTED**. Counts Two, Three, and Four of Plaintiffs' Complaint are **DISMISSED**.

Defendants' Motion to Dismiss all remaining claims (Counts One and Five) against CPLC for failure to allege an alter ego relationship that could subject CPLC to personal jurisdiction or liability is **DENIED WITHOUT PREJUDICE** pending jurisdictional discovery. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge