**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| ALICIA MARSHALL, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-04337-JMG |
| | : | |
| PRESTAMOS CDFI, LLC and | : | |
| CHICANOS POR LA CAUSA, INC., | : | |
| Defendants. | : | |

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                        April 29, 2025

## I.    OVERVIEW

In early 2020, during the beginning of the COVID-19 pandemic, Congress created the Paycheck Protection Program (PPP) to help small business brave the financial storm wrecking the world. Plaintiffs applied and were approved for PPP loans with Prestamos CDFI, LLC (Prestamos). But their banks returned the loan funds to Prestamos for different reasons specific to each person. So Plaintiffs never got their money. They brought this class action lawsuit against Prestamos arguing that Prestamos breached the standard contracts that it signed with each Plaintiff promising to fund their loans. Plaintiffs claim that this breach injured them in several ways: that Prestamos falsely reported their loans as funded, left them responsible for repaying the loans, and prevented them from getting a loan from someone else.

A strong sense of déjà vu looms over this case. In 2023, the Northern District of Texas decided *Greathouse v. Capital Plus Financial, LLC*, 2023 WL 5746927 (N.D. Tex. Sept. 6, 2023). That case is virtually identical to this one. In both cases, borrowers brought a class action suit against a private lender alleging that the lender failed to fund their approved PPP loans in breach

of the standard contracts. In both cases, plaintiffs alleged similar harms—responsibility to repay unfunded loans and inability to get loans from other lenders. In both cases, plaintiffs had the same counsel and experts. In both cases, there were two motions—one to exclude the expert reports and another to certify the proposed classes.  And, in both cases, the result will be the same: the expert reports will only be considered for their background opinions on the PPP and the proposed classes will not be certified because of the factual differences between plaintiffs' loan processes.

## II.     BACKGROUND[1]

### A.  Congress Passes the Cares Act and Enlists Help

COVID-19—one of the deadliest viruses of the 21st century[2]—tore apart American life. Because of the pandemic, millions of Americans were laid off and fell into poverty.[3] Companies shut their doors and moved to remote work.[4] Schools closed indefinitely.[5] And millions died.[6] This chaos called for an unprecedented response. And Congress responded.

---

[1] Unless otherwise noted, the facts in this case are taken from Plaintiffs' motion for certification brief (ECF No. 139) and Defendant's reply brief (ECF No. 142).

2 Katharina Buchholz, COVID-19 Ranks Among Deadliest Disease Outbreaks in History, Statista (Mar. 11, 2025), https://www.statista.com/chart/34077/deadliest-pandemics-epidemics/.

[3] Stefan Sykes, *8 Million Americans Slipped Into Poverty Amid Coronavirus Pandemic, New Study Says*, NBC NEWS (Oct. 16, 2020), https://www.nbcnews.com/news/us-news/8-million-americans-slipped-poverty-amid-coronavirus-pandemic-new-study-n1243762.

[4] Dina Gerdeman, *COVID Killed the Traditional Workplace. What Should Companies Do Now?*, WORKING KNOWLEDGE (Mar. 8, 2021), https://www.library.hbs.edu/working-knowledge/covid-killed-the-traditional-workplace-what-should-companies-do-now.

[5] Kayla Jimenez, *Schools Closed and Went Remote to Fight Covid-19. The Impacts Linger 5 Years Later*, USA TODAY (Mar. 19, 2025), https://www.msn.com/en-us/health/other/schools-closed-and-went-remote-to-fight-covid-19-the-impacts-linger-5-years-later/ar-BB54q.

[6] Aila Slisco, *How Many Lives Were Lost to COVID-19? A Look Back Nearly 5 Years Later*, MSN, https://www.msn.com/en-us/health/other/how-many-lives-were-lost-to-covid-19-a-look-back-nearly-5-years-later/ar-AA1w8xbS (last visited Mar. 19, 2025).

On March 27, 2020, it passed the Coronavirus Aid, Relief and Economic Security (CARES) Act, which appropriated a historic $2 trillion dollars in aid.[7] The stimulus package provided broad relief for individuals and businesses. For example, tax-paying Americans received direct cash payments, unemployment offered workers an additional $600 dollars per week for four months, and employers were able to delay payment of their 2020 payroll taxes until 2021 and 2022.[8]

This case centers on just one part of the CARES Act: the PPP. The act created the PPP to provide over $800 billion to small businesses suffering financially from the pandemic. Under this program, businesses could apply for low-interest loans to cover payroll costs and keep their workers employed. Later on, the loans could be forgiven. The loans then were essentially grants. The Small Business Administration (SBA)—the agency tasked with administering the PPP—only had until the end of May 2021 to carry out the program.

So the government turned to private lenders for help. The SBA fully guaranteed PPP loans and enlisted private lenders to process the loan applications. This is how it worked: businesses applied for a loan with an authorized lender. After determining the borrower's eligibility, the lender determined whether it wanted to make the loan. If it did, then the lender submitted a guarantee application to the SBA and, if the SBA approved the application, the lender disbursed the funds to the borrower's bank. But if the application had any incomplete paperwork, lenders had to cancel

---

[7] Carl Hulse & Emily Cochrane, *As Coronavirus Spread, Largest Stimulus in History United a Polarized Senate*, NEW YORK TIMES (Mar. 26, 2020), https://www.nytimes.com/2020/03/26/us/coronavirus-senate-stimulus-package.html.

[8] Leon LaBrecque, *The CARES Act Has Passed: Here Are the Highlights*, FORBES (Mar. 29, 2020), https://www.forbes.com/sites/leonlabrecque/2020/03/29/the-cares-act-has-passed-here-are-the-highlights/.

the loan process. To incentivize lenders to process PPP loans, the government paid them a fee after the completion of an approval.

**B.  Prestamos Allegedly Fails to Fund Plaintiffs' PPP Loans But Still Falsely Reports the Loans as Funded**

Prestamos worked as one of the private lenders in charge of processing PPP loans. Because Prestamos is a non-depository bank that lacks the liquidity of other SBA-approved lenders, it relied on credit advances from the Federal Reserve to issue PPP loans. Prestamos started small. In 2020, it processed only 935 loans, making $1.3 million in fees. But after the government increased the loan fees in December 2020, the number of loans processed by Prestamos, exploded. In 2021, Prestamos contracted with another company—Blueacorn—to fund a staggering 494,415 loans worth about $7.68 million.

While processing extra PPP loans brought in more money for Prestamos, it also led to problems with borrowers. Plaintiffs allege that they applied for loans with Prestamos and signed the same contract. Prestamos ultimately failed to fund their loans. But Prestamos still reported the loans as funded to receive fees from the SBA.  Plaintiffs call this false reporting and contend it violated the standard contracts, which stated that Prestamos would only receive fees for loans that they "ultimately funded." And Plaintiffs also claim that Prestamos's failure to fund and misrepresentation to the government left them on the hook for repaying the loans even though they never received the funds, stopped them from obtaining loan forgiveness, and prevented them from getting loans from another lender.

In response, Prestamos does not dispute that it failed to fund Plaintiffs' loans. Instead, it claims that the government issued guidance directing lenders to investigate the possibility of fraud

4

in suspicions PPP loan applications. Prestamos followed the government's directives. Once a borrower's bank returned a loan to Prestamos and flagged it for potential fraud using certain Automated Clearinghouse (ACH) rejection codes created for suspicious PPP activity, Prestamos asked Blueacorn to do due diligence on the loan. For different reasons, Prestamos alleges, each Plaintiff failed this process. Prestamos, however, kept the loan processing fees because the government said that it could.

### C. Plaintiffs Sue Prestamos

Dissatisfied with how Prestamos handled their loan applications, Plaintiffs sued the lender for breach of contract on October 1, 2021. They claim that the contract required Prestamos to fund their PPP loans. But Prestamos did not keep its promise when it failed to fund their loans even though it reported to the SBA that it did. At this point, there are two motions before the Court— Plaintiffs' motion for class certification and Prestamos's *Daubert* motion.

Plaintiffs moved for class certification on September 6, 2024. They believe that class certification is appropriate because liability for each Plaintiff rises and falls with the same contract and PPP regulations. Plaintiffs seek certification of two classes under Federal Rule of Civil Procedure 23(a) and (b)(3):

- **Damages Class**: All persons and entities in California, Pennsylvania, Connecticut, Missouri, Illinois, Washington, Michigan, Nevada, Ohio, Arizona, Colorado, Utah, Texas, Indiana, Mississippi, Oklahoma and New York (collectively, the Class Member States) who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided a SBA loan number, and who executed and submitted their Loan Documents and provided

to Prestamos all required loan documentation, but as to whom Prestamos both failed to disburse the PPP loan proceeds and reported to the SBA that the loan proceeds were disbursed.

- **Declaratory Judgment Class**: All persons and entities in the Class Member States who, in 2021, applied for PPP loans with defendant Prestamos as the lender for whom the SBA provided a SBA loan number, and who executed and submitted their Loan Documents and provided to Prestamos all required loan documentation, but as to whom Prestamos both failed to disburse the PPP loan proceeds and reported to the SBA that the loan proceeds were disbursed.

Prestamos opposes class certification. *See generally* ECF No. 142.

Prestamos moved to exclude the expert reports of William Briggs, William Manger, and Steven Feinstein. According to Prestamos, none of the expert reports satisfy *Daubert* because they improperly offer legal conclusions. And even if the experts can make such conclusions, Prestamos argues that Briggs and Manger are not qualified and that Feinstein does not use an accepted methodology. Plaintiffs oppose excluding the three reports. *See generally* ECF No. 146.

## III.    DISCUSSION

Although the *Daubert* motion was filed later, the Court will address it first because Plaintiffs rely on the expert reports to meet the elements of class certification. The Court then will turn to the real issue in this case—whether the proposed classes should be certified.

### A.  *Daubert* Applies Now

Before examining any evidence, a threshold question demands attention: does this Court need to perform its "gatekeeping function" while ruling on the class certification motion? The

Court usually asks parties to submit summary judgment and *Daubert* challenges at the same time. It made the same request in this case. *See* ECF No. 102, at ¶ 8. But Prestamos moved to exclude these expert reports during class certification, more than half a year before the summary judgment stage. So the Court must determine whether it needs to scrutinize the expert reports now or save this issue for summary judgment, when it normally reviews such evidence.

*In re Blood Reagents Antitrust Litigation* answers this question. 783 F.3d 183 (3d Cir. 2015). In that case, the purchasers of traditional blood reagents—which are used to test the compatibility of blood between donors and recipients—brought a class action suit against two major reagent producers alleging that the producers violated federal antitrust law by conspiring to fix the price of traditional blood reagents. Without conducting a *Daubert* analysis, the District Court relied partly on expert testimony to find that the plaintiffs met Rule 23(b)'s predominance requirement. The Third Circuit vacated and remanded the lower court's decision, holding that a plaintiff cannot use challenged expert testimony to satisfy the requirements of class certification unless the plaintiff also shows that the expert testimony satisfies *Daubert*. *Id*. at 187-88. Because Plaintiffs here use the experts reports to meet the class certification requirements, and Prestamos challenges them, the Court needs to address the *Daubert* motion right now. Even if Prestamos's challenge was made earlier than the Court ordered. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *16 (E.D. Pa. Jan. 18, 2017).

### B. Prestamos's *Daubert* Motion Partly Succeeds

*Blood Reagents* lays out a two-step process for addressing *Daubert* challenges at the class certification stage. First, the Court must consider "whether the aspects of plaintiffs' expert testimony offered to satisfy Rule 23 are critical to class certification." *Utesch v. Lannett Co., Inc.*, 2021 WL 3560949, at *15 (E.D. Pa. Aug. 12, 2021) (internal quotation marks and citation omitted).

"If they are, then the Court turns to deciding whether the expert evidence is admissible under *Daubert*." *Id*. (quoting *Blood Reagents*, 783 F.3d 188). "If they are not, there is no need to address the *Daubert* challenge in that the expert testimony would have no bearing on whether the class should be certified." *Id*.

Second, if *Daubert* applies, courts must carry out their "gatekeeping function" to make sure that the evidence satisfies three things under Federal Rule of Civil Procedure 702: "qualifications, reliability, and fit." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (footnote and citation omitted). "Rule 702 has a liberal policy of admissibility," so long as an expert meets these three requirements. *Nat'l Fire & Marine Ins. Co. v. Newtown Square, LLC*, 2024 WL 1683609, at *2 (E.D. Pa. Apr. 18, 2024) (citing *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

Perhaps Prestamos's biggest gripe with the three experts is that they present improper legal opinions attempting to distinguish this case from *Greathouse* and interpreting PPP regulations. Déjà vu strikes for the first time here. In *Greathouse*, the District Court, faced with the same experts, considered their reports only to better understand the PPP loan process, not "in an expert capacity." *Greathouse*, 2023 WL 5746927, at *5 n.2. This Court reaches the same conclusion.

### 1.  The Experts' Legal Opinions Are Excluded

Start with the experts' legal opinions. The opinions explaining the differences between this case and *Greathouse* must be excluded. Each expert argues why the proposed classes here, unlike the ones in *Greathouse*, meet the Rule 23 requirements. *See* Briggs Report, ECF No. 139-14, at ¶¶ 30-38; Manger Report, ECF No. 139-12, at ¶ 24; Feinstein Report, ECF No. 139-13, at ¶ 48. Because these claims go to Rule 23—the heart of class certification—they are critical to

certification and must be scrutinized under *Daubert*. In the Third Circuit, however, an expert cannot offer legal opinions. *Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012) (quoting *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)). So the opinions distinguishing this case from *Greathouse* are excluded since they are legal conclusions about whether Plaintiffs' proposed classes should be certified.

The experts' opinions interpreting the PPP regulations must also be excluded. Both Briggs and Manger discuss the scope and meaning of the PPP regulations. *See, e.g.*, Briggs Report, ECF No. 139-14, at ⁋ 20; Manger Report, ECF No. 139-12, at ⁋ 23. These interpretations are critical to class certification because they help answer the common question here—whether Plaintiffs' PPP loans should ever have been canceled—which is the key to class certification's commonality requirement. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (explaining that commonality is satisfied when the common question can "generate common answers"). So *Daubert* applies. And, like the legal opinions above, these opinions must also be excluded because they provide legal conclusions on whether Prestamos complied with its regulatory duties under the PPP. *See Taylor v. Se. Pennsylvania Transportation Auth.*, 2024 WL 3205209, at *6 (E.D. Pa. June 27, 2024) ("Each statement is [the expert's] opinion about what was permitted under the regulations and whether [Defendant's] conduct in [Plaintiffs'] case complied with them—opinions which are impermissible under the case law of this Circuit.") (citations omitted).

But not all of the expert's opinions should be excluded for advancing legal conclusions. Beyond distinguishing this case from *Greathouse* and interpreting the PPP regulations, all three experts give background information on the CARES Act, the PPP, and the relevant regulations. *See, e.g.*, Briggs Report, ECF No. 139-14, at ⁋⁋ 16-17; Manger Report, ECF No. 139-12, at ⁋⁋ 10-15; Feinstein Report, ECF No. 139-13, at ⁋ 31. These background opinions do not offer any legal

conclusions so they will not be excluded as legal opinions. *See In re Wellbutrin SR Antitrust Litig.*, 2010 WL 8425189, at *2 (E.D. Pa. Mar. 31, 2010) ("[D]istrict courts have discretion to allow expert legal testimony where it would be helpful for the trier of fact to understand the evidence, but they cannot allow experts to explain the law.") (citing *Berckeley*, 455 F.3d at 217) (internal quotation marks and other internal citation omitted). That does not necessarily save these opinions though. They must still be reviewed under the two-prong test set out in *Blood Reagents*.

### 2. The Experts' Background Opinions Satisfy *Daubert*

Turn now to the expert's background opinions. Under *Blood Reagent*'s first step, a *Daubert* analysis is necessary for these opinions. The common question in this case asks whether Plaintiffs' PPP loans should ever have been canceled. To answer this question, the Court needs to understand the PPP and the procedure of the loan process. The experts' background opinions supply some of this knowledge by laying out basic information about the relevant statute and regulations. Because the background opinions shed light on the common question, they help Plaintiffs meet Rule 23(a)'s commonality requirement and are critical to class certification. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. Thus, the background opinions must satisfy *Daubert*.

Moving to *Blood Reagent*'s second step, the experts' background opinions pass muster under *Daubert*. The first *Daubert* requirement is qualification. "Qualification requires that the witness possess specialized expertise, and the Third Circuit has explained that a broad range of knowledge, skills and training qualify an expert." *Philadelphia Tr. Co. v. Temple Univ. Hosp., Inc.*, 2024 WL 5057595, at *2 (E.D. Pa. Dec. 9, 2024) (internal quotations marks and citations omitted). The specialized expertise required under this factor can be "practical experience as well as academic training and credentials." *Id.* (internal quotation marks and citations omitted). Briggs and Manger have extensive experience serving in multiple roles in the SBA and Feinstein has

significant knowledge of financial markets, investments, and relevant regulations. Briggs Report, ECF No. 139-14, at ¶¶ 1-12; Manger Report, ECF No. 139-12, at ¶¶ 1-7; Feinstein Report, ECF No. 139-13, at ¶¶ 9-21. Although the expert's legal opinions are excluded, their years of experience and credentials make them qualified under the "liberal" qualification standard to offer background opinions on the PPP and its loan process. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

All three experts are also reliable. The second *Daubert* requirement is reliability. The Third Circuit has interpreted this requirement to mean that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *J.L. v. Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4 (E.D. Pa. Dec. 26, 2024) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)) (other citation omitted). The experts' background opinions do not rely on "technical or scientific knowledge, and as such, the methodology used to formulate those opinions will not consist of a scientific formula or mathematical equation." *Taylor*, 2024 WL 3205209, at *12. But their opinions are still reliable because they are based on Briggs and Manger's years of experience working in the SBA, which oversees the PPP, and Feinstein's substantial knowledge of financial economics. *Arcuri v. PrimeCare Med. fsubstInc.*, 2022 WL 3369725, at *4 (E.D. Pa. Aug. 16, 2022) ("In addition, the Third Circuit has held that an expert's opinion may be deemed reliable if it is based on the witness's expertise and knowledge of the subject he is testifying about.").

Finally, the experts' background opinions fit with this case. The third *Daubert* requirement is fit. "The fit requirement ensures that there is a sufficient nexus between the expert's testimony and the facts that the jury is being asked to consider." *Bradley v. Amazon.com, Inc.*, 2023 WL 2574572, at *4 (E.D. Pa. Mar. 17, 2023), *reconsideration denied*, 2023 WL 2843788 (E.D. Pa.

Apr. 6, 2023) (internal quotation marks and citations omitted). "Put another way, this is a question of relevance, and Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility if it has the potential for assisting the trier of fact." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (internal quotation marks and citations omitted). As explained before, all three experts' background opinions paint a clearer picture of the PPP loan process, which is directly on point with the core issue here: whether Plaintiffs' PPP loans should ever have been canceled. These opinions then meet the fit requirement because they are helpful for resolving "the particular disputed factual issues in the case." *Utesch*, 2021 WL 3560949, at \*17 (quoting *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999)).

Because Briggs, Manger, and Feinstein are qualified and their backgrounds opinions are reliable and fit with the main issue in the case, the opinions satisfy *Daubert*. But the legal opinions distinguishing this case from *Greathouse* and interpreting PPP regulations are excluded. So Prestamos's *Daubert* motion is granted in part and denied in part. Now the Court can focus on the crux of this case—whether the proposed classes should be certified.

### C. Plaintiffs' Class Certification Motion Fails

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc.*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)) (internal quotation marks omitted). For this exception to apply, Plaintiffs "must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)). The Rule 23(a) requirements are: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Since Plaintiffs seek damages, they must also satisfy Rule 23(b)(3), which requires showing two things: predominance and superiority.

*Marcus*, 687 F.3d at 591. The Court's analysis of these requirements must be "rigorous." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 187 (3d Cir. 2020).

Déjà vu strikes again. In *Greathouse*, the District Court acknowledged that the plaintiffs shared similar legal claims and harms. Despite these similarities, however, the District Court held that the plaintiffs could not satisfy Rule 23(a) or Rule 23(b)(3) because their loans were returned for different reasons unique to each plaintiff—and all outside the lender's contractual and regulatory duties. *Greathouse*, 2023 WL 5746927, at \*4-7. So the court refused to certify the proposed classes.

The outcome is the same here. Plaintiffs' motion for class certification fails to satisfy both Rule 23(a) and Rule 23(b)(3). Under Rule 23(a), Plaintiffs' proposed classes lack commonality and their claims are not typical of the classes. And under Rule 23(b)(3), Plaintiffs' individualized issues predominate and therefore the class action is not the superior way for moving forward. Thus, the Court will not certify the proposed classes in this case either.

## 1. Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Instead of analyzing each of Rule 23(a)'s four requirements, the Court will only focus on the two that doom Plaintiffs' certification efforts—commonality and typicality.

### a. Plaintiffs Cannot Satisfy Commonality

Begin with commonality. Plaintiffs must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298-300 (3d Cir. 2011)).

13

This "means that determination of [the common question's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Here, the parties dispute whether Plaintiffs meet commonality. The central question, according to Plaintiffs, is whether their PPP loans should ever have been canceled. *See* ECF No. 139 at 8. Plaintiffs say that commonality has been satisfied because Prestamos signed a standard contract with each of them promising to fund their loans, breached the contract by failing to fulfill that promise, and falsely reported the loans as funded. *Gillis v. Respond Power, LLC*, 677 F. App'x 752, 756 (3d Cir. 2017) ("Because form contracts should be interpreted uniformly as to all signatories, Pennsylvania and federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment."). Prestamos counters that the central question is not common because each Plaintiffs' loans were canceled for many different reasons, making it impossible to have a classwide answer. *See* ECF No. 142 at 9.

The Court agrees with Prestamos that Plaintiffs cannot meet commonality. Plaintiffs' banks returned the PPP loans to Prestamos and used various ACH codes to describe why the funds were sent back. Different ACH codes were used for most Plaintiffs. *See* ECF No. 142-6, Ex. 4. And the differences do not end there. Sometimes, when the same code was used for certain Plaintiffs, the banks' reasons for returning the loans were still different. For example, even though the banks used ACH return code R23 for Plaintiffs Alicia Marshall and Jamie Jones, Marshall's loan funds were returned because her bank could not be used for business purposes and Jones's bank did not explain why the loans funds were returned. *See id*. Given these varying circumstances, the central question will have different answers depending on the many possible reasons why each Plaintiff's

loans were returned. This defeats commonality. *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Wal-Mart*, 564 U.S. at 350) (explaining that "dissimilarities within the proposed classes . . . impede the generation of common answers").

Plaintiffs attempt to circumvent these differences falls short. They say that "[i]f Defendant[] w[as] indeed required to cancel every unfunded loan . . . the reasons behind [its] failure to fund do not matter—thus resolving Plaintiffs' claims in one stroke." *See* ECF No. 139 at 9 (quoting *Greathouse*, 2023 WL 5746927, at *5). One of Plaintiffs' experts claims that Prestamos was under a duty to cancel unfunded loans under the 20-day regulatory provision.[9] Specifically, the expert argues that Prestamos had to "report a cancellation within 20 calendar days" if there was a problem with a loan. ECF No. 139-20 at 11. But the 20-day provision only applies when a borrower fails to submit "required documentation." *Greathouse*, 2023 WL 5746927, at *5. As Plaintiffs acknowledge, this rule does not apply to them because their proposed classes are limited to borrowers who submitted all the required documentation. *See* ECF No. 139 at 8. Thus, Prestamos had not duty under the 20-day provision to cancel the unfunded loans here.

Looking beyond the 20-day regulatory provision, nothing else put a duty on Prestamos to cancel the loans. The 20-day provision "does not address whether cancelation is required" outside the narrow situation the provision itself lays out: "when a borrower fails to submit 'required documentation.'" *Greathouse*, 2023 WL 5746927, at *5 (quoting 86 FR 3692, 3710). Plaintiffs then must point to something else that requires cancellation. Although they say that the standard contracts required Prestamos to fund their loans, the contracts seem silent as to cancellation. And

---

[9] The provision states that "[l]oans for which funds have not been disbursed because a borrower has not submitted required loan documentation within 20 calendar days of loan approval shall be cancelled by the lender." *Greathouse*, 2023 WL 5746927, at *5 (quoting 86 FR 3692, 3710).

Plaintiffs do not identify any other regulation that creates a duty to cancel unfunded loans. So Prestamos had no duty under any regulatory or contractual provision to cancel Plaintiffs' unfunded loans. Without such a duty, the central question cannot be answered in "one fell swoop." *Harris v. Little*, 2024 WL 915562, at *4 (E.D. Pa. Mar. 4, 2024). Plaintiffs therefore fail to satisfy commonality.

### b.  Plaintiffs Cannot Satisfy Typicality

Focus now on typicality. Under this requirement, Plaintiffs' claim and defenses must not be "markedly different" from those of the other members of the class. *Marcus*, 687 F.3d at 598 (citation omitted). Plaintiffs are not typical if they are subject to "a unique defense." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

Plaintiffs say that they satisfy typicality because their claims for breach of contract are based on the same facts—each of them signed the same loan agreement with Prestamos. And they also claim that they suffered the same harm—Prestamos ultimately failed to fund their PPP loans but still reported them as funded.

Although Plaintiffs raise the same claims and allegedly suffered the same injuries, they cannot meet typicality because they are subject to unique defenses. As explained before, Plaintiffs' banks returned their PPP loans for many different reasons. These "differing circumstances thus implicate different defenses." *Greathouse*, 2023 WL 5746927, at *7. After all, in defending itself, Prestamos will point to the facts that show why each Plaintiffs' loans were returned. These facts will largely vary from Plaintiff to Plaintiff.  *See* ECF No. 142-6, Ex. 4. Because of these individualized circumstances, Plaintiffs are subject to unique defenses and typicality is not met. *See Thakker v. Doll*, 336 F.R.D. 408, 420 (M.D. Pa. 2020) ("The named Petitioners vary too widely in their factual circumstances for a class action to be the appropriate vehicle for their claims.").

Plaintiffs counter that these unique defenses do no matter because Prestamos falsely reported their PPP loans as funded. But even if Plaintiffs suffered the same injury, Prestamos will still raise a unique defense against each Plaintiff by pointing out that most Plaintiffs' loans were returned for different reasons. So Plaintiffs fail to meet typicality. *See Mwantembe v. TD Bank, N.A.*, 268 F.R.D. 548, 558 (E.D. Pa. 2010) ("Any similarity in legal theories among the named plaintiffs and the proposed class of plaintiffs is eclipsed by the individualistic defenses the banks can raise to each plaintiff's claim.").

### 2.  Plaintiffs Cannot Satisfy Either of Rule 23(b)'s Two Requirements

Under Rule 23(b)(3), Plaintiffs must show two things: predominance and superiority. *Ferreras*, 946 F.3d at 183. Plaintiffs fail to meet either of these requirements.

### a.  Plaintiffs Cannot Satisfy Predominance

First, predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, (2016) (citation omitted). In carrying out the predominance inquiry, "court[s] must look first to the elements of the plaintiffs' underlying claims . . . through the prism of Rule 23' to assess whether the class members can prove their claims with evidence that is common to the class rather than individual to its members." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023) (internal quotation marks and citation omitted).

The Court does not need to go very far to figure out predominance. Because Plaintiffs cannot even meet commonality, they fail to satisfy predominance as well. *See Ferreras*, 946 F.3d at 185 ("If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either.").

But even a full predominance analysis shows that Plaintiffs do not meet commonality. To prevail on a breach of contract claim under Pennsylvania law, a Plaintiff must prove that "1) Defendant owed Plaintiff a duty, 2) Defendant breached that duty, 3) a causal relationship exists between the breach and Plaintiff's resulting injury, and 4) Plaintiff suffered an actual loss." *Philadelphia Pro. Collections LLC v. Crawl Space Door Sys., Inc.*, 642 F. Supp. 3d 497, 501 (E.D. Pa. 2022) (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. Ct. 2004)). For the same reasons discussed in the commonality and typicality contexts, whether Prestamos owed Plaintiffs a duty to fund their loans or cancel them turns on individualized inquiries about the different reasons why the loans were returned. These individualized inquiries "defeat predominance." *In re Insulin Pricing Litig.*, 2024 WL 416500, at *45 (D.N.J. Feb. 5, 2024).

### b. Plaintiffs Cannot Satisfy Superiority

Second, superiority requires the class action to be the "superior method" for resolving the case. *Marcus*, 687 F.3d at 596. There are four things a court must consider here: "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016), *as amended* (May 2, 2016). "The same individualized inquiries precluding predominance also preclude superiority." *McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 513 (W.D. Pa. 2019).

Because Plaintiffs have not shown commonality, typicality, predominance, or superiority, they have failed in their efforts to certify the proposed classes.

## IV.    CONCLUSION

For the reasons laid out above, Prestamos's motion to exclude the expert reports of William Briggs, William Manger, and Steven Feinstein is granted in part and denied in part and Plaintiffs' motion for class certification is denied. An appropriate order follows.


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge